IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-852 T

(Judge Robert H. Hodges, Jr.)

---

RUTH C. LUCAS, Executrix of the Estate of Marvin C. Park, and

BONNIE S. MURPHY, Executrix of the Estate of Mildred L. Park,

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

---

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

---

THOMAS E. REDDING
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
RUTH C. LUCAS, Executrix of the Estate of
Marvin C. Park, and BONNIE S. MURPHY,
Executrix of the Estate of Mildred L. Park

## MOTION FOR SUMMARY JUDGMENT

Pursuant to RCFC 56, Plaintiffs Ruth C. Lucas, Executrix of the Estate of Marvin C. Park, and Bonnie S. Murphy, Executrix of the Estate of Mildred L. Park, move for summary judgment in their favor because there are no questions of material fact remaining and the Internal Revenue Service's ("IRS's") assessments related to their 1985 and 1986 partnership related tax liability was improper as a matter of law.

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF QUESTIONS INVOLVED

Whether the IRS's failure to issue statutory notices of deficiency as required under subchapter B of the Code rendered the resulting partnership related assessments invalid as a matter of law.

### STATEMENT OF THE CASE

For tax years 1985 and 1986, Marvin C. Park was a limited partner in the Crystal Star Eagle ("CSE") partnership. [App: B-38, B-40][1] A dispute arose between the IRS and CSE as to certain partnership items reported on CSE's 1985 and 1986 partnership information returns and a §6226 TEFRA partnership-level suit was filed in the Tax Court contesting the IRS's proposed adjustments to those partnership items. [App: B-514]

Mr. Park was a party to the partnership-level suit because he was a CSE limited partner in 1985 and 1986. Mildred L. Park was deemed a party to the partnership-level suit only because she filed joint 1985 and 1986 tax returns with her husband.[2]

---

1 References to [App:B-"x"] are to Bates stamped page "x" of the Plaintiffs' Appendix B attached to this motion.

2 By Order dated April 26, 2001, Mr. and Mrs. Park were dismissed from the partnership-level suit as "participating partners" but continued to be subject to the outcome of that case as "nonparticipating partners." The distinction between participating and nonparticipating partners is irrelevant to the issues before the Court here. [App: B-522]

Mr. Park died on July 12, 2000. [App: B-49] Ruth Lucas was appointed Executrix of the Estate of Marvin C. Park on January 9, 2002. [App: B-49] Mrs. Park died on November 13, 2001. [App: B-68] Bonnie Murphy was appointed Executrix of the Estate of Mildred L. Park on or about December 19, 2001. [App: B-72, B-75]

On September 15, 2000, the United States Court of Appeals for the Second Circuit issued its opinion in *Callaway v. Commissioner*, 231 F.3d 106 (2nd Cir. 2000), holding that where a request for prompt assessment is filed on behalf of a deceased partner, that partner's partnership items are converted to nonpartnership items, assessments related to those converted items may be made only under the provisions of subchapter B, any such assessments made without the IRS having first issued a statutory notice of deficiency ("stat notice") (a subchapter B requirement) are invalid, and amounts based on those assessments must be refunded.

On May 28, 2002, Separate Forms 4810 Request for Prompt Assessment Under Internal Revenue Code Section 6501(d) were filed for each estate. [App: B-44 to B-53, B-54 to B-83] Each Form 4810 included both tax years 1985 and 1986. [App: B-48, B-71]

On November 18, 2002, the IRS assessed tax and interest against the Parks for 1985 ($5,153.00 tax and $23,514.31 interest) and 1986 ($16,531.00 tax and $65,652.97 interest) based on the partnership-level Tax Court decision.[3] [App: B-34, B-36] The IRS never issued a stat notice to the Parks or their estates prior to the assessments. The assessed amounts were paid in full. [App: B-34 to B-37]

On November 11, 2004, claims were timely filed with the IRS for refund of the amounts paid for tax years 1986 and 1985, respectively, because, among other grounds, the IRS failed to issue stat notices as required before the assessments were made. [App: B-1 to B-124, B-126 to B-247, B-248

[3] The IRS assessed interest at the punitive rate under former §6621(c). Whether the IRS's §6621(c) assessment was valid is not at issue in this motion for summary judgement.

to B-368, B-369 to B-489, B-490 to B-505] The IRS denied those claims and the plaintiffs timely filed this suit. [App: B-523]

## SUMMARY OF THE ARGUMENT

If the Parks' estates had not filed requests for prompt assessment, then under the provisions of subchapter C the IRS would not have been required to issue a stat notice before assessing the 1985 and 1986 tax. However, on May 28, 2002, the estates filed requests for prompt assessment thereby converting their partnership items to nonpartnership items. Filing the requests for prompt assessment gave the IRS one year (until May 28, 2003) to issue stat notices under the provisions of subchapter B related to the converted items. Under subchapter B the IRS could assess the tax only after issuing a stat notice.

