IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-852 T
(Judge Robert H. Hodges, Jr.)

RUTH C. LUCAS, Executrix of the Estate of Marvin C. Park, and
BONNIE S. MURPHY, Executrix of the Estate of Mildred L. Park,

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

**INDEX TO PLAINTIFFS' APPENDIX B**

| **Plaintiffs' Exhibit No.** | **Description** | **Bates No.** |
|---|---|---|
| 1 | 1985 Form 1040X Amended U.S. Individual Income Tax Return with Attachments for Mildred L. Park, Deceased, and Marvin C. Park, Deceased | B-1 to B-124 |
| | Intentionally Omitted | B-125 |
| 2 | 1986 Form 1040X Amended U.S. Individual Income Tax Return with Attachments for Mildred L. Park, Deceased, and Marvin C. Park, Deceased | B-126 to B-247 |
| 3 | 1985 Form 843 Claim for Refund and Request for Abatement with Attachments for Mildred L. Park, Deceased, and Marvin C. Park, Deceased | B-248 to B-368 |
| 4 | 1986 Form 843 Claim for Refund and Request for Abatement with Attachments for Mildred L. Park, Deceased, and Marvin C. Park, Deceased | B-369 to B-489 |
| 5 | Letter Dated November 15, 2004, Transmitting 1985 and 1986 Refund Claims to the IRS, with Proof of Mailing and Receipt | B-490 to B-505 |
| 6 | Docket Sheet for *Crystal Star Eagle v. Commissioner*, Before the United States Tax Court at Docket No. 16434-96 | B-506 to B-522 |
| 7 | Notice From the IRS Dated September 26, 2005, Disallowing the 1985 and 1986 Refund Claims | B-523 |

Form **1040X** (Rev. November 2003)

Department of the Treasury — Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1985 , or fiscal year ended ▶

Please print or type

| | | |
|---|---|---|
| Your first name and initial: MILDRED L | Last name: PARK, DECEASED | Your social security number: [redacted]-9852 |
| If a joint return, spouse's first name and initial: MARVIN C | Last name: PARK, DECEASED | Spouse's social security number: [redacted]-8176 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: c/o Thomas E. Redding; 2914 West T. C. Jester | Apt. no. *(POA ATTACHED, FORM 2848)* | Phone number: 713-965-9244 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions. Houston, Texas 77018-7010 | ***ADDRESS FOR THIS MATTER ONLY* | For Paperwork Reduction Act Notice, see page 6. |

**A** If the name or address shown above is different from that shown on the original return, check here ▶ ☒

**B** Has the original return been changed or audited by the IRS or have you been notified that it will be? ☒ Yes ☐ No

**C** Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ▶ ☐ Single ☒ Married filing jointly ☐ Married filing separately ☐ Head of household ☐ Qualifying widow(er)

On this return ▶ ☐ Single ☒ Married filing jointly ☐ Married filing separately ☐ Head of household* ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change — amount of increase or (decrease) — explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2 – 6)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | | | |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | | | |
| 3 Subtract line 2 from line 1 | 3 | | | |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | | | |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | | | |
| **Tax Liability** | | | | |
| 6 Tax (see page 4). Method used in col. C | 6 | | | |
| 7 Credits (see page 4) | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | | | |
| 9 Other taxes (see page 4) | 9 | | | |
| 10 Total tax. Add lines 8 and 9 | 10 | | | |
| **Payments** | | | | |
| 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 | 11 | | | |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 4) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 82,275 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 82,275 |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | *Not Applicable* |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | | | *Not Applicable* |
| 21 **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | 0 |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | | | *Not Applicable*** |
| 23 Amount of line 22 you want **refunded to you** | 23 | | | 5,153 |
| 24 Amount of line 22 you want **applied to your** estimated tax | 24 | | | |

**Sign Here**

Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

Your signature: *Mildred L. Park, Dec'd — Bonnie S. Murphy, Executrix* Date: *11/11/04*

Spouse's signature. If a joint return, both must sign. *Marvin C. Park, Dec'd By Ruth G. Lucas, Executrix By Thomas E. Redding atty-in-fact* Date: *11/15/04*

**Paid Preparer's Use Only**

| | | |
|---|---|---|
| Preparer's signature: *[signature] CPA* | Date: *11/8/04* | Check if self-employed ☒ — Preparer's SSN or PTIN: P00097501 |
| Firm's name (or yours if self-employed), address, and ZIP code: BRETT A. THOMPSON, CPA, 20214 KINGSLAND BLVD. KATY TX 77450 | EIN | Phone no. 713-965-9244 |

***or such greater amount as is legally refundable, plus interest.*

PLAINTIFFS' EXHIBIT 1 USCFC 06-852

B-1

ISA STF FED3171F.1

**Part I** **Exemptions.** See Form 1040 or 1040A instructions.

If you are **not changing your exemptions,** do not complete this part.
If claiming **more exemptions,** complete lines 25 – 31.
If claiming **fewer exemptions,** complete lines 25 – 30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 Yourself and spouse . . . . . . . . . . Caution. If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | 25 | | | |
| 26 Your dependent children who lived with you . . . . . | 26 | | | |
| 27 Your dependent children who did not live with you due to divorce or separation . . . . . . . . | 27 | | | |
| 28 Other dependents . . . . . . . . . . | 28 | | | |
| 29 Total number of exemptions. Add lines 25 through 28 . . . . | 29 | | | |
| 30 Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2003 | $3,050 | $104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |
| 2000 | 2,800 | 96,700 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

No. of your children on line 31 who:
- lived with you . . . . . ▶ ☐
- did not live with you due to divorce or separation (see page 5) . . . ▶ ☐

Dependents on line 31 not entered above ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . ▶ ☐

***** *Please See Explanation Attached* *****

NOTE: This claim is filed on behalf of Mildred L. Park, Deceased as the surviving spouse of Marvin C. Park and as the sole payor of the amounts sought to be refunded, which were paid after the death of Marvin C. Park.

