**STATE OF ILLINOIS** )
) ss.
**COUNTY OF DU PAGE** )

**AFFIDAVIT**

We, the attesting witnesses to the Will of MILDRED L. PARK on oath state that each of us was present on this 26[th] day of July, 2001, and saw the Testator sign the Will, to which this affidavit is attached, in our presence; that the Will was attested by each of us in the presence of the Testator; and that each of us believed the Testator to be of sound mind and memory at the time the Will was signed.

Missy Hahn
Judith Kowalczak
Marjorie Neumann

SUBSCRIBED AND SWORN to before me this 26[h] day of July, 2001.

Kimberly S. Coogan
Notary Public

"OFFICIAL SEAL"
KIMBERLY S. COOGAN
Notary Public, State of Illinois
My Commission Expires Mar. 10, 2002

EXHIBIT "E" Pg. 27



01W2901153

F:\DOCS\NONLITIG\ESTATE\EstParkMildred\AffidavitSmallEst.wpd

State of Illinois )
) ss
County of Lake )

**SMALL ESTATE AFFIDAVIT**

I, Bonnie S. Murphy, on oath state:

(1) (a) my post office address is 428 Tallgrass Circle, Lake Zurich, Illinois;

(b) my residence address is 428 Tallgrass Circle, Lake Zurich, Illinois;

(c) I submit myself to the jurisdiction of Illinois courts for all matters related to the preparation and use of this Affidavit. My agent for service of process is: Kimberly S. Coogan, Manetti & Griffith, Ltd., 2311 West 22nd Street, Suite 217, Oak Brook, Illinois, 60523.

I understand that if no person is named above as my agent for service, or if for any reason, service on the named person cannot be effectuated, the attorney who prepared this Affidavit on my behalf is recognized by Illinois law as my agent for the service of process.

(2) The decedent's name is Mildred L. Park;

(3) The date of decedent's death was November 13, 2001, and I have attached a copy of the death certificate hereto.

(4) The decedent's place of residence immediately before death was 22320 Classic Ct., Apt. 451, Lake Barrington Woods, Illinois, 60010;

(5) No letters of office are now outstanding on the decedent's estate and no petition for letters is contemplated or pending in Illinois or in any other jurisdiction, to my knowledge.

(6) The gross value of the decedent's entire personal estate, including the value of all property passing to any party either by intestacy or under a will, does not exceed $50,000.00:

| | |
|---|---|
| Harris Bank Cary-Grove<br>Checking account number 0700466670 | $31,848.00 |
| Regions Bank, Hot Springs, AR<br>Certificate of Deposit number 679315970 | 11,100.00 |
| Total | $42,948.00 |

EXHIBIT "E" Pg. 28 B-81

(7) (a) All of the decedent's funeral expenses have been paid; or

~~(b) The amount of the decedent's unpaid funeral expenses and the name and post office address of each person entitled thereto are as follows:~~

(Strike either 7(a) or 7(b).)

(8) There is no known, unpaid claimant or contested claim against the decedent, except as stated in paragraph 7.

(9) (a) The names and places of residence of any surviving spouse, minor children and adult dependent children of the decedent as follows:

| Name and Relationship | Place of Residence | Age of Minor Children |
| --- | --- | --- |
| None | | |

(b) The award allowable to the surviving spouse of a decedent who was an Illinois resident is $ N/A ($10,000.00 plus $5,000.00 multiplied by the number of minor children and adult dependent children who reside with the surviving spouse at the time of the decedent's death. If any such child did not reside with the surviving spouse at the time of the decedent's death, so indicate).

(c) If there is no surviving spouse, the award allowable to minor children and adult dependent children of a decedent who was an Illinois resident is $ N/A ($10,000.00 plus $5,000.00 multiplied by the number of minor children and adult dependent children) to be divided among them in equal shares.

