If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

CAROL M. LANDY

DIRECTOR, SERVICE CENTER

Enclosures:
Form 870-P
Copy of this letter

Letter 1830(CG) (Rev. 08-93)

Exhibit "H" P 3

Department of the Tr sury — Internal Revenue Service

Settlement Agreer r For Partnership Adjustments

## Schedule of Adjustments

Name of Partnership Crystal Star Eagle

Taxpayer Identifying Number: 13-3558089

| | Tax Year(s) Ended | | |
|---|---|---|---|
| Detail of Adjustments To Ordinary Income | 12-31-85 | | |
| Ordinary Loss | $2,733,064 | | |
| Total Adjustments To Ordinary ~~Income~~ Loss | $2,733,064 | | |
| Other Adjustment: Tax Preference Item: Accelerated Depreciation | | | |
| (1) Adjustment | | | |
| (2) As Reported | ($1,460,037) | | |
| (3) Corrected | 1,460,037 | | |
| | -0- | | |
| Other Adjustment: | | | |
| (1) Adjustment | | | |
| (2) As Reported | | | |
| (3) Corrected | | | |

Remarks

See enclosed for explanation of adjustments.

Exhibit "H" P4

B235

Crystal Star Eagle
13-3558089

## EXPLANATION OF ADJUSTMENTS
## For The Taxable Year Ended December 31, 1985

It is determined from the examination of the books and records of Crystal Star Eagle that the loss for the taxable year 1985 is zero.

Since you reported a loss in the amount of $2,733,064 for the year 1985, your ordinary income is increased by $2,733,064 computed as follows:

| | 1985 |
|---|---|
| Ordinary Net Income (Loss) per Partnership Return | ($2,733,064) |
| Add: Disallowed Deductions Net Of Expenses Allowed To The Extent Of Income | 2,733,064 |
| Corrected Distributable Partnership Income | $ -0- |



Exhibit "H" P5

Crystal Star Eagle
13-3558089

EXPLANATION OF ADJUSTMENTS
For The Taxable Year Ended December 31, 1985

I) All items of income, loss and deduction reported with respect to the partnership's equipment leasing activities for the year 1985 are disallowed. For purposes of federal income taxation, the partnership cannot be considered the owner of the equipment with respect to which said items of income, loss and deduction are reported since, after examination of all facts and circumstances, the partnership is found not to have incurred the benefits and burdens of ownership of the equipment or to have made, in substance, a true economic investment in said equipment.

Al rnatively, if it is held that the partnership was the owner of the equipment for federal income tax purposes during the years at issue, then it is determined that the acquisition and lease of said equipment was not an activity entered into for profit under Internal Revenue Code Section 183(a). Accordingly, any deductions claimed which have not been disallowed in full for the specific reasons set forth below, are only allowed to the extent of income from such activity in accordance with, and in the manner provided by, Section 183(b)(1) and 183(b)(2).

II) It is further determined that the following deductions, to the extent claimed, are disallowed for the specific reasons stated:

A. Depreciation

The partnership has not established the cost or depreciable basis of the eq pment. In addition, the method of depreciation claimed is found materially to distort income during the year at issue.

Alternatively, it is determined that the portion of the depreciation deduction attributable to any notes, guarantees, or assumptions executed by the partnership is disallowed because such notes, guarantees, or assumptions lack economic substance, and, therefore, cannot be added to the cost or depreciable basis of the equipment.

B. Other Rental Expenses

It is determined that the claimed deductions for other rental expenses are disallowed because the partnership has not substantiated them or shown that they were incurred, or that they constitute ordinary and necessary business expenses. In addition, the amounts claimed are unreasonable and excessive.

If it is determined that these deductions were, in fact, incurred, such expenditures are either for syndication or are capital in nature with an indeterminable useful life and are, therefore, neither currently deductible nor amortizable.

:rystal Star Eagle
.3-3558089

EXPLANATION OF ADJUSTMENTS
For The Taxable Year Ended December 31, 1985

[II) Since the partnership's debt obligation is contingent and lacking in true economic substance, it cannot be considered a partnership liability and no part of said note can be considered in determining each partner's basis in his or her partnership interest under Section 752(c) of the Internal Revenue Code.

[V) Alternatively, if it is decided that the disallowed partnership deductions are allowable in whole or in part, then it is determined that each partner is only entitled to deduct his or her proportionate share of the partnership loss which does not exceed his or her amount "at risk," subject to the provisions of ction 465 of the Internal Revenue Code.

/) Any amounts shown as credits are disallowed because the property does not qualify for the credits under Section 38 of the Internal Revenue Code or under any other section of the Internal Revenue Code.



Exhibit "H" P7

FOR INFORMATION ONLY

The explanation stated below is provided for your information.