The IRS made the assessments in dispute on November 18, 2002, almost six-months after the requests for prompt assessment were filed, but never issued the stat notices required by subchapter B. Therefore, the IRS's assessments of tax and related interest were invalid and the amounts collected must be refunded to the taxpayers.

## ARGUMENT

Partnerships generally do not pay income tax or file income tax returns; they file information returns.[4] Each partner's share of partnership income, gains, losses, deductions, etc., is reported and recognized on his individual return.[5]

Before 1982, to adjust an item on a partnership return the IRS had to audit each partner individually to conform the tax treatment of all the partners. This resulted in duplication of

---

4 §§701, 6031; Treas. Reg. §§1.701-1 and 1.6031-1.

5 §§701, 702; Treas. Reg. §1.702-1(a).

administrative and judicial resources and sometimes in inconsistent results as between partners.[6] With TEFRA Congress categorized all issues for tax years after 1982 as either "partnership items" or "nonpartnership items" and mandated that "the tax treatment of any partnership item shall be determined at the partnership level."[7] This allows a single partnership-level adjustment under TEFRA's subchapter C procedures for those items that meet the statutory definition of partnership items.[8] Nonpartnership items are determined only after the partnership-level proceedings are concluded as to that partner in partner-level proceedings specific to that partner under the subchapter B procedures.[9]

Whether an item is a "partnership item" or a "nonpartnership item" is the threshold question for the application of the TEFRA procedures. While partnership items are subject to TEFRA's centralized audit procedures,[10] the tax treatment of nonpartnership items is determined at the level of the individual partner's return, pursuant to the notice of deficiency procedures of subchapter B of Chapter 63, §§6211 to 6216.[11] "The text and structure of the Code, as well as the legislative history of the TEFRA provisions, leave no doubt that Congress intended the procedures of subchapters B and C to have mutually exclusive jurisdiction over nonpartnership and partnership

---

6 *Callaway* at 107-108, citing *Randell v. United*, 64 F.3d 101, 103 (2d Cir.1995).

7 §6221, *Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986). *See* H.R. Conf. Rep. No. 97-760, at 599-600.

8 §§6211(c), 6216(4), 6221, 6223, 6225(a), 6230(a)(1), and 6226; Temp. Treas. Reg. §301.6221-1T(a); *Callaway v. C.I.R.*, 231 F.3d 106, 110 (2nd Cir. 2000). "Subchapter C" is subchapter 63C at §§6221-6234 (TEFRA).

9 *Maxwell* at 788; *Callaway* at 108.

10 §§6211(c), 6216(4), 6221, 6230(a)(1).

11 §§6212(a), 6230(a)(2).

items respectively."[12]

As discussed in more detail below, in certain circumstances a partnership item may be "treated as" a nonpartnership item.[13] The effect of such a conversion is therefore to except the item in question from audit proceedings under subchapter C and subject it instead to notice of deficiency procedures under subchapter B.[14]

Under TEFRA, to adjust any partnership item the IRS must first issue an FPAA setting out the proposed amounts and grounds for the adjustments for that taxable year.[15] These adjustments are also called "disallowances" because all or part of a partnership's deduction is being disallowed by adjusting it downward.

Challenges to proposed adjustments or disallowances in an FPAA are made in a partnership-level suit that is normally filed in the Tax Court by the TMP.[16] For tax years 1985 and 1986 the court's jurisdiction in a partnership-level suit is restricted to the determination and allocation of the statutorily defined "partnership items" in the FPAA.[17]

---

12 *Callaway* at 108; *See generally Maxwell v. Commissioner*, 87 T.C. 783, 788, 1986 WL 22033 (1986) (Congress intended existing rules relating to administrative and judicial proceedings, statutes of limitations and settlements to continue to govern determination of tax liability attributable to nonpartnership items); H.R. Conf.Rep. 97-760, at 611 ("Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.").

13 *See* §6231(a)(4), (b)(1).

14 *See* §6230(a)(2)(A)(ii).

15 §§6223(a) and (d)(2).

16 §6226(a). Virtually all partnership-level cases are filed in the Tax Court. Occasionally a partnership-level case is filed in a federal district court or the Claims Court, but only after meeting certain bond requirements that do not apply in Tax Court cases. §6226(e). *E.g.*, see *AD Global Fund v. U.S.*, 67 Fed.Cl. 657 (2005). The CSE partnership-level suit was filed in the Tax Court.

17 §§6226(a), (b), (f).