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . ▶ ☐

Form **2848** (Rev. December 1997)
Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name ________
Telephone ________
Function ________
Date

**Part I** **Power of Attorney** (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Marvin C. Park (Deceased) & Mildred L. Park (Deceased)<br>c/o Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | [redacted]-8176<br>[redacted]852 | |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7800-69703R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-78887R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Teresa J. Womack<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-87212R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | Tax Periods Ending 12/31: 1985,1986,1987,1988,1989, |
| | | 1990,1991,1992,1993,1994, |
| | | 1995,1996 |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4 — Specific uses not recorded on CAF.**) . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5 — Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes but is not limited to authorization to exercise the taxpayer's rights under I.R.C.§6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here [illegible] and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.** Form **2848** (Rev. 12-97)

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

**a** If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . ▶ ☐

**b** If you also want the second representative listed to receive a copy of such notices and communications, check this box . ▶ ☐

**c** If you do not want any notices or communications sent to your representative(s), check this box . . . ▶ ☐

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Ruth C. Lucas, Executrix 1/28/04 Executrix

Signature Date Title (if applicable)

Marvin C. Park, Deceased, by Ruth C. Lucas

Print Name

Bonnie S. Murphy, executrix 1/24/04 Executrix

Signature Date Title (if applicable)

Mildred L. Park, Deceased, by Bonnie S. Murphy

Print Name

## Part II Declaration of Representative

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - **a** Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - **b** Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - **c** Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - **d** Officer — a bona fide officer of the taxpayer's organization.
  - **e** Full-Time Employee — a full-time employee of the taxpayer.
  - **f** Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  - **g** Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  - **h** Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (**a - h**) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | Thomas E. Redding | 2-16-04 |
| A | Texas | Sallie W. Gladney | 2-16-04 |
| A | Texas | Teresa J. Womack | 2-16-04 |

STF FED4675F.2

B-4

**MILDRED L. PARK, DECEASED**
**(SSN [redacted]-9852)**
**EXPLANATION - 1985 and 1986 REFUND CLAIMS**

This refund claim, as it relates to tax and interest assessed relative to adjustments to partnership items and affected items related to the Crystal Star Eagle partnership (referred to in this explanation as "the Partnership") for 1985 and 1986, is filed based upon the following grounds:

1. The 1985 and 1986 assessments of tax and interest and subsequent interest assessments made on and after November 18, 2002 are invalid and the amounts paid pursuant to those assessments are fully refundable to the taxpayer. The United States Court of Appeals for the Second Circuit, in *Callaway v. Commissioner*, has clearly ruled that in the case of deceased taxpayers, a request for prompt assessment converts partnership items to non-partnership items and an assessment thereafter by the Internal Revenue Service without the issuance of a statutory notice of deficiency is an invalid assessment and any collections made on such assessment are refundable to the taxpayers. Enclosed as Exhibit "A" is a complete copy of the *Callaway* opinion. The 1985 tax and interest assessments were made on November 18, 2002 with subsequent interest assessments thereafter. Copies of transcripts of account provided by the Internal Revenue Service are attached as Exhibit "B," including both years. Each of these assessments was made by the Internal Revenue Service as a computational adjustment resulting from adjustments to partnership items of a partnership called Crystal Star Eagle. Copies of the Forms 4549 for 1985 and 1986 are attached hereto as Exhibit "C." Requests for Prompt Assessment on Forms 4810 covering the 1985 and 1986 tax years were filed with the Internal Revenue Service by Express Mail on May 28, 2002. Copies of those filings are attached hereto as Exhibits "D" and "E," respectively. Obviously both Mr. and Mrs. Park had died prior to that time. Pursuant to the *Callaway* case and all the legal authorities contained therein, the entire amounts assessed for both 1985 and 1986 were improperly assessed and are fully refundable.

2. Although 1985 and 1986 were filed as joint returns, this claim is filed and signed solely on behalf of Mildred L. Park, deceased, as both the surviving spouse and the sole payor of the amounts sought to be recovered because the entire amount of the payments was made from her estate and she is entitled to this refund as the source of the tax payments under IRC §6402(a) and Revenue Rulings 74-611 and 80-8.

3. The claim is timely. It is being filed within two years from the date of payment. Additionally, even if any of the periods under I.R.C. §6230 apply to any portion of this claim, it is timely under those provisions as well.

4. Additionally, or alternatively, it is clear that several of the initial proposed bases for the adjustments set forth in the original FPAA were independent of any basis that would have constituted a "tax motivated transaction." **The controlling case is the very recent Fifth Circuit Court of Appeals opinion in *Weiner v. United States*, ____F3d____, Fifth Cir., October 25, 2004, copy attached as Exhibit "F," in which the Fifth Circuit clearly held that where the tax liability resulted from a settlement in a TEFRA partnership proceeding where the original FPAA asserted both "tax motivated" grounds for the adjustments and non-tax motivated**

**grounds, §6621(c) penalty interest cannot be imposed!** Copies of the 1985 and 1986 FPAAs are attached as Exhibits "H" and "I" and clearly contain numerous grounds for adjustment, most of which are not "tax motivated transaction" grounds. This case followed the Tax Court case, *McCrary v. Commissioner,* 92 T.C. 827 (1989), and its progeny. This case clearly established that to the extent the taxpayers made concessions to avoid the necessity for litigation and where the basis of concession did not require the Court to determine if the adjustments were specifically "attributable to" a tax-motivated transaction, the §6621(c) penalty was inapplicable, even though some of the IRS's alternative grounds in the original FPAA for disallowance would support it! *See also Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988). Treasury Regulation §301.6621-2T, A-5, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984) also supports this position.

5. In the alternative, even if the IRS refuses to acknowledge the assessments were invalid, the taxpayer(s) are not liable for the penalty portion of the interest paid under I.R.C. §6621(c). To the extent the tax deficiencies upon which the I.R.C. §6621(c) interest was assessed arose from agreed adjustments to partnership items, based upon an agreement under I.R.C. §6224(c), the partnership item adjustments were based solely on amounts offered as adjustments by the TMP and accepted by the IRS. No trial was conducted. To the extent the deficiency is based on an I.R.C. §6224(c) agreed settlement that was entered into by the TMP, such an agreement can only relate to specific adjustments to partnership items. The assessment that resulted from the Tax Court decision reflected only a concession to the partnership item adjustments, which avoided the requirement of a trial on each of the elements set out in the relevant original FPAA. There was no agreement by the taxpayers that the tax deficiency was subject to §6621(c) or that the adjustments resulted from tax motivated transactions as defined in I.R.C. §6621(c) or the relevant regulations.