10. ~~(a) The decedent left no will. The names, places of residence and relationship of the decedent's heirs, and the portion of the estate to which each heir is entitled under the law where decedent died intestate are as follows:~~

| ~~Name, relationship & place of residence~~ | ~~Age of minor~~ | ~~Portion of estate~~ |
| --- | --- | --- |

(or)

(b) The decedent left a will, which has been filed with the clerk of an appropriate court. A certified copy of the will on file is attached. To the best of my knowledge and belief, the will on file is the decedent's last will and was signed by the decedent and attesting witnesses as required by law and would be admissible to probate. The names and places of residence of the legatees and the portion of the estate, if any, to which each legatee is entitled are as follows:



EXHIBIT "E" Pg. 29 B-82

| Name, relationship & place of residence | Age of minor | Portion of estate |
|---|---|---|
| Peter W. Murphy, Trustee of the Mildred L. Park Declaration of Trust dated November 26, 1986<br>428 Tallgrass Circle<br>Lake Zurich, Illinois 60047 | | 100% |

(c) Affiant is unaware of any dispute or potential conflict as to the heirship or will of the decedent.

11. The property described in paragraph 6 of this affidavit should be distributed as follows:

| Name | Specific sum or property to be distributed |
|---|---|
| Peter W. Murphy, Trustee of the Mildred L. Park Declaration of Trust dated November 26, 1986<br>428 Tallgrass Circle<br>Lake Zurich, Illinois 60047 | 100% |

The foregoing statement is made under penalties of perjury.*

Bonnie S. Murphy
Signature of Affiant

*(Note: A FRAUDULENT STATEMENT MADE UNDER THE PENALTIES OF PERJURY IS PERJURY, AS DEFINED IN SECTION 32-2 OF THE CRIMINAL CODE OF 1961 [720 ILCS 5/32-21]).

Prepared by:
MANETTI & GRIFFITH, LTD.
2311 West 22nd Street
Suite 217
Oak Brook, Illinois 60523
(630) 573-5300

United States Court of Appeals
Fifth Circuit
FILED
October 25, 2004
Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 03-20174

---

MORRIS A. WEINER,

Plaintiff-Appellant - Cross-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee - Cross-Appellant,

---

Consolidated with No. 03-20176

MARION S. KRAEMER; JOYCE W. KRAEMER,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

---

Appeals from the United States District Court
For the Southern District of Texas

---

Before JOLLY, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appealing in two related cases from separate courts, Morris Weiner, Marion Kraemer, and Joyce Kraemer seek refunds of federal income taxes and interest paid in connection with their investments in various partnerships. Three issues are raised.

First is the question whether federal courts have jurisdiction, notwithstanding 26 U.S.C. § 7422(h), to entertain the taxpayers' complaints that Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed and cannot be the basis of assessments against them. Second, the taxpayers challenge substantial interest charged against them for "tax-motivated transactions" pursuant to now-repealed § 6621(c). We hold that the courts lacked jurisdiction over the statute of limitations issue and that § 6621(c) interest was improperly charged. The third issue was resolved by a recent decision of this court at odds with the trial courts' decisions. See Beall v. United States, 336 F.3d 419 (5th Cir. 2003) (district courts have jurisdiction to resolve taxpayers' deficiency interest abatement requests under § 6404(e)).

**I. The Factual Background**

In the early 1980s, the taxpayers, all high-income professionals, invested in limited partnerships organized by American Agri-Corp ("AMCOR"). Weiner was a limited partner in Travertine Flame Associates ("TFA"); Joyce Kraemer was a limited partner in Oasis Date Associates ("ODA"); and Marion Kraemer was a limited partner in Coachella Fruit Growers ("Coachella"). The partnerships were farming entities that projected tax write-offs of approximately two hundred percent of the amount invested. The taxpayers reported their proportionate share of partnership losses on their 1984, 1985, and 1986 income tax returns.

EXHIBIT "F"

In 1990 and 1991, the Internal Revenue Service ("IRS") sent each of the partnerships a Notice of FPAA that disallowed farming expenses and other deductions for a number of reasons, including that the partnerships' transactions were "shams" and lacked economic substance. Also in 1991, partners in TFA and ODA commenced a Tax Court action challenging the adjustments as time-barred. Because Weiner and Joyce Kraemer were partners in TFA and ODA, they automatically became parties to the suit. See 26 U.S.C. § 6226(c).