IRC 6621(c)

It is determined that the partnership has improperly taken deductions and/or credits for tax motivated reasons. The increased rate of interest prescribed in IRC 6621(c) is applicable at the individual partner level after the partnership proceedings have been completed. Where the only items raised in a subsequent affected items notice of deficiency are additions to tax, the Service takes the position that the Tax Court will not have jurisdiction to consider IRC 6621(c) interest unless the interest is prepaid. IRC 6621(c) interest will be assessed and collected as regular interest in those cases.

Exhibit "H" P8

Department of the Treasury
Internal Revenue Service

P-903-324-279

Date: 03-05-96

PO BOX 630 (STOP 634-1)
HOLTSVILLE NY 11742-0630

Refer To:
C:T:S:634-1
030596-0088

CLAUDE B AMARNICK
1515 SO FLAGLER DR APT 2201
WEST PALM BEACH FL 33401-7136156

Taxpayer Identifying Number
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

Name of Partnership:
CRYSTAL STAR EAGLE
Partnership Identifying #:
13-3558089
Tax Year Ended: DEC 1986
Date FPAA Mailed To
Tax Matters Person: 03-04-96
Person To Contact/Hours:
P RIVIERE
8:00 A.M. - 4:00 P.M. EDT
Contact Telephone #:
(Not a toll-free number.)
(516)654-6668

NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

As required by law, we are sending this Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership shown above and to each partner of the partnership who is entitled to such notice.

We are proposing adjustments to the partnership items of the partnership. We are sending this information to the Tax Matters Partner (TMP) of the partnership, who is the partner designated by the partnership to deal with the IRS. He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named at the top of [illegible] letter.

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The Form 870-P, Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments, is a summary of the proposed adjustments to the partnership return. You may compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you.

1. <u>If you agree with the adjustments:</u>

Sign the enclosed Form 870-P. By doing so, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. You are also waiving your rights to participate in any administrative or judicial proceeding affecting the partnership years in question. This agreement will not become effective or final until you return it and it is signed in behalf of the Commissioner of Internal Revenue. Once the agreement is final, you may not file a claim to change the items in question [illegible] claim for refund or credit based on a readjustment

B240

Exhibit "A" Exhibit "I" P1

2. If you don't agree with the adjustments:

If you are the TMP of the partnership and want to contest the adjustments in court, you have 90 days from the date this letter was mailed to file a petition for a readjustment of the partnership items of the partnership with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States for the district in which the partnership's principal place of business is located.

During this 90-day period, no other partner may file a petition for judicial review, and the filing of a petition by the TMP precludes all other actions.

If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any other partner entitled to receive this notice (or any group of partners who together have an interest of five percent or more in the profits of the partnership (5 percent group)) may petition one of these courts after the 90th day, but on or before the 150th day, from the date the FPAA was mailed to the TMP. If more than one petition is filed, the first petition filed in the Tax Court will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no petition is filed in the Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

United States Tax Court
400 Second Street, N.W.
Washington, D.C. 20217

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court can't consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

As a condition to filing a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition (including each member of a 5 percent group that files a petition) must deposit the amount by which the partner's tax liability would be increased if the treatment of the partnership items of the partnership on the partner's return were made consistent with the treatment of the partnership items under the FPAA. If you reported the partnership items of the partnership the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit this amount with IRS on or before the day you file your petition.

3. If you do nothing:

If no readjustment petition is filed in any of the courts listed in this letter, the FPAA becomes binding, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You won't be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law permits us to bill you after 150 days from the mailing date of the FPAA to the TMP. However, if a petition is filed in the Tax Court, we won't bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

Exhibit "I" P2

B-241

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

CAROL M. LANDY

DIRECTOR, SERVICE CENTER

Enclosures:
Form 870-P
Copy of this letter

Letter 1830(CG) (Rev. 08-93)

Exhibit "I" P3

Department of the Treasury — Internal Revenue Service

## Settlement Agreement For Partnership Adjustments

### Schedule of Adjustments

| Name of Partnership Crystal Star Eagle | Tax Year(s) Ended | | |
|---|---|---|---|
| Taxpayer Identifying Number: 13-3558089 | | | |
| Detail of Adjustments To Ordinary Income | 12-31-86 | | |
| Ordinary Loss | $3,570,696 | | |
| Total Adjustments To Ordinary ~~Income~~ Loss | $3,570,696 | | |
| Other Adjustment: Tax Preference Item: Accelerated Depreciation | | | |
| (1) Adjustment | ($1,587,467) | | |
| (2) As Reported | 1,587,467 | | |
| (3) Corrected | -0- | | |
| Other Adjustment: | | | |
| (1) Adjustment | | | |
| (2) As Reported | | | |
| (3) Corrected | | | |

Remarks

See enclosed for explanation of adjustments.

Exhibit "I" P4



U.S. GOVERNMENT PRINTING OFFICE

Crystal Star Eagle
13-3558089

EXPLANATION OF ADJUSTMENTS
For The Taxable Year Ended December 31, 1986

It is determined from the examination of the books and records of Crystal Star Eagle that the loss for the taxable year 1986 is zero.