If a partnership-level suit is filed then all partners are treated as parties to the suit, provided that they have an ongoing interest in the outcome of the proceedings, *i.e.* their partnership items have not been converted to nonpartnership items.[18]

After the partnership item adjustments become final (*e.g.,* after an FPAA is defaulted or the decision in a §6226 partnership-level suit becomes final), subchapter C generally allows the IRS to assess any resulting tax against the partners without notice, as a computational adjustment.[19]

While there are few exceptions to TEFRA's centralized procedures, the Parks' estates are subject to one such exception. The Parks' estates fall within one of several limited exceptions under §6231(c)(1)(E) that "the Secretary determines by regulation to present special enforcement considerations."[20] Where the Secretary finds these special enforcement considerations to exist and where the Secretary determines "that to treat items as partnership items will interfere with the effective and efficient enforcement of this title" then "such items shall be treated as nonpartnership items for the purpose of this subchapter."[21] By converting partnership items to nonpartnership items, the Secretary excepts them from the subchapter C partnership-level TEFRA procedures and subjects them instead to the individual deficiency procedures under subchapter B.[22]

---

18 §6226(c), (d).

19 §§6225(a), 6230(a)(1), 6231(a)(6). This also includes the assessment of normal interest under §6601(a) but not interest imposed at the punitive rate under former §6621(c). Because §6621(c) is not in issue in this motion, the plaintiffs do not address here the procedures regarding assessments of "affected items," such as §6621(c). *See N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 744, 1987 WL 45298 (1987); Temp. Treas. Reg. § 301.6231(a)(6)-1T(a). "Affected items" are a subset of nonpartnership items defined as "any item to the extent such item is affected by a partnership item." §6231(a)(5); *see also* Temp. Treas. Reg. §301.6231(a)(5)-1T(a).

20 §6231(c)(1)(E).

21 §6231(c)(2).

22 §6230(a)(2)(A)(ii).

One regulation promulgated under the Secretary's §6231(c)(1)(E) authority provides that when the estate of a deceased partner files a request for prompt assessment, its partnership items convert to non-partnership items:

> The treatment of items as partnership items with respect to a partner on whose behalf a request for prompt assessment of tax under section 6501(d) is filed will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending with or within any taxable year of the partner with respect to which a request for a prompt assessment of tax is filed shall be treated as nonpartnership items as of the date that the request is filed.

Temp. Treas. Reg. § 301.6231(c)-8T.

The deceased partner's partnership items are converted to nonpartnership items as of the date his estate requested prompt assessment. As a consequence, the deficiency procedures of subchapter B apply to any assessment of taxes attributable to those items[23]and the §6229(f) statute of limitations for assessing any tax attributable to those items now applies.

Under subchapter B, tax assessments made without the issuance of a stat notice are invalid and any amounts collected must be refunded to the taxpayer.[24] This applies to tax assessments arising from partnership items that were converted to nonpartnership items upon the filing of a request for prompt assessment.[25]

Here the plaintiffs filed their requests for prompt assessment on May 28, 2002. The IRS had until May 28, 2003 to issue stat notices for the 1985 and 1986 tax assessments. The IRS assessed the 1985 and 1986 taxes on November 18, 2002 without issuing the stat notices. The plaintiffs paid those liabilities in full. But because the assessments were made without the IRS ever issuing the stat notices required under subchapter B, the November 18, 2002 assessments were invalid and the

---

23 §6230(a)(2)(A)(ii).

24 *Callaway* at 106.

25 *Id.*

plaintiffs' payments were overpayments that must be refunded.

## CONCLUSION

Here the IRS assessed on November 18, 2002, almost six months after the requests for prompt assessment were filed on May 28, 2002. The IRS had plenty of time to recognize that the requests had been filed and that stat notices were required before it assessed. Even after it assessed the IRS had over six months (from November 18, 2002 to May 28, 2003) to abate those assessments, issue the required stat notices, and properly assess the related liabilities if the Parks' estates did not challenge the stat notices. It chose not to do so.

The IRS was not prejudiced by the plaintiffs' requests for prompt assessment. The IRS was given ample notice that the subchapter B provisions applied, all the notice required by law. The IRS was prejudiced only by its own refusal to apply the proper procedures even with that ample notice.

Here there are no relevant facts in dispute. The IRS assessed the 1985 and 1986 liabilities (i) after the plaintiffs filed their 1985 and 1986 requests for prompt assessment, and (ii) without issuing stat notices. The plaintiffs are entitled to summary judgment in their favor because those assessments were invalid as a matter of law and, therefore, their payments were overpayments that must be refunded.

WHEREFORE, Plaintiffs Ruth C. Lucas, Executrix of the Estate of Marvin C. Park, and Bonnie S. Murphy, Executrix of the Estate of Mildred L. Park, respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**