6. Alternatively, even if the doctrine under *Todd, McCrary*, and Treas. Reg. §301.6621-2T, A-5 does not preclude the application of I.R.C. §6621(c), no portion of the underlying tax liability was attributable to any event defined in I.R.C. §6621(c) or the regulations thereunder as a tax motivated transaction.

7. The alternative claims for partial interest refunds in paragraphs 4 through 7 are $7,443.09 for 1985 and $19,969.52 for 1986. See Exhibit "G," interest recomputations.

Exhibits:
- A - *Callaway v. Commissioner*
- B - Transcripts for 1985 and 1986
- C - Forms 4549
- D - Marvin C. Park requests for prompt assessment
- E - Mildred L. Park requests for prompt assessment
- F - *Weiner v. United States*
- G - Alternative interest computations removing only §6621(c) penalty
- H - 1985 FPAA
- I - 1986 FPAA

CITE AS: Callaway v. Commissioner, KTC 2000-470 (2d Cir. 2000)

<<FULL TEXT>>

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ELIZABETH N. CALLAWAY, Petitioner-Appellant, v. COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Docket: 99-4022 Filed September 15, 2000

Before: LEVAL, CABRANES and POOLER, Circuit Judges.

LEVAL, Circuit Judge:

Elizabeth N. Callaway ("the taxpayer" or "Elizabeth") appeals from so much of the March 10, 1998 Opinion and Order and the November 17, 1998 Decision of the United States Tax Court (Peter J. Panuthos, Chief Special Trial Judge) that held that computational adjustments and subsequent affected items notices of deficiency issued to her were valid and were not time-barred. We have jurisdiction pursuant to I.R.C. section 7482(a).

This is a case of first impression in the Courts of Appeals, raising an issue of partnership taxation procedure: A husband held a partnership interest as separate property but filed a joint tax return with his wife thereby taking his distributive share of the partnership's tax items into account in computing the tax owed on the couple's aggregate income. See I.R.C. sections 702, 6013(a), (d)(3); Treas. Reg. sections 1702-1(a), 1.6013-4(b). The husband died, and his estate filed a request for prompt assessment. See I.R.C. section 6501(d). As a result of the request, the husband's share of the partnership's tax items converted from partnership items into nonpartnership items. See I.R.C. section 6231(b)(1)(D), (c)(1); Temp. Treas. Reg. section 301.6231(c)-8T. The question presented is what effect that conversion has on the procedures for assessing deficiencies attributable to those same items against his wife. We conclude that where only the husband owned an interest in his distributive share of partnership items, the conversion of his partnership items into nonpartnership items necessarily converts into nonpartnership items all the items taken into account on the joint return by reason of his interest. They are therefore nonpartnership items with respect to assessments against either spouse. As a consequence: (1) statutory notice of deficiency procedures apply to an assessment of deficiencies attributable to these items against either spouse, see I.R.C. section 6230(a)(2)(A)(ii); and (2) the statute of limitations period will be the greater of one year or such longer period as remains open against either spouse. See I.R.C. section 6229(f).

Applying these conclusions of law to the facts of this case, we conclude the Commissioner had until December 23, 1992 to issue any statutory notice of deficiency to either taxpayer or her deceased spouse's estate. The 1993 "precautionary" assessme[nt] B-7 1996 computational

EXHIBIT "A" Pg. 1

adjustments and the 1996 affected items notices of deficiency were therefore procedurally invalid and time barred, with respect to both the taxpayer and her deceased spouse's estate.

We therefore, reverse the Tax Court's ruling and remand for further proceedings.

BACKGROUND

A. TEFRA's STATUTORY AND REGULATORY FRAMEWORK-

Under the Internal Revenue Code (the "Code") partnerships are not taxable entities. See, I.R.C. section 701; Treas. Reg. 1.701-1. <<ENDNOTE 1>> Therefore, unlike individuals and corporations, partnerships do not file tax returns; instead they file information returns. See I.R.C. section 6031; Treas. Reg. section 1.6031-1. While partnerships are not taxed, taxes are imposed on their partners on a passthrough basis. Each partner is individually required to take into account his distributive share of the partnership's tax items in computing his income tax liability. See I.R.C. sections 701, 702; Treas. Reg. section 1.702-1(a).

Prior to 1982, adjustments to the tax liability of the individual partners based on the operations of the partnership were determined at the individual partners' level. This resulted in duplication of administrative and judicial resources and sometimes in inconsistent results as between partners. See Randell v. United States, 64 F.3d 101, 103 (2d Cir. 1995). The Internal Revenue, Service was obligated to audit each partner individually to conform the tax treatment of all the partners. To extend the statute of limitations with respect to the partners' liability for the operation of the partnership, the IRS needed to obtain consent for an extension from each of the partners, not the partnership. Similarly, settlement agreements or judicial determinations with regard to one partner were not binding on the other partners. And because the IRS might fail to complete these individual audits and adjustments before the statute of limitations expired with respect to a partner, inconsistent treatment of similarly situated taxpayers could result. See generally H.R. Conf. Rep. No. 97-760, at 599 (1982), reprinted in 1982-2 C.B. 600, 662.

To ameliorate these difficulties, Congress enacted the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equality and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324, 648, now codified as amended as subchapter C of Chapter 63 of the Code, at sections 6221 to 6234. The TEFRA provisions establish a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level. See H.R. Conf. Rep. No. 97-760, at 599-600. Under the TEFRA provisions "the tax treatment of any partnership item . . . shall be determined at the partnership level." I.R.C. section 6221. A "partnership item" is a tax item "more appropriately determined at the partnership level than at the partner level." I.R.C. section 6231(a)(3). As prescribed by the Regulations, the term "partnership item" includes "[t]he partnership aggregate and each partner's share of . . . [i]tems of income, gain[,] loss, deduction, or credit of the partnership." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i). A "nonpartnership item" is one that is "not a partnership item." I.R.C. section 6231(a)(4).