In early 1997, while the Tax Court cases were still pending, the taxpayers offered to settle their disputed partnership item deductions with the IRS through executions of Forms 870-P(AD). These settlement forms were initially sent to them by the IRS. The settlement agreement purported to disallow sixty-three percent of the deductions, as opposed to a total disallowance. The settlement documents made it clear that the IRS would assess additional tax liability and interest "as provided by law."

After accepting the taxpayers' settlements, the IRS assessed additional tax liability and interest pursuant to § 6621(c) in the following manner: for Weiner in 1984 – $15,851 in additional tax and $16,663.22 in interest; for the Kraemers in 1984 – $13,159 in additional tax and $16,599 in interest; for the Kraemers in 1986 – no additional tax (because they had overpaid) but $4,088 in interest. The taxpayers commenced their separate refund suits in 2000. They argued in motions for summary judgment:

(1) that the statute of limitations prevented the 1984 assessments; (2) that additional interest under § 6621(c) was improper as a matter of law; and (3) that the Commissioner had abused his discretion in denying their § 6404(e) abatement of interest claim. The Kraemer court did not consider the limitations defense because it concluded it lacked subject matter jurisdiction over the issue. The Weiner court, however, concluded that it did have jurisdiction, and ultimately decided that the statute of limitations had not run. Both courts also determined that they lacked jurisdiction over the interest abatement claims. Both courts denied the taxpayers' summary judgment motions on the § 6621(c) argument and set the issue for bench trials. The Kraemers conceded the issue before trial, but Weiner presented evidence on the merits and the court ultimately concluded that the interest was improper and ruled in Weiner's favor. The instant appeals followed.

## II. The Statutory Background

This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221–6233, which was enacted to "improve the auditing and adjustments of income tax items attributable to partnerships." Alexander v. United States, 44 F.3d 328, 330 (5th Cir. 1995). TEFRA requires partnerships to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to its partners. Kaplan v. United States, 133 F.3d 469, 471 (7th Cir.

EXHIBIT F

1998). Accordingly, the individual partners are responsible for reporting their pro rata share of tax on their income tax returns. Id.; see also 26 U.S.C. § 701.

TEFRA requires the treatment of all partnership items to be determined at the partnership level. 26 U.S.C. § 6221. While TEFRA defines a "partnership item" in technical terms, the provision generally encompasses items "more appropriately determined at the partnership level than at the partner level." Id. § 6231(a)(3). All other items are defined as nonpartnership items. Id. § 6231(a)(4).

If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a Notice of FPAA. Kaplan, 133 F.3d at 471. The IRS is given three years from the later of (1) the date a partnership return is due, or (2) the date the partnership return is filed, to issue an FPAA. 26 U.S.C. § 6229(a). The three-year period may be extended by agreement (1) between the Secretary and the partnership's tax matters partner ("TMP") (which binds all partners), or (2) between the Secretary and an individual partner (which binds only that partner). Id. § 6229(b)(1). In addition, if the IRS mails an FPAA to the TMP, the three-year period is tolled. Id. § 6229(d). This three-year limitations period is at issue in this case.

For ninety days following issuance of an FPAA, the TMP has the exclusive right to file a petition for readjustment of the

EXHIBIT "F"

partnership items in Tax Court, the Court of Federal Claims, or a United States District Court. Id. § 6226(a). After expiration of the ninety-day period, other partners are given sixty days to file a petition for readjustment. Id. § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate in the proceeding. Id. § 6224(a), § 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax determination. Id. § 6229(d). The partner may contest the tax liability by paying the assessment and filing a refund action in a United States District Court. However, "[n]o action may be brought [in district court] for a refund attributable to partnership items." Id. § 7422(h).

But, if a partner settles his partnership tax liability with the IRS, the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement. Id. § 6228(a)(4), § 6224(c)(1). In addition, partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. Id. § 6231(b)(1)(C). Thus, if a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. Alexander v. United States, 44 F.3d 328, 331 (5th Cir. 1995).