Since you reported a loss in the amount of $3,570,696 for the year 1986, your ordinary income is increased by $3,570,696 computed as follows:

| | 1986 |
|---|---|
| Ordinary Net Income (Loss) per Partnership Return | ($3,570,696) |
| Add: Disallowed Deductions Net Of Expenses Allowed To The Extent Of Income | 3,570,696 |
| Corrected Distributable Partnership Income | $ -0- |



Exhibit "I" P5

Crystal Star Eagle
13-3558089

EXPLANATION OF ADJUSTMENTS
For The Taxable Year Ended December 31, 1986

I) All items of income, loss and deduction reported with respect to the partnership's equipment leasing activities for the year 1986 are disallowed. For purposes of federal income taxation, the partnership cannot be considered the owner of the equipment with respect to which said items of income, loss and deduction are reported since, after examination of all facts and circumstances, the partnership is found not to have incurred the benefits and burdens of ownership of the equipment or to have made, in substance, a true economic investment in said equipment.

Alternatively, if it is held that the partnership was the owner of the eq ment for federal income tax purposes during the years at issue, then it is determined that the acquisition and lease of said equipment was not an activity entered into for profit under Internal Revenue Code Section 183(a). Accordingly, any deductions claimed which have not been disallowed in full for the specific reasons set forth below, are only allowed to the extent of income from such activity in accordance with, and in the manner provided by, Section 183(b)(1) and 183(b)(2).

:I) It is further determined that the following deductions, to the extent :laimed, are disallowed for the specific reasons stated:

.. Depreciation

he partnership has not established the cost or depreciable basis of the quipment. In addition, the method of depreciation claimed is found materially o distort income during the year at issue.

lternatively, it is determined that the portion of the depreciation deduction ttributable to any notes, guarantees, or assumptions executed by the artnership is disallowed because such notes, guarantees, or assumptions lack conomic substance, and, therefore, cannot be added to the cost or depreciable asis of the equipment.

. Other Rental Expenses

: is determined that the claimed deductions for other rental expenses are .sallowed because the partnership has not substantiated them or shown that ley were incurred, or that they constitute ordinary and necessary business :penses. In addition, the amounts claimed are unreasonable and excessive.

it is determined that these deductions were, in fact, incurred, such :penditures are either for syndication or are capital in nature with an determinable useful life and are, therefore, neither currently deductible r amortizable.



Exhibit "I" P6

Crystal Star Eagle
13-3558089

EXPLANATION OF ADJUSTMENTS
For The Taxable Year Ended December 31, 1986

III) Since the partnership's debt obligation is contingent and lacking in true economic substance, it cannot be considered a partnership liability and no part of said note can be considered in determining each partner's basis in his or her partnership interest under Section 752(c) of the Internal Revenue Code.

IV) Alternatively, if it is decided that the disallowed partnership deductions are allowable in whole or in part, then it is determined that each partner is only entitled to deduct his or her proportionate share of the partnership loss which does not exceed his or her amount "at risk," subject to the provisions of Section 465 of the Internal Revenue Code.

V) Any amounts shown as credits are disallowed because the property does not qualify for the credits under Section 38 of the Internal Revenue Code or under any other section of the Internal Revenue Code.



Exhibit "I" P7

FOR INFORMATION ONLY

The explanation stated below is provided for your information.

IRC 6621(c)

It is determined that the partnership has improperly taken deductions and/or credits for tax motivated reasons. The increased rate of interest prescribed in IRC 6621(c) is applicable at the individual partner level after the partnership proceedings have been completed. Where the only items raised in a subsequent affected items notice of deficiency are additions to tax, the Service takes the position that the Tax Court will not have jurisdiction to consider IRC 6621(c) interest unless the interest is prepaid. IRC 6621(c) interest will be assessed and collected as regular interest in those cases.

Exhibit "I" P8

Form **843**
(Rev. November 2002)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for --*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

Name of claimant: MILDRED L PARK, DECEASED

Your SSN or ITIN: [redacted]9852

Address (number, street, and room or suite no.): c/o Thomas E. Redding; 2914 West T. C. Jester ***(POA ATTACHED, FORM 2848)***

Spouse's SSN or ITIN: [redacted]-8176

City or town, state, and ZIP code: Houston, Texas 77018-7010 *****ADDRESS FOR THIS MATTER ONLY*****

Employer identification number (EIN)

Name and address shown on return if different from above:
Marvin C. and Mildred L. Park
230 Caroline Ave.; Elmhurst, IL 60126

Daytime telephone number: 713-965-9244

**1** Period. Prepare a separate Form 843 for each tax period
From January 1, 1985 to December 31, 1985

**2** Amount to be refunded or abated
$ 23,714.59**

**3a** Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☒ Penalty — IRC section ▶ §6621(c)

**b** Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☒ Other (specify) 1040

**4a** Request for abatement or refund of:
☒ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶ 11/18/02 and 3/24/04

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

***** *Please See Explanation Attached* *****

NOTE: This claim is filed on behalf of Mildred L. Park, Deceased as the surviving spouse of Marvin C. Park and as the sole payor of the amounts sought to be refunded, which were paid after the death of Marvin C. Park.