B-8

EXHIBIT "A" pg. 2

The, determination whether an item is a "partnership item" or a "nonpartnership item" is the threshold question for the application of the TEFRA procedures. While partnership items are subject to TEFRA's centralized audit procedures, see I.R.C. sections 6211(c), 6216(4), 6221, 6230(a)(1), the tax treatment of nonpartnership items is determined at the level of the individual partner's return, pursuant to the notice of deficiency procedures of subchapter B of Chapter 63, sections 6211 to 6216, See I.R.C. sections 6212(a), 6230(a)(2). The text and structure of the Code, as well as the legislative history of the TEFRA provisions, leave no doubt that Congress intended the procedures of subchapters B and C to have mutually exclusive jurisdiction over nonpartnership and partnership items respectively, [pound sign X5N (?)] rules for partnerships with more than 100 partners), 6231(a)(1)(B) (exception for small partnerships)). [sic] files a Joint or a separate tax return, see e.g., Treas. Reg. section 1702-1(d), and in either case, her tax liability will be determined in party partnership items into account. Accordingly, such a spouse will be treated as a partner whether she files jointly or separately. See I.R.C. section 6231(a)(2)(B). Her treatment as a partner derives, in part, from her property interest under state law. While both spouses holding a joint interest are treated as partners, the Code further provides that "a husband and wife who have a joint interest in a partnership shall be treated as 1 person." I.R.C. section 6231(a)(12).

Second, the spouse may own no interest in the member's partnership interest. Nonetheless, IF the spouse and the member file a joint return, because (1) the member will be required to take his distributive share of the partnership items into account in computing the couple's aggregate income, see I.R.C. section 702(a); Treas Reg. section 1.702-1(a); (2) a single tax liability is computed on the basis of this aggregate income, see I.R.C. section 6013(d)(3); and (3) each spouse's liability for that tax is joint and several, see id., the spouse meets the requirements of Code section 6231(a)(2)(B) -- that is, her tax liability is in part determined by taking into account partnership items. Accordingly, such a spouse is also "treated as a partner," as confirmed by a separate regulation. Temp. Treas. Reg. section 301.6231(a)(2)-1T(a) However, such a spouse will not be treated as a partner, if she files separately and owns no interest in or share of the member's partnership items.

The purpose of the TEFRA provisions described above is to ensure that, in general, partnership items are adjusted once at the partnership level. All partners, whose tax liability will be affected by its outcome, have the opportunity to participate in the audit allowing each to be bound by its result. In general, there are few exceptions to these centralized procedures,

However, one way for a partner to avoid being treated under the TEFRA framework is to fall within one of several limited exceptions that "the Secretary determines by regulation to present special enforcement considerations." I.R.C. section 6231(c)(1)(E). Where the Secretary finds these special enforcement considerations to exist and where the Secretary determines "that to treat items as partnership items will interfere with the effective and efficient enforcement of this title" then "such items shall be treated as nonpartnership items for the purpose of this subchapter." I.R.C. section 6231(c)(2). F B-9 :ing partnership items to

EXHIBIT "A" Pg. 3

nonpartnership items, the Secretary thereby excepts them from the partnership-level TEFRA procedures and subjects them instead to the individual deficiency procedures under subchapter B. See I.R.C. section 6230(a)(2)(A)(ii). The Code farther provides that, because the partner no longer has an interest in their outcome, this partner may no longer participate in, nor be bound as a party to, any judicial proceedings to readjust the partnership items at the partnership level. See I.R.C. sections 6226(d), 6228(a)(4)(B); cf. Tax Ct. Rules 245(b), 247(a) reprinted following 26 U.S.C.A. section 7453.

One such regulation promulgated under the Secretary's authority pursuant to section 6231(c)(1)(E), provides that, when the estate of a deceased partner files a request for prompt assessment, its partnership items convert to nonpartnership items:

> The treatment of items as partnership items with respect to a partner on whose behalf a request for prompt assessment of tax under section 6501(d) is filed will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending with or within any taxable year of the partner with respect to which a request for a prompt assessment of tax is filed shall be treated as nonpartnership items as of the date that the request is filed.

Temp. Treas. Reg. section 301.6231(c)-8T. As discussed below, it is undisputed that the effect of this regulation was to convert all the partnership items of the estate of James Callaway to nonpartnership items, as of the date his estate requested prompt assessment. As a consequence, the deficiency procedures of subchapter B applied to the assessment of taxes attributable to those items, see I.R.C. section 6230(a)(2)(A)(ii), and a shorter statute of limitations for assessing any tax attributable to those items was triggered pursuant to I.R.C. section 6229(f)(1). At issue is the effect of this conversion on the procedures and limitations periods that applied to assessments against Elizabeth Callaway of taxes attributable to those same partnership losses as taken into account on the Callaways' joint returns for 1986-1988.

Against this statutory and regulatory background, we now turn to the facts.

B. FACTS

The facts were stipulated or are otherwise undisputed. Elizabeth Callaway, the taxpayer, is the widow of James Callaway (sometimes "decedent"), who died in 1990. During the taxable years 1986, 1987, and 1988, James was a limited partner in a Pennsylvania limited partnership known as Mountain View Mall Associates ("Mountain View"). Elizabeth was never a partner in Mountain View. Nor did Elizabeth at any time own a joint interest in James's partnership interest, whether by way of tenancy in common, joint tenancy tenancy by the entirety, or otherwise. Elizabeth and James were domiciled in New York, which is not a community property state. See, e.g., Miller v. Miller, 237 N.E.2d 877, 879 (N.Y. 1968) ("The state of New York . . . has not adopted B-10 ty property system.")

(quoting Hemingway v. McGehee (In re Estate of Crichton), 228 N.E.2d 799, 806 (N.Y. 1967)). Accordingly, Elizabeth had no ownership interest in James's partnership interest.

Elizabeth and James filed joint federal income tax returns. See I.R.C. section 6013(a). For each of the taxable years 1986, 1987 and 1988, their joint income tax returns reported and took into account James's distributive share of the losses reported on Mountain View's partnership returns for the same years. Absent an extension, the statute of limitations for the assessment of additional taxes attributable to the Callaways' NONPARTNERSHIP items for those taxable years expired on October 15, 1990, October 24, 1991 and April 15, 1992, respectively. See I.R.C. section 6501(a), (n)(2); cf. id. section 6229(a).