EXHIBIT "F"

### III. FPAA Statute of Limitations

The Weiner and Kraemer courts reached opposing conclusions, and the parties disagree on whether district courts have jurisdiction to decide the FPAA statute of limitations question in refund actions.[1] Generally, district courts have jurisdiction over a taxpayer's refund action. 28 U.S.C. §§ 1340, 1346(a)(1). However, as discussed above, with limited exceptions not applicable here, "[n]o action may be brought for a refund attributable to partnership items (as defined in § 6231(a)(3))." 26 U.S.C. § 7422(h). The more precise question in this case, then, is whether the taxpayers' refund requests are attributable to any partnership item such that the district court would be deprived of jurisdiction.

This court reviews a district court's grant of summary judgment de novo and considers the same criteria that the district court relied upon when deciding the motion. Mongrue v. Monsanto Co., 249 F.3d 422, 428 (5th Cir. 2001). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In addition, we review a district

---

[1] The taxpayers also appeal the Weiner court's decision that, because the 1984 partnership returns were invalid, the statute of limitations did not begin to run. We need not reach this argument.

EXHIBIT F

court's determination of subject matter jurisdiction de novo. Calhoun County, Tex. v. United States, 132 F.3d 1100, 1103 (5th Cir. 1998).

The taxpayers' refund claims are based entirely on the theory that the IRS had no authority to assess tax against them in 1990 and 1991 because the FPAA statute of limitations had run for the years 1984 to 1986. Accordingly, to avoid the jurisdictional bar of § 7422(h), the taxpayers argue that the FPAA statute of limitations, found in § 6229(a), is not a "partnership item."[2] As noted before, TEFRA defines a "partnership item" as

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for the purposes of [subtitle F],

---

[2] Although a partner's settlement agreement with the IRS converts partnership items to nonpartnership items and thereby lifts § 7422(h)'s jurisdictional bar, the conversion did not occur in this case. The Code provides that only those partnership items encompassed by the settlement agreement are converted to nonpartnership items. See 26 U.S.C. § 6231(b)(1)(C) (partnership items of a partner shall convert to nonpartnership items when "the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items") (emphasis added). Section 6229(a) was not mentioned in the taxpayers' settlement agreements and thus may not be considered a converted item.

The holding in Alexander is not to the contrary. In that case, the taxpayer filed a refund action based on the IRS's admission, in a separate Tax Court proceeding, that the FPAA statute of limitations had run. 44 F.3d at 330. Because it was unnecessary for the court to determine the merits of the statute of limitations question when examining its jurisdiction to hear the refund suit, the court did not examine, as we must in this case, whether the FPAA statute of limitations was a partnership item that deprived the court of jurisdiction. Instead, the court examined the basis for its general grant of jurisdiction over the refund suit. In this regard, the court asked whether "the adjustments called for in the FPAA" were partnership items and determined that the settlement agreement, which settled those items specifically, converted them to nonpartnership items. Alexander, 44 F.3d at 331. Thus, the court found that it had jurisdiction to decide the partner-specific question of whether the taxpayer's settlement agreement contractually barred the refund (an issue not present in this case).

EXHIBIT "F" 8

> such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). The taxpayers argue that because § 6229(a), containing the FPAA statute of limitations provision, is found in subtitle F, as opposed to subtitle A, it is not a partnership item. Furthermore, the taxpayers argue that no treasury regulation specifically refers to the limitations issue as a partnership item. See 26 C.F.R. § 301.6231(a)(3)-1(a). The Weiner court reasoned that this omission, coupled with the fact that § 6229(a) is found only in subtitle F, prevents the FPAA statute of limitations from attaining partnership item status. We disagree with this conclusion.