** ***or such greater amount as is legally refundable, plus interest.***

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Mildred L. Park, Decd.

Bonnie S. Murphy, Executrix — 11/11/04

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Date

Marvin C. Park, Decd, By Ruth C. Lucas Executrix By Thomas C Redding atty-in-fact — 11/15/04

Signature — Date

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**

ISA
STF FED1524F

Form **843** (Rev. 11-2002)

PLAINTIFFS' EXHIBIT 3 USCFC 06-852

Form **2848**
(Rev. December 1997)
Department of the Treasury
Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name ______
Telephone ______
Function ______
Date

**Part I** **Power of Attorney** (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Marvin C. Park (Deceased) & Mildred L. Park (Deceased)<br>c/o Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | [redacted]-8176<br>[redacted]9852 | |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7800-69703R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-78887R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Teresa J. Womack<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-87212R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | Tax Periods Ending 12/31: 1985,1986,1987,1988,1989, |
| | | 1990,1991,1992,1993,1994, |
| | | 1995,1996 |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4 — Specific uses not recorded on CAF.**) . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5 — Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes but is not limited to authorization to exercise the taxpayer's rights under I.R.C.§6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here MM/RCL and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.**

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . ▶ ☐

b If you also want the second representative listed to receive a copy of such notices and communications, check this box . ▶ ☐

c If you do not want any notices or communications sent to your representative(s), check this box . . . ▶ ☐

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Ruth C. Lucas, Executrix — Signature | 1/28/04 — Date | Executrix — Title (if applicable)

Marvin C. Park, Deceased, by Ruth C. Lucas
Print Name

Bonnie S. Murphy, executrix — Signature | 1/24/04 — Date | Executrix — Title (if applicable)

Mildred L. Park, Deceased, by Bonnie S. Murphy
Print Name

## Part II Declaration of Representative

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (a - h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | Thomas E. Redding [signature] Thomas E. Redding | 2-16-04 |
| A | Texas | Sallie W. Gladney [signature] Sallie W. Gladney | 2-16-04 |
| A | Texas | Teresa J. Womack [signature] Teresa J. Womack | 2-16-04 |

STF FED4675F.2

B-250

**MILDRED L. PARK, DECEASED**
**(SSN[redacted]-9852)**
**EXPLANATION - 1985 and 1986 REFUND CLAIMS**

This refund claim, as it relates to tax and interest assessed relative to adjustments to partnership items and affected items related to the Crystal Star Eagle partnership (referred to in this explanation as "the Partnership") for 1985 and 1986, is filed based upon the following grounds:

1. The 1985 and 1986 assessments of tax and interest and subsequent interest assessments made on and after November 18, 2002 are invalid and the amounts paid pursuant to those assessments are fully refundable to the taxpayer. The United States Court of Appeals for the Second Circuit, in *Callaway v. Commissioner*, has clearly ruled that in the case of deceased taxpayers, a request for prompt assessment converts partnership items to non-partnership items and an assessment thereafter by the Internal Revenue Service without the issuance of a statutory notice of deficiency is an invalid assessment and any collections made on such assessment are refundable to the taxpayers. Enclosed as Exhibit "A" is a complete copy of the *Callaway* opinion. The 1985 tax and interest assessments were made on November 18, 2002 with subsequent interest assessments thereafter. Copies of transcripts of account provided by the Internal Revenue Service are attached as Exhibit "B," including both years. Each of these assessments was made by the Internal Revenue Service as a computational adjustment resulting from adjustments to partnership items of a partnership called Crystal Star Eagle. Copies of the Forms 4549 for 1985 and 1986 are attached hereto as Exhibit "C." Requests for Prompt Assessment on Forms 4810 covering the 1985 and 1986 tax years were filed with the Internal Revenue Service by Express Mail on May 28, 2002. Copies of those filings are attached hereto as Exhibits "D" and "E," respectively. Obviously both Mr. and Mrs. Park had died prior to that time. Pursuant to the *Callaway* case and all the legal authorities contained therein, the entire amounts assessed for both 1985 and 1986 were improperly assessed and are fully refundable.

2. Although 1985 and 1986 were filed as joint returns, this claim is filed and signed solely on behalf of Mildred L. Park, deceased, as both the surviving spouse and the sole payor of the amounts sought to be recovered because the entire amount of the payments was made from her estate and she is entitled to this refund as the source of the tax payments under IRC §6402(a) and Revenue Rulings 74-611 and 80-8.

3. The claim is timely. It is being filed within two years from the date of payment. Additionally, even if any of the periods under I.R.C. §6230 apply to any portion of this claim, it is timely under those provisions as well.