For these taxable years, Mountain View timely filed its information return, pursuant to I.R.C. section 6031, on January 30, 1987, March 15, 1988 and February 28, 1989, respectively. Absent extension agreements, the statute of limitations for assessing any tax attributable to James's distributive share of Mountain View partnership items would have expired on April 15 of 1990, 1991 and 1992 for taxable years 1986, 1987 and 1989 respectively. See I.R.C. section 6229(a). However, on July 22, 1989, July 29, 1991 and November 26, 1991, the Mountain View TMP and the IRS executed agreements to extend indefinitely the statute of limitations on Mountain View's tax returns. <<ENDNOTE 2>> See I.R.C. section 6229(b). These agreements were binding on all Mountain View partners, but only with respect to their distributive share of Mountain View partnership items. See id.

On December 8, 1990, James died. Elizabeth was appointed the executrix of his estate.

On February 5, 1991, the IRS mailed an NBAP to James with respect to Mountain View's 1988 tax year. The IRS claims it mailed NBAPs to James with respect to Mountain View's 1986 and 1987 taxable years. <<ENDNOTE 3>>

On December 23, 1991, acting on her own behalf and as the executrix of James's estate, Elizabeth mailed three letters to the IRS Service Center in Brookhaven, New York. The first letter of crucial importance in these proceedings -- was a request on behalf of James's estate for a prompt assessment, pursuant to I.R.C. section 6501(d), of the estate's outstanding income tax liabilities for the taxable years 1986, 1987 and 1988. It is undisputed that this request for prompt assessment converted the partnership items of James's estate to nonpartnership items, see I.R.C. section 6231(b)(1)(D), (c); Temp. Treas. Reg. section 301.6231(c)-8T, thereby requiring the IRS to determine deficiencies attributable to those items under the procedures of subchapter B, see I.R.C. section 6230(a)(2)(A)(ii), and shortening the limitations period for assessing taxes attributable to those items, see id. section 6229(f). <<ENDNOTE 4>> Although the IRS now concedes that this letter was a valid request for prompt assessment, because it initially believed that the request was invalid, it failed to take account of the consequences of the conversion of the estate's partnership items at the time the request was filed. <<ENDNOTE 5>>

The second letter included three ch B-11 he amounts of $90,635,

EXHIBIT "A" Pg. 5

$48,846 and $8,439, clearly designated as deposits in the nature of cash bonds <<ENDNOTE 6>> respecting joint tax liabilities of Elizabeth and the estate for 1986, 1987, and 1988 respectively. <<ENDNOTE 7>>

Having completed the partnership audit, on October 5, 1992, the IRS issued an FPAA notice to the Mountain View TMP determining adjustments to the partnership returns for the taxable years 1986, 1987, 1988, see I.R.C. section 6223(a)(2), and disallowing losses claimed in each of those years, The IRS mailed copies of these FPAAs to the Callaways. The Mountain View TMP did not contest this administrative adjustment. See I.R.C. section 6226(a). On March 3, 1993, a Mountain View notice partner other than the TMP timely filed a petition for readjustment contesting these FPAAs with the United States Court of Federal Claims. See IRC section 6226(b). On July 6, 1995, the Court of Federal Claims dismissed this action pursuant to a stipulation for dismissal. That dismissal operated as the court's decision that the adjustments proposed in the FPAA were correct. See I.R.C. section 6226(h). This decision became final 60 days later, on September 4, 1995.

Meanwhile, in August and September 1993 -- no doubt recognizing that the request for prompt assessment was valid, with the effect that James's distributive share of the partnership items had converted into nonpartnership items -- the IRS entered "precautionary" assessments against the Callaways. These assessments, in the amounts of $77,384, $41,981 and $6,541, were for the additional taxes attributable to James's distributive shares of the Mountain View losses that the FPAA had determined should be disallowed for 1986, 1987 an 1988, respectively. <<ENDNOTE 8>> The IRS posted to the Callaways' accounts the amounts remitted as cash bonds on December 23, 1991. <<ENDNOTE 9>>

Once the decision of the Court of Federal Claims became final, the IRS adjusted the Mountain View partnership return to reflect the adjustments of the FPAA. The IRS then assessed deficiencies against the individual Mountain View partners by computational adjustment. Accordingly, in July 1996, a computational adjustment was made to the Callaways' accounts. The IRS abated the "precautionary" assessments entered in August and September 1993, and then entered identical assessments against the Callaways' accounts.

On August 5, 1996, the IRS issued notices of deficiency to the estate and Elizabeth determining various additions to tax, including penalties for delinquent filings of returns, negligence and valuation overstatements for the taxable years 1986, 1987 and 1988. Because these additions to tax were with respect to taxable years ending before August 5, 1997, they were treated as affected items requiring partner level determinations. Therefore, deficiency procedures under subchapter B were required and followed. See I.R.C. section 6230(a)(2)(A)(i) (as in effect for partnership taxable years ending before August 5, 1997).

C. PROCEEDINGS BELOW

On September 11, 1996, James's estate and taxpayer Elizabeth (the "original petitioners") timely filed a petition for redetermination, thereby invoking the jurisdiction of the T[illegible]t. See I.R.C. section

B-12

EXHIBIT "A" Pg. 6

6214. On November 14, 1996, they moved to restrain collection of the underlying tax deficiencies attributable to the disallowance of James's distributive shares of Mountain View's losses. The Tax Court denied this motion on the ground that its jurisdiction was limited to a redetermination of additions to tax determined in the affected items notices of deficiency. See Callaway, 75 T.C.M. (CCH) at 1958. However, in its response papers, to this motion, the Commissioner conceded that all assessments entered against James's estate were untimely. The Commissioner conceded that the valid request for prompt assessment filed on December 23, 1991: (1) caused decedent's Mountain View partnership items to convert immediately into nonpartnership items, see I.R.C. section 6231(c)(2); Temp. Treas. Reg. section 301.6231(c)-8T; and (2) triggered an accelerated statute of limitations, under which the IRS had until June 23, 1993 to assess any deficiencies attributable to decedent's distributive shares of Mountain View's disallowed losses, see I.R.C. section 6501(d); but cf. id. section 6229(f) (providing that, on these facts, the limitations period expired on December 23, 1992). See Callaway, 75 T.C.M. (CCH) at 1958 & n. 3.