First, the majority of courts to consider this issue have held that the FPAA statute of limitations issue is a partnership item that must be litigated in a partnership level proceeding. See Chimblo v. Comm'r, 177 F.3d 119, 125 (2d Cir. 1999); Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998); Williams v. United States, 165 F.3d 30 (6th Cir. 1998) (unpublished table decision); Barnes v. United States, No. 95-57-Civ-ORL-22, 1997 WL 732594, *3 (M.D. Fla. July 28, 1997), aff'd, 158 F.3d 587 (11th Cir. 1998); Thomas v. United States, 967 F. Supp. 505, 506 (N.D. Ga. 1997); Slovacek v. United States, 36 Fed. Cl. 250, 255 (1996). These courts have reasoned that because the FPAA limitations issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene

EXHIBIT "F"

the purposes of TEFRA. See, e.g., Chimblo, 177 F.3d at 125. We agree with this reasoning and hold that the district courts lack jurisdiction to consider the taxpayers' statute of limitations argument.

Second, responding to the taxpayers' argument directly, the treasury regulations provide that, for the purposes of subtitle F,

> [t]he term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

26 C.F.R. § 301.6231(a)(3)-1(b)(emphasis added). As the court in Slovacek reasoned, the statute of limitations "might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner." 36 Fed. Cl. at 255. In this way, the treasury regulations have implicitly included the statute of limitations determination within the definition of "partnership item."[3]

Third, we find distinguishable two cases the taxpayers rely on. In Monti v. United States, 223 F.3d 76, 82 (2d Cir. 2000), the court held that a partner's right to seek consistent

[3] That the FPAA statute of limitations does not appear in subtitle A does not alone defeat this conclusion. The treasury regulations specifically provide that the term "partnership item" includes the legal and factual determinations underlying the amount, timing, and characterization of certain partnership items found in subtitle A. Therefore, this definition is broad enough to include in its parameters legal and factual determinations not specifically found in subtitle A.

EXHIBIT "F"

settlement terms from the IRS was more appropriately considered a nonpartnership item. The Second Circuit relied on several factors to justify this conclusion, among them the fact that the right to consistent settlement terms, located in § 6224(c)(2), is found in subtitle F, as opposed to subtitle A. Id. at 82. However, the first and arguably most important factor considered by the Monti court in deciding how to categorize a partner's right to consistent settlement terms dealt with the practical realities of that right. The court noted that

> [o]ne partner's right to settlement terms consistent with those granted to another partner is not a partnership item, because the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communications with the IRS. The facts needed to determine whether consistent terms were offered are facts about the partner, not facts about the partnership.

Id. at 82-83 (emphasis added). Conversely, the FPAA statute of limitations determination challenged in this case deals with facts specific to the partnership. The court need not consider the relationship between one partner and another or an individual's communications with the IRS.

Likewise, the court in Prochorenko v. United States, 243 F.3d 1359, 1363 (Fed. Cir. 2001), relying on Monti, concluded that a partner's right to request consistent settlement terms was not a partnership item. That court opined that

> [w]hether or not the [taxpayers] were entitled to such a reduction is an issue that is entirely dependent on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the

> other [] partners. Accordingly, this is not the type of issue that is "more appropriately determined at the partnership level."

Id. at 1363 (quoting the treasury regulations). Again, the situation in this case is quite the opposite. The timeliness of an FPAA affects the IRS's ability to make adjustments to partnership items, which in turn affects all partners alike. This determination is more appropriately made at the partnership level.

From a practical perspective, a finding of jurisdiction over the statute of limitations issue would create an absurd result that contravenes TEFRA. As was the case here, partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here,[4] the Tax Court decided the substantive statute of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to pay the assessed deficiency, while others would not. The result advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole.

---

[4] The TMP for TFA and ODA stipulated during the Tax Court litigation that those partnerships' limitations arguments would be governed by the decision in what became known as Agri-Cal Venture Associates, 80 T.C.M. (CCH) 295 (2000). TFA and ODA thus became bound by the Tax Court's adverse statute of limitations decision.