4. Additionally, or alternatively, it is clear that several of the initial proposed bases for the adjustments set forth in the original FPAA were independent of any basis that would have constituted a "tax motivated transaction." **The controlling case is the very recent Fifth Circuit Court of Appeals opinion in *Weiner v. United States*, ____F3d____, Fifth Cir., October 25, 2004, copy attached as Exhibit "F," in which the Fifth Circuit clearly held that where the tax liability resulted from a settlement in a TEFRA partnership proceeding where the original FPAA asserted both "tax motivated" grounds for the adjustments and non-tax motivated**

**grounds, §6621(c) penalty interest cannot be imposed!** Copies of the 1985 and 1986 FPAAs are attached as Exhibits "H" and "I" and clearly contain numerous grounds for adjustment, most of which are not "tax motivated transaction" grounds. This case followed the Tax Court case, *McCrary v. Commissioner,* 92 T.C. 827 (1989), and its progeny. This case clearly established that to the extent the taxpayers made concessions to avoid the necessity for litigation and where the basis of concession did not require the Court to determine if the adjustments were specifically "attributable to" a tax-motivated transaction, the §6621(c) penalty was inapplicable, even though some of the IRS's alternative grounds in the original FPAA for disallowance would support it! *See also Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988). Treasury Regulation §301.6621-2T, A-5, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984) also supports this position.

5. In the alternative, even if the IRS refuses to acknowledge the assessments were invalid, the taxpayer(s) are not liable for the penalty portion of the interest paid under I.R.C. §6621(c). To the extent the tax deficiencies upon which the I.R.C. §6621(c) interest was assessed arose from agreed adjustments to partnership items, based upon an agreement under I.R.C. §6224(c), the partnership item adjustments were based solely on amounts offered as adjustments by the TMP and accepted by the IRS. No trial was conducted. To the extent the deficiency is based on an I.R.C. §6224(c) agreed settlement that was entered into by the TMP, such an agreement can only relate to specific adjustments to partnership items. The assessment that resulted from the Tax Court decision reflected only a concession to the partnership item adjustments, which avoided the requirement of a trial on each of the elements set out in the relevant original FPAA. There was no agreement by the taxpayers that the tax deficiency was subject to §6621(c) or that the adjustments resulted from tax motivated transactions as defined in I.R.C. §6621(c) or the relevant regulations.

6. Alternatively, even if the doctrine under *Todd, McCrary*, and Treas. Reg. §301.6621-2T, A-5 does not preclude the application of I.R.C. §6621(c), no portion of the underlying tax liability was attributable to any event defined in I.R.C. §6621(c) or the regulations thereunder as a tax motivated transaction.

7. The alternative claims for partial interest refunds in paragraphs 4 through 7 are $7,443.09 for 1985 and $19,969.52 for 1986. See Exhibit "G," interest recomputations.

Exhibits:

A - *Callaway v. Commissioner*
B - Transcripts for 1985 and 1986
C - Forms 4549
D - Marvin C. Park requests for prompt assessment
E - Mildred L. Park requests for prompt assessment
F - *Weiner v. United States*
G - Alternative interest computations removing only §6621(c) penalty
H - 1985 FPAA
I - 1986 FPAA

CITE AS: Callaway v. Commissioner, KTC 2000-470 (2d Cir. 2000)

<<FULL TEXT>>

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ELIZABETH N. CALLAWAY, Petitioner-Appellant, v. COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Docket: 99-4022 Filed September 15, 2000

Before: LEVAL, CABRANES and POOLER, Circuit Judges.

LEVAL, Circuit Judge:

Elizabeth N. Callaway ("the taxpayer" or "Elizabeth") appeals from so much of the March 10, 1998 Opinion and Order and the November 17, 1998 Decision of the United States Tax Court (Peter J. Panuthos, Chief Special Trial Judge) that held that computational adjustments and subsequent affected items notices of deficiency issued to her were valid and were not time-barred. We have jurisdiction pursuant to I.R.C. section 7482(a).

This is a case of first impression in the Courts of Appeals, raising an issue of partnership taxation procedure: A husband held a partnership interest as separate property but filed a joint tax return with his wife thereby taking his distributive share of the partnership's tax items into account in computing the tax owed on the couple's aggregate income. See I.R.C. sections 702, 6013(a), (d)(3); Treas. Reg. sections 1702-1(a), 1.6013-4(b). The husband died, and his estate filed a request for prompt assessment. See I.R.C. section 6501(d). As a result of the request, the husband's share of the partnership's tax items converted from partnership items into nonpartnership items. See I.R.C. section 6231(b)(1)(D), (c)(1); Temp. Treas. Reg. section 301.6231(c)-8T. The question presented is what effect that conversion has on the procedures for assessing deficiencies attributable to those same items against his wife. We conclude that where only the husband owned an interest in his distributive share of partnership items, the conversion of his partnership items into nonpartnership items necessarily converts into nonpartnership items all the items taken into account on the joint return by reason of his interest. They are therefore nonpartnership items with respect to assessments against either spouse. As a consequence: (1) statutory notice of deficiency procedures apply to an assessment of deficiencies attributable to these items against either spouse, see I.R.C. section 6230(a)(2)(A)(ii); and (2) the statute of limitations period will be the greater of one year or such longer period as remains open against either spouse. See I.R.C. section 6229(f).