On March 10, 1998, the Tax Court ruled on the original petitioners' motion for summary judgment. As to James's estate, the Tax Court held that because the request for prompt assessment had converted his partnership items into nonpartnership items, the determination of his tax liability for such items was excepted from TEFRA's unified partnership audit and litigation procedures pursuant to section 6230(a)(2)(A)(ii). See Callaway, 75 T.C.M. (CCH) at 1960. The court therefore found the notices of deficiency for affected items invalid as to James's estate, and dismissed the case against James's estate for lack of jurisdiction. It denied as moot the estate's summary judgment motion. See id. (relying on Crowell v. Commissioner, 102 T.C. 683, 691-92 (1994)).

As to Elizabeth, relying in part on Dubin v. Commissioner, 99 T.C. 325, 334 (1992), the Tax Court held that her partnership items did not convert to nonpartnership items when decedent's partnership items converted to nonpartnership items pursuant to Temp. Treas, Reg, section 301.6231(c)-8T. See Callaway, 75 T.C.M. (CCH) at 1961-62. <<ENDNOTE 10>> The court therefore concluded that the notices of deficiency for affected items were valid insofar as they issued to Elizabeth and that they had been issued to her before her statute of limitations had run. See id. at 1963.

After the order entered denying taxpayer summary judgment, the parties settled certain issues by agreement, pursuant to which a stipulated decision entered on November 17, 1998 preserving this issue for appeal. Final judgment was entered, and this appeal followed.

DISCUSSION

We review the Tax Court's legal conclusions de novo and its factual findings for clear error. See I.R.C. section 7482(a)(1) ("The United States Courts of Appeals . . . shall . . . review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury"); see also Texasgulf, Inc. and Subsidiaries v. Commissioner, 172 F.3d 209, 214 (2d Cir. 1999). In particular, "[w]e owe no B-13 to the Tax Court's

EXHIBIT "A" pg. 7

statutory interpretations, its relationship to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals." Exacto Spring Corp. v. Commissioner, 196 F.3d 833, 838 (7th Cir. 1999) (Posner, C.J.); cf. Baizer v. Commissioner, 204 F.3d 1231, 1233 (9th Cir. 2000) ("Although a presumption exists that the tax court correctly applied the law, no special deference is given to the tax court's decisions.").

The issue is whether, on the filing of the request for prompt assessment on behalf of James' estate, the Mountain View tax items taken into account on the Callaways'joint returns were converted from partnership items into nonpartnership items with respect to James alone or with respect to Elizabeth also.

A. WHEN JAMES's PARTNERSHIP ITEMS CONVERTED INTO NONPARTNERSHIP ITEMS THOSE SAME PARTNERSHIP ITEMS NECESSARILY BECAME NONPARTNERSHIP ITEMS WITH RESPECT TO ELIZABETH

We conclude that because the only partnership items taken into account in the Callaways'joint returns were James's partnership items held by him as separate property, when all of his partnership items converted into nonpartnership items, all the Mountain View item reported in the joint returns necessarily became nonpartnership items with respect to Elizabeth also.

1. Before the Request for Prompt Assessment

It is undisputed that James's partnership interest was held as separate property. Only James was a partner as that term is defined in subtitle A. See I.R.C. section 761(b) ("For purposes of this subtitle, the term 'partner' means a member of a partnership."); see also id. section 7701(a)(2). Only James owned an interest in his distributive share of the Mountain View tax items and only he was required to take those items into account, pursuant to Code section 702(a). That section requires that "[i]n determining his income tax, each partner shall take into account separately his distributive share of the partnership's . . . items of income, gain, loss, deduction, or credit. . . ." I.R.C. section 702(a); see also Treas. Reg. section 1.702-1(a). Whether classified as "partnership items," I.R.C. section 6231(a)(3), or "nonpartnership items," id. section 6231(a)(4), there is no doubt that James's distributive shares of the Mountain View tax items remained at all times his separate property. In particular, the Mountain View losses at issue in this case were his items.

We turn now to the classification of those items as either "partnership items" or "nonpartnership items" for the purposes of subtitle F. Before the filing for prompt assessment, it is undisputed that James's distributive shares of the various Mountain View tax items were classified as "partnership items." The Code defines "partnership item" to mean:

with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the B-14 provide that, for

EXHIBIT "A" Pg. 8

purposes of [Subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. section 6231(a)(3). As prescribed by the Treasury regulations, the term includes "[t]he partnership aggregate and EACH PARTNER'S SHARE OF . . . [i]tems of income, gain[,] loss, deduction, or credit of the partnership." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i) (emphases added). "[E]ach partner's share" refers to the distributive share of items that a partner must take into his account, pursuant to Code section 702(a). Here, it is undisputed that only James owned such a "share of" the Mountain View partnership items. If is also evident from the regulation that tax items are classified as partnership items both with respect to the partnership ("the partnership aggregate") and with respect to "each partner's share of" those items. In this manner, the regulatory scheme accommodates the concept of conversion: a "partner's share of" any partnership item may subsequently treated as nonpartnership item, see I.R.C. section 6231(b)(1), even though such an item, in the aggregate, remains "more appropriately determined at the partnership level." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i).

In sum, as is undisputed, at the time they were originally taken into account on his tax returns, James' distributive shares, of the Mountain View tax items were both (1) his separate property, and (2) classified as "partnership items."

We next consider James's distributive shares of Mountain View tax items with respect to Elizabeth. First, Elizabeth owned no interest in or "share of"these items. Treas. Reg. section 301.6231(a)(3)-1(a)(1). The Mountain View tax items produced tax consequences for her solely through the Callaways' decision to file joint returns. Had Elizabeth filed separately from James, Elizabeth would have taken no share of James's distributive shares of Mountain View tax items into account in computing her tax liability for the years at issue. Cf. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) (federal tax law "'creates no property rights but merely attaches consequences, federally defined, to rights created under state law'") (quoting United States v. Bess, 357 U.S. 51, 55 (1958)).