EXHIBIT "F"

Finally, the taxpayers contend that this court's decision in Alexander controls the determination whether the FPAA statute of limitations is a partnership or nonpartnership item. In Alexander, the taxpayer received an FPAA from the IRS notifying him of an adjustment to partnership items that would affect his tax liability. 44 F.3d at 329. The taxpayer and the IRS eventually entered into a settlement agreement binding the taxpayer to the IRS's treatment of the partnership items. Id. at 330. Over a year after making his deficiency payment, however, the taxpayer learned that another partner had challenged the IRS's FPAA adjustments in Tax Court on the basis of the statute of limitations. Id. In that proceeding, the IRS conceded that the statute of limitations had expired, and the court entered judgment for the partners. Id. Because Alexander had already settled with the IRS, however, the result in the Tax Court did not apply to him. See 26 U.S.C. § 6231(b)(1)(c). As a result, he filed his own individual refund action in the district court. The Government defended the suit by arguing that the parties' contractual settlement agreement prevented the taxpayer from bringing any suit for refund. 44 F.3d at 330.

A panel of this court addressed its jurisdiction to determine if the settlement agreement barred the refund suit. This court first noted that § 7422(h) bars suits for refunds that are "attributable to partnership items." Id. at 331. The question then became whether the taxpayer's refund suit was in fact

"attributable to" any partnership item. The court noted that while the refund was "at one time attributable to partnership items, that is, to the adjustments called for in the FPAA," the nature of those items was altered by the settlement. Id. Section 6231(b)(1)(C) provides that

> [f]or purposes of this subchapter, the partnership items of a partner . . . shall become nonpartnership items as of the date . . . the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items[.]

Therefore, the settlement agreement converted the partnership items to nonpartnership items for the purpose of the district court's jurisdiction.[5] The taxpayers argue here that this analysis comports with their jurisdictional argument and thus excepts their case from § 7422(h)'s bar.

However, the Alexander court did not address the question whether the court had jurisdiction to consider the substantive statute of limitations issue. In Alexander, as opposed to this case, the Government conceded that the statute of limitations barred the assessments. Thus, once the Alexander court found that it had jurisdiction generally over the refund suit, the only substantive issue left to be decided was whether the settlement agreement contractually barred the suit. Id. at 331-32. The settlement agreement in Alexander, like the one in this case, required the taxpayers to agree that they would not bring any claim

---

[5] As discussed supra in note 1, conversion does not provide a basis for jurisdiction in this case.

for refund based on the changed treatment of the partnership items. Id. at 330. The court held that the contractual provision did not bar the refund suit because the taxpayer "[did] not base his refund on the treatment of partnership items at all, but rather on the time-barred deficiency assessed as a result of such treatment." Id. at 332. The taxpayers here seize on this language as proof that the statute of limitations question is a nonpartnership issue. However, the Alexander court made this statement only in the context of analyzing the contractual settlement agreement. The Alexander court did not decide whether it had jurisdiction to reach the merits of the statute of limitations argument, because that argument had already been conceded. Thus, Alexander does not control the question presented in this case, and this court remains convinced that the district courts lack jurisdiction to decide the FPAA statute of limitations issue. On this issue, the decision of the district court in Weiner is therefore incorrect, while the Kraemer decision is correct.

### IV. 6621(c) Increased Interest

Despite its repeal in 1989, the draconian interest provision enacted as § 6221(c) continues to dog taxpayers for returns filed during the early 1980s. Consequently, these tax-payers contest the Government's imposition of additional interest

pursuant to 26 U.S.C. § 6621(c).[6] The provision imposes an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions."[7] 26 U.S.C. § 6621(c)(1) (1988). A "substantial underpayment" is any underpayment exceeding $1,000 per tax year. Id. § 6621(c)(2). Included in the statutory definition of "tax motivated transaction" is "any sham or fraudulent transaction." Id. § 6621(c)(3)(A)(v).

The taxpayers contend that the trial courts are precluded from upholding the § 6621(c) interest assessment because their underlying settlement agreements do not establish that their underpayments were attributable to "tax motivated transactions." In the FPAAs, the Government asserted several bases for the disallowance of certain deductions. Among them was a "sham or fraudulent transaction," which qualifies as a "tax motivated transaction" for the purposes of 6621(c). 26 U.S.C. § 6621(c)(3)(A)(v). Because the taxpayers settled with the IRS, however, there was never any need for a court to examine the IRS's claimed bases for disallowance and make a determination about their application.