Applying these conclusions of law to the facts of this case, we conclude the Commissioner had until December 23, 1992 to issue any statutory notice of deficiency to either taxpayer or her deceased spouse's estate. The 1993 "precautionary" assessmen B-253 996 computational

EXHIBIT A pg. 1

adjustments and the 1996 affected items notices of deficiency were therefore procedurally invalid and time barred, with respect to both the taxpayer and her deceased spouse's estate.

We therefore, reverse the Tax Court's ruling and remand for further proceedings.

BACKGROUND

A. TEFRA's STATUTORY AND REGULATORY FRAMEWORK-

Under the Internal Revenue Code (the "Code") partnerships are not taxable entities. See, I.R.C. section 701; Treas. Reg. 1.701-1. <<ENDNOTE 1>> Therefore, unlike individuals and corporations, partnerships do not file tax returns; instead they file information returns. See I.R.C. section 6031; Treas. Reg. section 1.6031-1. While partnerships are not taxed, taxes are imposed on their partners on a passthrough basis. Each partner is individually required to take into account his distributive share of the partnership's tax items in computing his income tax liability. See I.R.C. sections 701, 702; Treas. Reg. section 1.702-1(a).

Prior to 1982, adjustments to the tax liability of the individual partners based on the operations of the partnership were determined at the individual partners' level. This resulted in duplication of administrative and judicial resources and sometimes in inconsistent results as between partners. See Randell v. United States, 64 F.3d 101, 103 (2d Cir. 1995). The Internal Revenue, Service was obligated to audit each partner individually to conform the tax treatment of all the partners. To extend the statute of limitations with respect to the partners' liability for the operation of the partnership, the IRS needed to obtain consent for an extension from each of the partners, not the partnership. Similarly, settlement agreements or judicial determinations with regard to one partner were not binding on the other partners. And because the IRS might fail to complete these individual audits and adjustments before the statute of limitations expired with respect to a partner, inconsistent treatment of similarly situated taxpayers could result. See generally H.R. Conf. Rep. No. 97-760, at 599 (1982), reprinted in 1982-2 C.B. 600, 662.

To ameliorate these difficulties, Congress enacted the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equality and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324, 648, now codified as amended as subchapter C of Chapter 63 of the Code, at sections 6221 to 6234. The TEFRA provisions establish a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level. See H.R. Conf. Rep. No. 97-760, at 599-600. Under the TEFRA provisions "the tax treatment of any partnership item . . . shall be determined at the partnership level." I.R.C. section 6221. A "partnership item" is a tax item "more appropriately determined at the partnership level than at the partner level." I.R.C. section 6231(a)(3). As prescribed by the Regulations, the term "partnership item" includes "[t]he partnership aggregate and each partner's share of . . . [i]tems of income, gain[,] loss, deduction, or credit of the partnership." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i). A "nonpartnership item" is one that is "not a partnership item." I.R.C. section 6231(a) B-254

EXHIBIT "A" pg. 2

The, determination whether an item is a "partnership item" or a "nonpartnership item" is the threshold question for the application of the TEFRA procedures. While partnership items are subject to TEFRA's centralized audit procedures, see I.R.C. sections 6211(c), 6216(4), 6221, 6230(a)(1), the tax treatment of nonpartnership items is determined at the level of the individual partner's return, pursuant to the notice of deficiency procedures of subchapter B of Chapter 63, sections 6211 to 6216, See I.R.C. sections 6212(a), 6230(a)(2). The text and structure of the Code, as well as the legislative history of the TEFRA provisions, leave no doubt that Congress intended the procedures of subchapters B and C to have mutually exclusive jurisdiction over nonpartnership and partnership items respectively, [pound sign X5N (?)] rules for partnerships with more than 100 partners), 6231(a)(1)(B) (exception for small partnerships)). [sic] files a Joint or a separate tax return, see e.g., Treas. Reg. section 1702-1(d), and in either case, her tax liability will be determined in party partnership items into account. Accordingly, such a spouse will be treated as a partner whether she files jointly or separately. See I.R.C. section 6231(a)(2)(B). Her treatment as a partner derives, in part, from her property interest under state law. While both spouses holding a joint interest are treated as partners, the Code further provides that "a husband and wife who have a joint interest in a partnership shall be treated as 1 person." I.R.C. section 6231(a)(12).