The filing of joint tax returns does not alter property rights between husband and wife. See Zeeman v. United States, 395 F.2d 861, 865 (2d Cir. 1968). In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another. See, e.g., McClelland v. Massinga, 786 F.2d 1205, 1210 (4th Cir. 1986) ("[T]he mere filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property."). The Callaways' decision to file jointly, see I.R.C. section 6013(a), had no effect on James's separate ownership of his Mountain View items.

However, because the Callaways filed joint returns, their tax was computed on their aggregate income. See I.R.C. section 6013(d)(3); Treas. Reg. 1.6013-4(b) ("Although there are two taxpayers on a joint return, there is only one taxable income."). Liability for that tax was joint and several, See I.R.C. section 6013(d)(3). Ja B-15 his distributive shares

EXHIBIT "A" pg. 9

of Mountain View tax items into joint account in computing the Callaways' aggregate income. See I.R.C. section 702(a). Therefore, because Elizabeth's "income tax, liability . . . [was] determined . . . in part by taking into account . . . partnership items of the partnership," she was a "partner" "[f]or purposes of" subchapter C. I.R.C. section 6231(a)(2)(B); Temp. Treas. Reg. section 301.6231(a)(2)-1T(a). However, Elizabeth's status as partner "[f]or purposes of [subchapter C]" did not make her a "member of the partnership," see I.R.C. section 761(b); nor did it transfer to her a share of James's distributive share of the Mountain View items; nor did it effect any change in the classification of those items as either "partnership items" or "nonpartnership items." Her status as a partner simply gave her certain notice and participation rights in any partnership proceedings under TEFRA -- when those procedures applied. See Temp. Treas. Reg. section 301.6231(a)(2)-1T(a).

Most importantly, Elizabeth's status as a partner arises only by operation of subchapter C and only "for purposes of [subchapter C]." I.R.C. section 6231(a). It is a consequence of the application of that subchapter. The issue whether subchapter B or subchapter C applied to the disputed assessments -- that is, THE issue in this case -- does not turn on Elizabeth's status, as a partner under TEFRA. It turns on the classification, for the purposes of subtitle F, of the items to which the tax deficiencies were attributable. If those items were classified as partnership items, subchapter C would apply. See I.R.. sections 6221, 6211(c), 6216(4). If those items were classified as nonpartnership items then subchapter C could not apply. See, e.g., I.R.C. section 6276(f); Maxwell, 87 T.C. at 788. The Commissioner's argument accepted by the the Tax Court assumes its own conclusion. See Callaway, 75 T.C.M. (CCH) at 1960 ("[N]otwithstanding the conversion of decedent's partnership items to nonpartnership items . . . Mrs. Callaway was at all times treated as a Mountain View partner who was fully entitled to participate in partnership level proceedings."). Unless subchapter C still applies, the fact that Elizabeth Callaway is a "partner" "[f]or purposes of [that] subchapter," I.R.C. section 6231(a)(2)(B), is irrelevant.

We conclude that immediately before the request for prompt assessment: (1) all James's distributive shares of the Mountain View tax items (including the disputed losses) as taken into account in the Callaways'joint returns were James's separate property, see I.R.C. section 702(a); 6013(a); (2) all of those items were classified as partnership items; see I.R.C. section 6231(a)(3); Treas. Reg., section 301.6231(a)(3)-1(a)(1)(i); <<ENDNOTE 11>> and (3) any adjustment to the tax treatment of those partnership items had to be determined under subchapter C, see I.R.C. section 6221; Temp. Treas. Reg. section 301.6221-1T(a).

For so long as James's distributive shares of the Mountain View tax items, as taken into account in their joint returns, were characterized as "partnership items," they were necessarily partnership items with respect to Elizabeth. However, as we conclude below, when James's distributive share of the Mountain View tax items converted into nonpartnership items, they necessarily converted into nonpartnership items with respect to Elizabeth.

EXHIBIT "A" Pg. 10

B-16

2. The Results of the Conversion

A "'nonpartnership item' means an item which is (or is treated as) not a partnership item." I.R.C. section 6231(a)(4). It is the parenthetical that is important. Pursuant to section 6231(c)(2), the Secretary has the authority to provide by regulation that certain items otherwise treated as partnership items are to be treated as nonpartnership items. It is not disputed that an individual "partner's share of" such items, Treas. Reg. section 301.6231(a)(3)-1(a)(1), can be treated as "not a partnership item," I.R.C. section 6231(a)(4). The purpose of this is clear. By severing the partner in question from the partnership level proceedings, the Secretary seeks to meet what he has identified as "special enforcement considerations." I.R.C. section 6231(c)(1)(E). The conversion of the partnership items into nonpartnership items removes them from subchapter C proceedings and subjects them to the procedures of subchapter B. See I.R.C. section 6230(a)(2)(A)(ii). Because the tax treatment of his items is no longer subject to the subchapter C proceedings, a partner no longer has an interest in the outcome of those proceedings. By statute he is no longer a party to a judicial proceeding under section 6226 and loses his rights to participate in such an action. See I.R.C. sections 6226(d), 6228(a)(4)(B); cf. Tax Ct. Rules 245(b), 247(a) reprinted following 26 U.S.C.A. section 7453. In the case of a partner filing in bankruptcy, the "special enforcement consideration" is the need to prevent the automatic stay imposed by the bankruptcy code, see 11 section U.S.C. 362, from staying the TEFRA proceedings against the other partners. See Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198, 204 (1987).

the case of a request for prompt assessment, the consideration is facilitating the timely wrapping up of the partner's estate, which requires the final determination of his income tax liability.

And that is the relevant concern here. Pursuant to Temp. Treas. Reg. section 301.6231(c)-8T, when his estate filed for prompt assessment, see I.R.C. section 6501(d), the distributive shares of James's Mountain View tax Items were converted from partnership Items into nonpartnership items. See I.R.C. section 6231(b)(1)(D)), (c)(1)(E).