The taxpayers principally rely on Todd v. Comm'r, 862 F.2d 540 (5th Cir. 1988). Todd dealt with the IRS's imposition of

---

[6] The Kraemers suffered an adverse judgment on this point, while Weiner prevailed on the court's finding that he had a profit motive relevant to the assessment of § 6221(c) interest. We do not reach the issue the district court found dispositive. Defending against the Government's appeal, however, Weiner makes, inter alia, the same argument as the Kraemers.

[7] This section was repealed in 1989, but it applies to the tax years in question in this appeal (1984 to 1986).

EXHIBIT "F"

the § 6659(a) penalty. However, because both sections employ the same "attributable to" language, the analysis in Todd is instructive in the § 6621(c) context. In Todd, this court held that the taxpayers' underpayment was not "attributable to" a valuation overstatement and thus § 6659(a)'s penalty did not apply. The taxpayers in Todd did not settle with the IRS but instead chose to challenge the IRS's disallowances in the Tax Court. In that proceeding, the Tax Court held that the Todds were not entitled to their deductions and tax credits because the assets had not been put into service during the tax year. Id. at 541. On appeal, this court reasoned that because the deductions and credits were disallowed for a reason totally unrelated to any valuation overstatement, the resulting underpayment could not be "attributable to a valuation overstatement." Id. at 542.

The court then applied a treasury regulation formula that determines the portion of deductions to which the higher interest rate applies.[8] Because the court had already determined that no

---

[8] The formula for determining the amount of underpayment attributable to a valuation overstatement is as follows:

> (1) "actual tax liability" (i.e., the tax liability that results from applying all of the IRS's proper adjustments) with
> (2) the "actual tax liability" reduced by the valuation overstatement adjustment.

The difference between (1) and (2) is the amount of the underpayment attributable to the valuation overstatement. See Todd, 862 F.2d at 542-43.

Similarly, the amount of tax motivated underpayment for § 6621(c) is determined in the following manner:

> (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had

EXHIBIT "F"

portion of the disallowed deductions and credits were "attributable to" the valuation overstatement, the two sides of the equation were equal.[9] The court noted that "where the deductions and credits . . . were inappropriate altogether, the Todds' valuation of the property supposedly generating the tax benefits had no impact whatsoever on the amount of tax actually owed." Id. at 543. Or, stated another way, the Todds' underpayment was not "attributable to" a valuation overstatement.

In McCrary v. Comm'r, 92 T.C. 827 (1989), a case also heavily relied on by the taxpayers, the Tax Court adopted the reasoning in Todd and concluded that the McCrarys were not subject to § 6659(a) or § 6621(c) interest on the disallowed investment tax credit. The McCrarys conceded one of the IRS's grounds for disallowing the investment tax credit, thus eliminating the need for a trial on these issues in the Tax Court. Id. at 851. The ground

---

been reported properly on the income tax return of the taxpayer ("total tax liability"); and

(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions . . ., calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").

The difference between (1) and (2) is the amount of the tax motivated underpayment. See 26 C.F.R. § 301.6221-2T, A-5.

[9] This is because the formula requires the court to determine the portion of underpayment attributable to a valuation overstatement "after taking into account any other proper adjustments to tax liability." Todd, 862 F.2d at 542 (emphasis added). Therefore, because the Tax Court determined that not placing the assets in service was a "proper adjustment," the two sides of the formula were equal.

conceded by the McCrarys (that their agreement was a license and not a lease) was neither a "valuation overstatement" nor a "tax motivated transaction." The Tax Court noted that alternative grounds could have justified the disallowance, including sham transaction, which would have qualified for the § 6621(c) addition to tax. However, the Tax Court declined to address the sham transaction issue, which was unnecessary to support the conceded disallowance, for the sole purpose of applying § 6621(c). Id. at 859.