Second, the spouse may own no interest in the member's partnership interest. Nonetheless, IF the spouse and the member file a joint return, because (1) the member will be required to take his distributive share of the partnership items into account in computing the couple's aggregate income, see I.R.C. section 702(a); Treas Reg. section 1.702-1(a); (2) a single tax liability is computed on the basis of this aggregate income, see I.R.C. section 6013(d)(3); and (3) each spouse's liability for that tax is joint and several, see id., the spouse meets the requirements of Code section 6231(a)(2)(B) -- that is, her tax liability is in part determined by taking into account partnership items. Accordingly, such a spouse is also "treated as a partner," as confirmed by a separate regulation. Temp. Treas. Reg. section 301.6231(a)(2)-1T(a) However, such a spouse will not be treated as a partner, if she files separately and owns no interest in or share of the member's partnership items.

The purpose of the TEFRA provisions described above is to ensure that, in general, partnership items are adjusted once at the partnership level. All partners, whose tax liability will be affected by its outcome, have the opportunity to participate in the audit allowing each to be bound by its result. In general, there are few exceptions to these centralized procedures,

However, one way for a partner to avoid being treated under the TEFRA framework is to fall within one of several limited exceptions that "the Secretary determines by regulation to present special enforcement considerations." I.R.C. section 6231(c)(1)(E). Where the Secretary finds these special enforcement considerations to exist and where the Secretary determines "that to treat items as partnership items will interfere with the effective and efficient enforcement of this title" then "such items shall be treated as nonpartnership items for the purpose of this subchapter." I.R.C. section 6231(c)(2). B[illegible] B-255 [illegible]ng partnership items to

EXHIBIT "A" Pg. 3

nonpartnership items, the Secretary thereby excepts them from the partnership-level TEFRA procedures and subjects them instead to the individual deficiency procedures under subchapter B. See I.R.C. section 6230(a)(2)(A)(ii). The Code farther provides that, because the partner no longer has an interest in their outcome, this partner may no longer participate in, nor be bound as a party to, any judicial proceedings to readjust the partnership items at the partnership level. See I.R.C. sections 6226(d), 6228(a)(4)(B); cf. Tax Ct. Rules 245(b), 247(a) reprinted following 26 U.S.C.A. section 7453.

One such regulation promulgated under the Secretary's authority pursuant to section 6231(c)(1)(E), provides that, when the estate of a deceased partner files a request for prompt assessment, its partnership items convert to nonpartnership items:

> The treatment of items as partnership items with respect to a partner on whose behalf a request for prompt assessment of tax under section 6501(d) is filed will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending with or within any taxable year of the partner with respect to which a request for a prompt assessment of tax is filed shall be treated as nonpartnership items as of the date that the request is filed.

Temp. Treas. Reg. section 301.6231(c)-8T. As discussed below, it is undisputed that the effect of this regulation was to convert all the partnership items of the estate of James Callaway to nonpartnership items, as of the date his estate requested prompt assessment. As a consequence, the deficiency procedures of subchapter B applied to the assessment of taxes attributable to those items, see I.R.C. section 6230(a)(2)(A)(ii), and a shorter statute of limitations for assessing any tax attributable to those items was triggered pursuant to I.R.C. section 6229(f)(1). At issue is the effect of this conversion on the procedures and limitations periods that applied to assessments against Elizabeth Callaway of taxes attributable to those same partnership losses as taken into account on the Callaways' joint returns for 1986-1988.

Against this statutory and regulatory background, we now turn to the facts.

B. FACTS

The facts were stipulated or are otherwise undisputed. Elizabeth Callaway, the taxpayer, is the widow of James Callaway (sometimes "decedent"), who died in 1990. During the taxable years 1986, 1987, and 1988, James was a limited partner in a Pennsylvania limited partnership known as Mountain View Mall Associates ("Mountain View"). Elizabeth was never a partner in Mountain View. Nor did Elizabeth at any time own a joint interest in James's partnership interest, whether by way of tenancy in common, joint tenancy tenancy by the entirety, or otherwise. Elizabeth and James were domiciled in New York, which is not a community property state. See, e.g., Miller v. Miller, 237 N.E.2d 877, 879 (N.Y. 1968) ("The state of New York . . . has not adopted a [community] property system.")

B-256

EXHIBIT "A" Pg. 4

(quoting Hemingway v. McGehee (In re Estate of Crichton), 228 N.E.2d 799, 806 (N.Y. 1967)). Accordingly, Elizabeth had no ownership interest in James's partnership interest.

Elizabeth and James filed joint federal income tax returns. See I.R.C. section 6013(a). For each of the taxable years 1986, 1987 and 1988, their joint income tax returns reported and took into account James's distributive share of the losses reported on Mountain View's partnership returns for the same years. Absent an extension, the statute of limitations for the assessment of additional taxes attributable to the Callaways' NONPARTNERSHIP items for those taxable years expired on October 15, 1990, October 24, 1991 and April 15, 1992, respectively. See I.R.C. section 6501(a), (n)(2); cf. id. section 6229(a).