In relevant part the prompt assessment regulation states that the "partnership items of . . . a partner [on whose behalf a request for prompt assessment of tax under section 6501(d) is filed] . . . shall be treated as nonpartnership items . . . Temp. Treas. Reg. section 301.6231(c)-8T. Applying this instruction to the facts before us, James's distributive shares of the Mountain View tax items for the years in question converted from partnership items into nonpartnership items. Because the only Mountain View tax items taken into account on the Callaway's joint returns were James Callaway's items, held as separate property, it follows that all such items converted from partnership items into nonpartnership items. In our view, these items necessarily became nonpartnership items with respect to Elizabeth. The items had been partnership items with respect to her, only because James was required to take them into account and he had taken them into account in a joint return filed with Elizabeth. As a consequence, tax deficiencies assessed against either James or Elizabeth attributable to these items were to be determined by following the notice of def B-17 :ocedures of subchapter

EXHIBIT "A" Pg. 11

B. See I.R.C. section 6230(a)(2)(A)(ii).

Our interpretation of the effect of the prompt assessment regulation is not only consistent with its text -- which instructs that James's distributive share of the Mountain View tax items converted from partnership items into nonpartnership items -- but also comports with the overall structure and purpose of the TEFRA provisions. The, position adopted by the Tax Court does not.

The position of the Tax Court below creates the anomaly that a single share of tax items taken into account on a single return will be treated simultaneously as a "partnership item" and a "nonpartnership item." Under this reading, James's shares of disputed Mountain View losses, as reported in the Callaways'joint returns, would be treated as nonpartnership items with respect to James and partnership items with respect to Elizabeth. Consequently, the procedures of subchapter B would apply to assessments against James, while the procedures of subchapter C would apply to assessments against Elizabeth, notwithstanding that any deficiencies were attributable to the identical items. This result contradicts the language and structure of the Code, which make quite clear that partnership item and nonpartnership item are mutually exclusive classifications, see I.R.C. section 6231(a)(4) ("nonpartnership item' means an item which is . . . not a partnership item"), that trigger mutually exclusive audit and assessment procedures under subchapter C and subchapter B respectively. See I.R.C. sections 6216(4), 6221, 6230(a)(2)(A)(ii). The legislative history is clear that this strict dichotomy provided the fundamental structure of the TEFRA provisions. See H.R. Conf. Rep. 97-760, at 611. [pound sign XI9Nsage,(?)]" [sic] J. C. Penney Co. v. Commissioner, 312 F.2d 65, 72 (2d Cir. 1962) (Friendly, J.), or the phrase "of THE partnership" (emphasis added) was inserted to ensure that the partnership items in question are those of the specific source partnership rather than of another partnership. However, since we do not rely on the reading that Elizabeth ceased to be a partner, and neither party raised this issue on appeal, we leave these arguments for another day. se, [sic] the Commissioner would still be required to proceed under subchapter B with respect to both spouses. ing [sic] a joint partnership interest with her husband, whereas the instant case concerns the status of a taxpayer who filed a joint return with her husband, who held a separate partnership interest, we see no meaningful distinction between the controlling statutory and regulatory provisions.

Callaway, 75 T.C.M. (CCH) at 1961.

We disagree. The distinction between the arrangement of the Callaways' and the Dubins' property interests is significant. Because Jewell Dubin owned a joint interest in her husband's membership interest, she owned a share of the partnership's tax items. Jewell was required to take her share of those items into account in determining her tax liability, whether she filed jointly or separately. See Treas. Reg. section 1.702-1(d). In short, she owned partnership items.

Applying the prompt assessment regulation in the manner the Dubin court applied the almost identical bankruptcy regulation supports our holding ON THE FACTS OF THIS CASE, The Dubin court focused on the conversion of the partnership items "of" the partner named ir B-18 :y. See Dubin, 99 T.C.

EXHIBIT "A" Pg. 12

at 334. Further, in Gillilan v. Commissioner, 66 T.C.M. (CCH) 398, 402 (1993), dealing with the same pattern of material facts as Dubin and, speaking through the same judge, the Tax Court clarified that it is only the wife's "SHARE of [the partnership's] losses" that remains a partnership item after her husband's share is converted. Our holding is consistent with the straightforward application of Dubin to the facts of this case, where James Callaway owned all of the losses and Elizabeth Callaway owned none. Dubin and Gillilan teach that Elizabeth's "share of" any partnership items would have remained unconverted, notwithstanding the conversion of her husband's share; but Elizabeth owned no such share, Dubin and Gillilan have no bearing on this case. In short, the difference between Jewell Dubin, who owned an interest in her husband's partnership items and Elizabeth Callaway, who did not, gives sufficient reason not to extend the Dubin holding into the Callaway context. <<ENDNOTE 12>>

Having ruled as we do, we need not pass on the validity of Dubin's reasoning, and do not do so. But having studied that ruling and the statute and regulations on which it is based, we note our doubts about its reasoning. As a matter of statutory interpretation, it seems to us strangely reasoned and wrongly decided.

Where a husband and wife own a joint interest in the partnership, the statutory scheme involves the interplay of two Code provisions. Under section 6231(a)(2), "[f]or purposes of [subchapter C]," a "partner" is defined as:

(A) a partner in the partnership, and

(B) any other person whose income tax liability . . . is determined . . . by taking into account . . . partnership items of the partnership.

I.R.C. section 6231(a)(2). Under this provision, because each spouse OWNS a share of the member's distributive share of the partnership items and because each is required to take that share into account in computing his income tax liability, see I.R.C. section 702(a); Treas. Reg. section 1.702-1(d), a husband and wife owning a joint interest in a partnership will necessarily both qualify as partners, regardless whether the couple files joint or separate returns. Because each spouse is a "partner," each may participate in the partnership proceedings under subchapter C and thereby protect his or her interest in the determination of taxes for which each will be liable.

On the other hand, Code section 6231(a)(12) instructs that:

Except to the extent otherwise provided in regulations, a husband and wife who have a joint interest in a partnership shall be treated as 1 person.

Because husband and wife share a joint interest in a SINGLE membership, this section recognizes the appropriateness, as a general rule, of treating the husband and wife as "1 person." Regardless of the arrangement of property rights between the spouses, from the perspective of the partnership, which is the focus of TEFRA, their interest constitutes but a single membership. It follows, for example B-19 :ice given to the

EXHIBIT "A" Pg. 13