The taxpayers also rely on Heasley v. Comm'r, 902 F.2d 380 (5th Cir. 1990), in which this court relied on and extended the Todd rule. In Heasley, the IRS relied on a variety of reasons for disallowing the Heasleys' claimed tax credits. The Heasleys, like the taxpayers here, conceded the deficiency, but continued their suit in the Tax Court to challenge the § 6659(a) and § 6621(c) additions to tax. The Tax Court concluded that the Heasleys' underpayment was "attributable to" a valuation overstatement under § 6659(a). The Fifth Circuit reversed. With regard to § 6659(a), this court held that even though the Tax Court specifically found that the underpayment was "attributable to" a valuation overstatement, a situation that differed from that in Todd,

> [w]henever the IRS totally disallows a deduction or credit, the IRS may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

Heasley, 902 F.2d at 383.

EXHIBIT "F" 19

These cases afford a conceptual lens through which to view the statutory phrase "attributable to" in the context of § 6621(c). In Todd, the Government argued that "attributable to" really meant "capable of being attributed," such that any time a taxpayer's underpayment was capable of being attributed to a valuation overstatement, the penalty would apply. 862 F.2d at 542. However, the Todd court reasoned that the formula indicated that Congress did not intend for the penalty to apply every time valuation overstatement was at issue. Likewise, the § 6621(c) formula, supra, determines the amount of tax motivated underpayment by first taking into account any other proper, but non-tax-motivated, deductions. On a theoretical level, the formula provides the same reinforcement for viewing "attributable to" narrowly in the § 6621(c) context.[10] When so viewed, it follows that when the FPAA lists several independent reasons for disallowing the taxpayers' deductions, there is no way to

---

[10] The Second Circuit rejected this approach and instead adopted the "capable of being attributed" definition in the § 6621(c) context. See Irom v. Comm'r, 866 F.2d 545, 547 (2d Cir. 1989). In distinguishing Todd, the Second Circuit announced a "separability" test: if two grounds for deficiency exist, one of which qualifies as a tax motivated transaction and the other of which does not, and the two grounds are "inseparable," then the formula relied upon in Todd does not apply. Id. at 547-48. This court in Heasley, again relying on Todd and the formula, noted Irom as contrary authority only. 902 F.2d at 383 n.5. This represents this circuit's only acknowledgment of the Irom rule.

However, even if the Irom rule were to apply, the reasons listed by the IRS in the FPAA are "separable." For example, in addition to sham transaction, the FPAA listed as reasons for disallowing the deductions the following, inter alia: (1) the partnership did not actively engage in the trade or business of farming, and (2) the partnership expenses paid or incurred were not ordinary and necessary trade or business expenses deductible under § 162. The Tax Court has found that both of these reasons are "separable" from a finding of sham or fraudulent transaction. Harris v. Comm'r, 58 T.C.M. (CCH) 1441 (1990).

EXHIBIT "F"

determine, without additional superfluous litigation, whether the taxpayers' underpayment is "attributable to" a reason that also qualifies as a tax-motivated transaction (such as a sham).

The Tax Court has twice embraced this narrow view of "attributable to" in § 6621(c) cases and decided that a taxpayer's blanket concession precludes a finding that any underpayment is "attributable to" a tax motivated transaction. First, in Rogers v. Comm'r, 60 T.C.M. (CCH) 1386 (1990), the taxpayers conceded the IRS's ability to disallow deductions. The Tax Court relied on McCrary, supra, and reasoned that because "the determination of whether there was a tax-motivated transaction was made only concerning the disputes over the additions to tax and increased interest, we could not conclude that the taxpayer required a trial that otherwise would have been unnecessary." Id. at 1397. The taxpayers also cite Schachter v. Comm'r, 67 T.C.M. (CCH) 3092, 1994 WL 263329, *5 (1994), in which the court noted that because the taxpayer entered into a stipulation of settled issues and conceded the disallowance of deductions, these actions "obviated the need for a trial on the numerous issues raised in the deficiency notice for the purpose of identifying which, if any of them, provided the substantive ground or grounds for disallowance . . . ." The Schachter court was also persuaded that because of the numerous grounds alleged in the notice of deficiency, it was impossible to say that the underpayment was "attributable to" any one ground. The court noted:

EXHIBIT "F"