For these taxable years, Mountain View timely filed its information return, pursuant to I.R.C. section 6031, on January 30, 1987, March 15, 1988 and February 28, 1989, respectively. Absent extension agreements, the statute of limitations for assessing any tax attributable to James's distributive share of Mountain View partnership items would have expired on April 15 of 1990, 1991 and 1992 for taxable years 1986, 1987 and 1989 respectively. See I.R.C. section 6229(a). However, on July 22, 1989, July 29, 1991 and November 26, 1991, the Mountain View TMP and the IRS executed agreements to extend indefinitely the statute of limitations on Mountain View's tax returns. <<ENDNOTE 2>> See I.R.C. section 6229(b). These agreements were binding on all Mountain View partners, but only with respect to their distributive share of Mountain View partnership items. See id.

On December 8, 1990, James died. Elizabeth was appointed the executrix of his estate.

On February 5, 1991, the IRS mailed an NBAP to James with respect to Mountain View's 1988 tax year. The IRS claims it mailed NBAPs to James with respect to Mountain View's 1986 and 1987 taxable years. <<ENDNOTE 3>>

On December 23, 1991, acting on her own behalf and as the executrix of James's estate, Elizabeth mailed three letters to the IRS Service Center in Brookhaven, New York. The first letter of crucial importance in these proceedings -- was a request on behalf of James's estate for a prompt assessment, pursuant to I.R.C. section 6501(d), of the estate's outstanding income tax liabilities for the taxable years 1986, 1987 and 1988. It is undisputed that this request for prompt assessment converted the partnership items of James's estate to nonpartnership items, see I.R.C. section 6231(b)(1)(D), (c); Temp. Treas. Reg. section 301.6231(c)-8T, thereby requiring the IRS to determine deficiencies attributable to those items under the procedures of subchapter B, see I.R.C. section 6230(a)(2)(A)(ii), and shortening the limitations period for assessing taxes attributable to those items, see id. section 6229(f). <<ENDNOTE 4>> Although the IRS now concedes that this letter was a valid request for prompt assessment, because it initially believed that the request was invalid, it failed to take account of the consequences of the conversion of the estate's partnership items at the time the request was filed. <<ENDNOTE 5>>

EXHIBIT "A" pg. 5

The second letter included three c B-257 the amounts of $90,635,

$48,846 and $8,439, clearly designated as deposits in the nature of cash bonds <<ENDNOTE 6>> respecting joint tax liabilities of Elizabeth and the estate for 1986, 1987, and 1988 respectively. <<ENDNOTE 7>>

Having completed the partnership audit, on October 5, 1992, the IRS issued an FPAA notice to the Mountain View TMP determining adjustments to the partnership returns for the taxable years 1986, 1987, 1988, see I.R.C. section 6223(a)(2), and disallowing losses claimed in each of those years, The IRS mailed copies of these FPAAs to the Callaways. The Mountain View TMP did not contest this administrative adjustment. See I.R.C. section 6226(a). On March 3, 1993, a Mountain View notice partner other than the TMP timely filed a petition for readjustment contesting these FPAAs with the United States Court of Federal Claims. See IRC section 6226(b). On July 6, 1995, the Court of Federal Claims dismissed this action pursuant to a stipulation for dismissal. That dismissal operated as the court's decision that the adjustments proposed in the FPAA were correct. See I.R.C. section 6226(h). This decision became final 60 days later, on September 4, 1995.

Meanwhile, in August and September 1993 -- no doubt recognizing that the request for prompt assessment was valid, with the effect that James's distributive share of the partnership items had converted into nonpartnership items -- the IRS entered "precautionary" assessments against the Callaways. These assessments, in the amounts of $77,384, $41,981 and $6,541, were for the additional taxes attributable to James's distributive shares of the Mountain View losses that the FPAA had determined should be disallowed for 1986, 1987 an 1988, respectively. <<ENDNOTE 8>> The IRS posted to the Callaways' accounts the amounts remitted as cash bonds on December 23, 1991. <<ENDNOTE 9>>

Once the decision of the Court of Federal Claims became final, the IRS adjusted the Mountain View partnership return to reflect the adjustments of the FPAA. The IRS then assessed deficiencies against the individual Mountain View partners by computational adjustment. Accordingly, in July 1996, a computational adjustment was made to the Callaways' accounts. The IRS abated the "precautionary" assessments entered in August and September 1993, and then entered identical assessments against the Callaways' accounts.

On August 5, 1996, the IRS issued notices of deficiency to the estate and Elizabeth determining various additions to tax, including penalties for delinquent filings of returns, negligence and valuation overstatements for the taxable years 1986, 1987 and 1988. Because these additions to tax were with respect to taxable years ending before August 5, 1997, they were treated as affected items requiring partner level determinations. Therefore, deficiency procedures under subchapter B were required and followed. See I.R.C. section 6230(a)(2)(A)(i) (as in effect for partnership taxable years ending before August 5, 1997).

C. PROCEEDINGS BELOW

On September 11, 1996, James's estate and taxpayer Elizabeth (the "original petitioners") timely filed a petition for redetermination, thereby invoking the jurisdiction of the B-258 See I.R.C. section

EXHIBIT "A" Pg. 6