6214. On November 14, 1996, they moved to restrain collection of the underlying tax deficiencies attributable to the disallowance of James's distributive shares of Mountain View's losses. The Tax Court denied this motion on the ground that its jurisdiction was limited to a redetermination of additions to tax determined in the affected items notices of deficiency. See Callaway, 75 T.C.M. (CCH) at 1958. However, in its response papers, to this motion, the Commissioner conceded that all assessments entered against James's estate were untimely. The Commissioner conceded that the valid request for prompt assessment filed on December 23, 1991: (1) caused decedent's Mountain View partnership items to convert immediately into nonpartnership items, see I.R.C. section 6231(c)(2); Temp. Treas. Reg. section 301.6231(c)-8T; and (2) triggered an accelerated statute of limitations, under which the IRS had until June 23, 1993 to assess any deficiencies attributable to decedent's distributive shares of Mountain View's disallowed losses, see I.R.C. section 6501(d); but cf. id. section 6229(f) (providing that, on these facts, the limitations period expired on December 23, 1992). See Callaway, 75 T.C.M. (CCH) at 1958 & n. 3.

On March 10, 1998, the Tax Court ruled on the original petitioners' motion for summary judgment. As to James's estate, the Tax Court held that because the request for prompt assessment had converted his partnership items into nonpartnership items, the determination of his tax liability for such items was excepted from TEFRA's unified partnership audit and litigation procedures pursuant to section 6230(a)(2)(A)(ii). See Callaway, 75 T.C.M. (CCH) at 1960. The court therefore found the notices of deficiency for affected items invalid as to James's estate, and dismissed the case against James's estate for lack of jurisdiction. It denied as moot the estate's summary judgment motion. See id. (relying on Crowell v. Commissioner, 102 T.C. 683, 691-92 (1994)).

As to Elizabeth, relying in part on Dubin v. Commissioner, 99 T.C. 325, 334 (1992), the Tax Court held that her partnership items did not convert to nonpartnership items when decedent's partnership items converted to nonpartnership items pursuant to Temp. Treas, Reg, section 301.6231(c)-8T. See Callaway, 75 T.C.M. (CCH) at 1961-62. <<ENDNOTE 10>> The court therefore concluded that the notices of deficiency for affected items were valid insofar as they issued to Elizabeth and that they had been issued to her before her statute of limitations had run. See id. at 1963.

After the order entered denying taxpayer summary judgment, the parties settled certain issues by agreement, pursuant to which a stipulated decision entered on November 17, 1998 preserving this issue for appeal. Final judgment was entered, and this appeal followed.

DISCUSSION

We review the Tax Court's legal conclusions de novo and its factual findings for clear error. See I.R.C. section 7482(a)(1) ("The United States Courts of Appeals . . . shall . . . review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury"); see also Texasgulf, Inc. and Subsidiaries v. Commissioner, 172 F.3d 209, 214 (2d Cir. 1999). In particular, "[w]e owe no de B-259 , the Tax Court's



EXHIBIT "A" Pg. 7

statutory interpretations, its relationship to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals." Exacto Spring Corp. v. Commissioner, 196 F.3d 833, 838 (7th Cir. 1999) (Posner, C.J.); cf. Baizer v. Commissioner, 204 F.3d 1231, 1233 (9th Cir. 2000) ("Although a presumption exists that the tax court correctly applied the law, no special deference is given to the tax court's decisions.").

The issue is whether, on the filing of the request for prompt assessment on behalf of James' estate, the Mountain View tax items taken into account on the Callaways'joint returns were converted from partnership items into nonpartnership items with respect to James alone or with respect to Elizabeth also.

A. WHEN JAMES's PARTNERSHIP ITEMS CONVERTED INTO NONPARTNERSHIP ITEMS THOSE SAME PARTNERSHIP ITEMS NECESSARILY BECAME NONPARTNERSHIP ITEMS WITH RESPECT TO ELIZABETH

We conclude that because the only partnership items taken into account in the Callaways'joint returns were James's partnership items held by him as separate property, when all of his partnership items converted into nonpartnership items, all the Mountain View item reported in the joint returns necessarily became nonpartnership items with respect to Elizabeth also.

1. Before the Request for Prompt Assessment

It is undisputed that James's partnership interest was held as separate property. Only James was a partner as that term is defined in subtitle A. See I.R.C. section 761(b) ("For purposes of this subtitle, the term 'partner' means a member of a partnership."); see also id. section 7701(a)(2). Only James owned an interest in his distributive share of the Mountain View tax items and only he was required to take those items into account, pursuant to Code section 702(a). That section requires that "[i]n determining his income tax, each partner shall take into account separately his distributive share of the partnership's . . . items of income, gain, loss, deduction, or credit. . . ." I.R.C. section 702(a); see also Treas. Reg. section 1.702-1(a). Whether classified as "partnership items," I.R.C. section 6231(a)(3), or "nonpartnership items," id. section 6231(a)(4), there is no doubt that James's distributive shares of the Mountain View tax items remained at all times his separate property. In particular, the Mountain View losses at issue in this case were his items.

We turn now to the classification of those items as either "partnership items" or "nonpartnership items" for the purposes of subtitle F. Before the filing for prompt assessment, it is undisputed that James's distributive shares of the various Mountain View tax items were classified as "partnership items." The Code defines "partnership item" to mean:

with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the B-260 provide that, for

EXHIBIT "A" Pg. 8

purposes of [Subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. section 6231(a)(3). As prescribed by the Treasury regulations, the term includes "[t]he partnership aggregate and EACH PARTNER'S SHARE OF . . . [i]tems of income, gain[,] loss, deduction, or credit of the partnership." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i) (emphases added). "[E]ach partner's share" refers to the distributive share of items that a partner must take into his account, pursuant to Code section 702(a). Here, it is undisputed that only James owned such a "share of" the Mountain View partnership items. If is also evident from the regulation that tax items are classified as partnership items both with respect to the partnership ("the partnership aggregate") and with respect to "each partner's share of" those items. In this manner, the regulatory scheme accommodates the concept of conversion: a "partner's share of" any partnership item may subsequently treated as nonpartnership item, see I.R.C. section 6231(b)(1), even though such an item, in the aggregate, remains "more appropriately determined at the partnership level." Treas. Reg. section 301.6231(a)(3)-1(a)(1)(i).

In sum, as is undisputed, at the time they were originally taken into account on his tax returns, James' distributive shares, of the Mountain View tax items were both (1) his separate property, and (2) classified as "partnership items."

We next consider James's distributive shares of Mountain View tax items with respect to Elizabeth. First, Elizabeth owned no interest in or "share of"these items. Treas. Reg. section 301.6231(a)(3)-1(a)(1). The Mountain View tax items produced tax consequences for her solely through the Callaways' decision to file joint returns. Had Elizabeth filed separately from James, Elizabeth would have taken no share of James's distributive shares of Mountain View tax items into account in computing her tax liability for the years at issue. Cf. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) (federal tax law "'creates no property rights but merely attaches consequences, federally defined, to rights created under state law'") (quoting United States v. Bess, 357 U.S. 51, 55 (1958)).

The filing of joint tax returns does not alter property rights between husband and wife. See Zeeman v. United States, 395 F.2d 861, 865 (2d Cir. 1968). In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another. See, e.g., McClelland v. Massinga, 786 F.2d 1205, 1210 (4th Cir. 1986) ("[T]he mere filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property."). The Callaways' decision to file jointly, see I.R.C. section 6013(a), had no effect on James's separate ownership of his Mountain View items.

However, because the Callaways filed joint returns, their tax was computed on their aggregate income. See I.R.C. section 6013(d)(3); Treas. Reg. 1.6013-4(b) ("Although there are two taxpayers on a joint return, there is only one taxable income."). Liability for that tax was joint and several, See I.R.C. section 6013(d)(3). B-261 his distributive shares

EXHIBIT "A" Pg. 9

of Mountain View tax items into joint account in computing the Callaways' aggregate income. See I.R.C. section 702(a). Therefore, because Elizabeth's "income tax, liability . . . [was] determined . . . in part by taking into account . . . partnership items of the partnership," she was a "partner" "[f]or purposes of" subchapter C. I.R.C. section 6231(a)(2)(B); Temp. Treas. Reg. section 301.6231(a)(2)-1T(a). However, Elizabeth's status as partner "[f]or purposes of [subchapter C]" did not make her a "member of the partnership," see I.R.C. section 761(b); nor did it transfer to her a share of James's distributive share of the Mountain View items; nor did it effect any change in the classification of those items as either "partnership items" or "nonpartnership items." Her status as a partner simply gave her certain notice and participation rights in any partnership proceedings under TEFRA -- when those procedures applied. See Temp. Treas. Reg. section 301.6231(a)(2)-1T(a).

Most importantly, Elizabeth's status as a partner arises only by operation of subchapter C and only "for purposes of [subchapter C]." I.R.C. section 6231(a). It is a consequence of the application of that subchapter. The issue whether subchapter B or subchapter C applied to the disputed assessments -- that is, THE issue in this case -- does not turn on Elizabeth's status, as a partner under TEFRA. It turns on the classification, for the purposes of subtitle F, of the items to which the tax deficiencies were attributable. If those items were classified as partnership items, subchapter C would apply. See I.R.. sections 6221, 6211(c), 6216(4). If those items were classified as nonpartnership items then subchapter C could not apply. See, e.g., I.R.C. section 6276(f); Maxwell, 87 T.C. at 788. The Commissioner's argument accepted by the the Tax Court assumes its own conclusion. See Callaway, 75 T.C.M. (CCH) at 1960 ("[N]otwithstanding the conversion of decedent's partnership items to nonpartnership items . . . Mrs. Callaway was at all times treated as a Mountain View partner who was fully entitled to participate in partnership level proceedings."). Unless subchapter C still applies, the fact that Elizabeth Callaway is a "partner" "[f]or purposes of [that] subchapter," I.R.C. section 6231(a)(2)(B), is irrelevant.

We conclude that immediately before the request for prompt assessment: (1) all James's distributive shares of the Mountain View tax items (including the disputed losses) as taken into account in the Callaways'joint returns were James's separate property, see I.R.C. section 702(a); 6013(a); (2) all of those items were classified as partnership items; see I.R.C. section 6231(a)(3); Treas. Reg., section 301.6231(a)(3)-1(a)(1)(i); <<ENDNOTE 11>> and (3) any adjustment to the tax treatment of those partnership items had to be determined under subchapter C, see I.R.C. section 6221; Temp. Treas. Reg. section 301.6221-1T(a).

For so long as James's distributive shares of the Mountain View tax items, as taken into account in their joint returns, were characterized as "partnership items," they were necessarily partnership items with respect to Elizabeth. However, as we conclude below, when James's distributive share of the Mountain View tax items converted into nonpartnership items, they necessarily converted into nonpartnership items with respect to Elizabeth.

EXHIBIT "A" Pg. 10

2. The Results of the Conversion

A "'nonpartnership item' means an item which is (or is treated as) not a partnership item." I.R.C. section 6231(a)(4). It is the parenthetical that is important. Pursuant to section 6231(c)(2), the Secretary has the authority to provide by regulation that certain items otherwise treated as partnership items are to be treated as nonpartnership items. It is not disputed that an individual "partner's share of" such items, Treas. Reg. section 301.6231(a)(3)-1(a)(1), can be treated as "not a partnership item," I.R.C. section 6231(a)(4). The purpose of this is clear. By severing the partner in question from the partnership level proceedings, the Secretary seeks to meet what he has identified as "special enforcement considerations." I.R.C. section 6231(c)(1)(E). The conversion of the partnership items into nonpartnership items removes them from subchapter C proceedings and subjects them to the procedures of subchapter B. See I.R.C. section 6230(a)(2)(A)(ii). Because the tax treatment of his items is no longer subject to the subchapter C proceedings, a partner no longer has an interest in the outcome of those proceedings. By statute he is no longer a party to a judicial proceeding under section 6226 and loses his rights to participate in such an action. See I.R.C. sections 6226(d), 6228(a)(4)(B); cf. Tax Ct. Rules 245(b), 247(a) reprinted following 26 U.S.C.A. section 7453. In the case of a partner filing in bankruptcy, the "special enforcement consideration" is the need to prevent the automatic stay imposed by the bankruptcy code, see 11 section U.S.C. 362, from staying the TEFRA proceedings against the other partners. See Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198, 204 (1987).

the case of a request for prompt assessment, the consideration is facilitating the timely wrapping up of the partner's estate, which requires the final determination of his income tax liability.

And that is the relevant concern here. Pursuant to Temp. Treas. Reg. section 301.6231(c)-8T, when his estate filed for prompt assessment, see I.R.C. section 6501(d), the distributive shares of James's Mountain View tax Items were converted from partnership Items into nonpartnership items. See I.R.C. section 6231(b)(1)(D)), (c)(1)(E).

In relevant part the prompt assessment regulation states that the "partnership items of . . . a partner [on whose behalf a request for prompt assessment of tax under section 6501(d) is filed] . . . shall be treated as nonpartnership items . . . Temp. Treas. Reg. section 301.6231(c)-8T. Applying this instruction to the facts before us, James's distributive shares of the Mountain View tax items for the years in question converted from partnership items into nonpartnership items. Because the only Mountain View tax items taken into account on the Callaway's joint returns were James Callaway's items, held as separate property, it follows that all such items converted from partnership items into nonpartnership items. In our view, these items necessarily became nonpartnership items with respect to Elizabeth. The items had been partnership items with respect to her, only because James was required to take them into account and he had taken them into account in a joint return filed with Elizabeth. As a consequence, tax deficiencies assessed against either James or Elizabeth attributable to these items were to be determined by following the notice of defi B-263 edures of subchapter

EXHIBIT "A" pg. 11

B. See I.R.C. section 6230(a)(2)(A)(ii).

Our interpretation of the effect of the prompt assessment regulation is not only consistent with its text -- which instructs that James's distributive share of the Mountain View tax items converted from partnership items into nonpartnership items -- but also comports with the overall structure and purpose of the TEFRA provisions. The, position adopted by the Tax Court does not.

The position of the Tax Court below creates the anomaly that a single share of tax items taken into account on a single return will be treated simultaneously as a "partnership item" and a "nonpartnership item." Under this reading, James's shares of disputed Mountain View losses, as reported in the Callaways'joint returns, would be treated as nonpartnership items with respect to James and partnership items with respect to Elizabeth. Consequently, the procedures of subchapter B would apply to assessments against James, while the procedures of subchapter C would apply to assessments against Elizabeth, notwithstanding that any deficiencies were attributable to the identical items. This result contradicts the language and structure of the Code, which make quite clear that partnership item and nonpartnership item are mutually exclusive classifications, see I.R.C. section 6231(a)(4) ("nonpartnership item' means an item which is . . . not a partnership item"), that trigger mutually exclusive audit and assessment procedures under subchapter C and subchapter B respectively. See I.R.C. sections 6216(4), 6221, 6230(a)(2)(A)(ii). The legislative history is clear that this strict dichotomy provided the fundamental structure of the TEFRA provisions. See H.R. Conf. Rep. 97-760, at 611. [pound sign XI9Nsage,(?)]" [sic] J. C. Penney Co. v. Commissioner, 312 F.2d 65, 72 (2d Cir. 1962) (Friendly, J.), or the phrase "of THE partnership" (emphasis added) was inserted to ensure that the partnership items in question are those of the specific source partnership rather than of another partnership. However, since we do not rely on the reading that Elizabeth ceased to be a partner, and neither party raised this issue on appeal, we leave these arguments for another day. se, [sic] the Commissioner would still be required to proceed under subchapter B with respect to both spouses. ing [sic] a joint partnership interest with her husband, whereas the instant case concerns the status of a taxpayer who filed a joint return with her husband, who held a separate partnership interest, we see no meaningful distinction between the controlling statutory and regulatory provisions.

Callaway, 75 T.C.M. (CCH) at 1961.

We disagree. The distinction between the arrangement of the Callaways' and the Dubins' property interests is significant. Because Jewell Dubin owned a joint interest in her husband's membership interest, she owned a share of the partnership's tax items. Jewell was required to take her share of those items into account in determining her tax liability, whether she filed jointly or separately. See Treas. Reg. section 1.702-1(d). In short, she owned partnership items.

Applying the prompt assessment regulation in the manner the Dubin court applied the almost identical bankruptcy regulation supports our holding ON THE FACTS OF THIS CASE, The Dubin court focused he conversion of the partnership items "of" the partner named B-264 cy. See Dubin, 99 T.C.

EXHIBIT "A" Pg. 12

at 334. Further, in Gillilan v. Commissioner, 66 T.C.M. (CCH) 398, 402 (1993), dealing with the same pattern of material facts as Dubin and, speaking through the same judge, the Tax Court clarified that it is only the wife's "SHARE of [the partnership's] losses" that remains a partnership item after her husband's share is converted. Our holding is consistent with the straightforward application of Dubin to the facts of this case, where James Callaway owned all of the losses and Elizabeth Callaway owned none. Dubin and Gillilan teach that Elizabeth's "share of" any partnership items would have remained unconverted, notwithstanding the conversion of her husband's share; but Elizabeth owned no such share, Dubin and Gillilan have no bearing on this case. In short, the difference between Jewell Dubin, who owned an interest in her husband's partnership items and Elizabeth Callaway, who did not, gives sufficient reason not to extend the Dubin holding into the Callaway context. <<ENDNOTE 12>>

Having ruled as we do, we need not pass on the validity of Dubin's reasoning, and do not do so. But having studied that ruling and the statute and regulations on which it is based, we note our doubts about its reasoning. As a matter of statutory interpretation, it seems to us strangely reasoned and wrongly decided.

Where a husband and wife own a joint interest in the partnership, the statutory scheme involves the interplay of two Code provisions. Under section 6231(a)(2), "[f]or purposes of [subchapter C]," a "partner" is defined as:

(A) a partner in the partnership, and

(B) any other person whose income tax liability . . . is determined . . . by taking into account . . . partnership items of the partnership.

I.R.C. section 6231(a)(2). Under this provision, because each spouse OWNS a share of the member's distributive share of the partnership items and because each is required to take that share into account in computing his income tax liability, see I.R.C. section 702(a); Treas. Reg. section 1.702-1(d), a husband and wife owning a joint interest in a partnership will necessarily both qualify as partners, regardless whether the couple files joint or separate returns. Because each spouse is a "partner," each may participate in the partnership proceedings under subchapter C and thereby protect his or her interest in the determination of taxes for which each will be liable.

On the other hand, Code section 6231(a)(12) instructs that:

Except to the extent otherwise provided in regulations, a husband and wife who have a joint interest in a partnership shall be treated as 1 person.

Because husband and wife share a joint interest in a SINGLE membership, this section recognizes the appropriateness, as a general rule, of treating the husband and wife as "1 person." Regardless of the arrangement of property rights between the spouses, from the perspective of the partnership, which is the focus of TEFRA, their interest constitutes but a single membership. It follows, for exampl B-265 ice given to the

EXHIBIT "A" Pg. 13

member-spouse -- whose information will be provided on the partnership return -- will serve as constructive notice to the non-member spouse. It also follows, as the Commissioner argued in Dubin, that the member's distributive share of partnership items should be treated as if it were held by "one person." In short, under this statutory rule the member's distributive share of partnership items is treated as a single set of partnership items. <<ENDNOTE 13>>

The pertinent regulation substantially restates these two statutory provisions and clarifies their application. See Temp. Treas. Reg. section 301.6231(a)(12)-1T. <<ENDNOTE 14>> Paragraph (a) of that regulation -- also headed "In general" -- applies the general statutory rule of section 6231(a)(2)(B) to a husband and wife holding a joint interest, confirming that each will be treated as a partner. Compare Temp. Treas. Reg. section 301.6231(a)(12)-1T(a) ("For purposes of subchapter C of chapter 63 of the Code, spouses holding a joint interest in a partnership are treated as partners.") with I.R.C. section 6231(a)(2)(B) (same result). Accordingly, paragraph (a) of this regulation clarifies that "[t]hus both spouses are permitted to participate in administrative and judicial proceedings." Temp. Treas. Reg. section 301.6231(a)(12)-1T(a). Next, paragraph (b)(1) of the regulation -- also headed "In general" -- implements the general rule of Code section 6231(a)(12) providing that "spouses holding a joint interest in a partnership shall be treated as one person." Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1). Compare I.R.C. section 6231(a)(12) (same). Paragraph (b)(1) clarifies how this general rule applies to the notice provisions of Code section 6223 (relating to notice to partners of proceedings) and to the counting provisions of 6231(a)(1)(B) (relating to the exception for small partnerships). See Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1). Paragraph (b)(1) does not, however, purport to limit the application of the general statutory "one person" rule to only these circumstances. Indeed, paragraph (b)(1) expressly states that "[e]xcept as provided in paragraph (b)(2) of this section, the Service . . . may send ANY required notice to EITHER spouse" -- not only those arising under section 6223. Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1) (emphasis added). Finally, paragraph (b)(2) of the regulation provides the limited regulatory exceptions to the general statutory rule envisaged by Code section 6231(a)(12). Compare Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1) ("Except as provided in paragraph (b)(2) . . .") with I.R.C. section 6231(a)(12) ("Except to the extent otherwise provided in regulations . . ."). <<ENDNOTE 15>>

The regulation thus confirms the statutory scheme. Under paragraph (a), a husband and wife owning a joint interest in a partnership are each treated as partners; each may therefore participate in the TEFRA proceedings that will determine their tax liability. At the same time, paragraph (b)(1) confirms that a husband and wife owning a joint interest in the partnership are generally treated as one person (except in the circumstances specified in paragraph (b)(2)).

The Tax court in Dubin, however, in effect read the regulation as reversing that scheme. Dubin began its analysis by noting that because Alan and Jewell held a joint interest in a partnership, under Code section 6231(a)(12) they are treated collectively as one person. See Dubin, 99 T.C. at 331. It then immediately noted that "[b]y regulation, however, on account of such joint interests, [Jewell B-266 re each treated as one

EXHIBIT 'A' Pg. 14

partner for purposes of applying the TEFRA procedures." Id. (citing Temp. Treas. Reg. section 301.6231(a)(12)-1T(a) (hereinafter referred to as "paragraph (a)").

The court then embarked on a convoluted argument, relying on the premise that "person" and "partner" mean the same thing in these provisions, to conclude that paragraph (a) "[b]y way of exception . . . REVERSES the general rule [of Code section 6231(a)(12)], setting forth a NEW GENERAL RULE THAT SPOUSES HOLDING A JOINT INTEREST IN A PARTNERSHIP ARE TREATED AS SEPARATE PERSONS (OR PARTNERS)." Dubin, 99 T.C. at 333 (emphasis added). In effect, Dubin concluded that Temporary Treasury Regulation section 301.6231(a)(12)-1T overruled "[b]y way of exception" the clear statutory command that "a husband and a wife who have a joint interest in a partnership shall be treated as 1 person." I.R.C. section 6231(a)(12). It therefore held that the Commissioner's "single-person theory . . . cannot be supported." Dubin, 99 T.C. at 335.

We set forth the Tax Court's argument in Dubin at some length, before observing why we find it mistaken.

The Tax Court began by framing the question as limited to the interplay between section 6231(a)(12) and paragraph (a) of the regulation.

To understand the interplay between section 6231(a)(12) and paragraph (a), it is necessary to determine whether any distinction exists between the terms "person" and "partner", as those terms are used in section 6231(a)(12) and paragraph (a). As will be discussed, we believe that the term "partner" (as used in paragraph (a)) means exactly the same thing as the term "person" (as used in section 6231(a)(12)).

Dubin, 99 T.C. at 331. In an effort to support its premise that "partner" and "person" mean exactly the same thing, the court turned first to the use of those terms in the regulations.

Before turning to section 6231(a)(12) and paragraph (a) in particular, it is instructive to note that the terms "partner" and "person" sometimes are used without clear distinction throughout the temporary regulations issued in support of the TEFRA procedures. "Person" sometimes is used as a synonym for "partner." [examples omitted] A fair generalization is that, except where the context requires otherwise, no distinction was intended, and the terms "person" and "partner" are used interchangeably in the temporary regulations.

Id. at 331-32. The court then undertook to demonstrate that "person" and "partner" are used interchangeably not just in the regulations but that "the same can be said with regard to the . . . regulations and the statute." Id. at 332. It concluded that "except where the context requires otherwise, the term 'partner' (or 'person'), when used in the . . . regulations, was not intended to have any different meaning from, and is used interchangeably with, the term 'person' (or 'partner') in the [Code]." Id. The court then drew two conclusions.

First, if personhood and partnerhood were independent concepts, then paragraph (b)(1) [Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1) (hereinafter "paragraph (b)(1)"] would be B-267 . As stated, section

EXHIBIT "A" Pg. 15

6223(a) provides that each partner must receive notice. Therefore, since paragraph (a) provides generally that a husband and wife with a joint interest are each a partner, the meaning of section 6223(a), unless elsewhere modified, is that each such spouse is entitled to notice. If personhood were an independent characteristic from partnerhood, then the one-person rule of paragraph (b)(1) would have no effect on section 6223, which provides that each partner (not each person) is entitled to notice. We think it unlikely that paragraph (b)(1) is meaningless and conclude that: (1) Paragraph (b)(1)'s one-person rule supersedes paragraph (a)'s two-partner rule, and (2) person and partner must, in that context, mean the same thing.

Second, if personhood and partnerhood were independent concepts, then paragraph (b)(1) would be superfluous. Section 6231(a)(12) provides that spouses with a joint interest are generally treated as one person. Thus, the one-person rule of paragraph (b)(1) is superfluous unless the one-person rule of section 6231(a)(12) is superseded by some other Code provision or regulation. We think it unlikely that paragraph (b)(1) is superfluous and therefore conclude that paragraph (b)(1) must be necessitated by some limitation on section 6231(a)(12). Since paragraph (a) is the only provision that arguably limits section 6231(a)(12), we conclude that: (1) PARAGRAPH (a)'s TWO-PARTNER RULE SUPERSEDES SECTION 6231(a)(12)'s ONE-PERSON, rule, and (2) person and partner must therefore mean the same thing, both as between paragraphs (a) and (b)(1) and paragraph (a) and section 6231(a)(12).

Dubin, 99 T.C. at 332-33 (emphasis added). Having thus purportedly demonstrated that "person" and "partner" are not only used interchangeably but actually "mean the same thing," the Tax Court proceeded to show how this equivalence stripped the statutory and administrative scheme of its purported "mystery."

Overall, the statutory and administrative scheme would be quite difficult to fathom if "person" and "partner" were (in the TEFRA context) intended as wholly distinct concepts. If that were so, then [Temporary Treasury Regulation] section 301.6231(a)(1)-1T(a)(1) (which, without explanation, substitutes the term "person" for "partner") could only be regarded as a stealthy amendment to section 6231(a)(1)(B)(i). Also, paragraph (b)(1) would properly be regarded as both irrelevant and redundant. The weight of those suppositions is too much to bear.

In contrast, once it is accepted that the terms "person" and "partner" mean the same thing in the context of section 6231(a)(12) and paragraphs (a) and (b)(1), the statutory and administrative scheme is stripped of all mystery. Section 6231(a)(12) sets forth a general rule that, in default of a regulatory exception, spouses with a joint interest in a partnership are treated as one person (or partner). BY WAY OF EXCEPTION, paragraph (a) REVERSES the general rule, setting forth a NEW GENERAL RULE THAT SPOUSES HOLDING A JOINT INTEREST IN A PARTNERSHIP ARE TREATED AS SEPARATE PERSONS (OR PARTNERS). Paragraph (b)(1) sets forth exceptions to the new general (default) rule. Thus, by way of exception, spouses holding a joint interest in a partnership are sometimes treated as one partner (person) for purposes of the notice provisions found in section 6223 and always are treated as one partner (person) for purpc B-268 small partnership

EXHIBIT "A" Pg. 16

exception found in section 6231(a)(1)(B). PARAGRAPH (b)(1) IS THEREFORE AN EXCLUSIVE LIST OF EXCEPTIONS TO THE GENERAL RULE IMPOSED BY PARAGRAPH (a). . . . Of course, pursuant to the authority granted by section 6231(a)(12), the Secretary can expand that list.

Dubin, 99 T.C. at 333-34 (emphases added). On this elaborate reasoning, Dubin based its holding. The "two partner rule [of paragraph (a) of the Regulation] supersedes [Code] section 6231(a)(12)'s one-person rule." Id. at 333. Because paragraph (a) of the regulation, by way of exception, reverses the general rule of section 6231(a)(12), because paragraph (b)(1) provides an exclusive list of exceptions to the "separate persons (or partners)" rule announced by paragraph (a), and because the "bankruptcy rule [Temp Treas. Reg. section 301.6231(c)-7T(a)] is not one of the provisions for which an exception to the general rule of paragraph (a) applies, by virtue of paragraph (b)(1), "Dubin, 99 T.C. at 333-34, the Tax Court concluded that for the purposes of applying that rule there was no authority to treat Jewell and Alan Dubin as "1 person," notwithstanding the plain command of the statute. See I.R.C. section 6231(a)(12). We think the Dubin court's analysis of the statutory and regulatory framework is mistaken.

(a) THE STATUTORY AND REGULATORY SCHEME IS NOT IN NEED OF BEING "STRIPPED OF ITS MYSTERY." As set out above, the statutory scheme arising from the interplay of sections 6231(a)(2)(B) and 6231(a)(12), while somewhat complex, is clear and logical: a husband and wife who must each take their share of partnership items into account because they own a joint interest (1) are each treated as partners, entitled to participate in the proceedings; but because their joint interest is a single membership in the partnership, (2) they are treated as one person. The pertinent regulation substantially restates and applies this statutory scheme. That two individuals may collectively constitute a single person or entity is a commonplace. There is no illogicality -- "no mystery" -- no need for reformation.

(b) Paragraph (a) is not an exception to section 6231(a)(12). From the start, Dubin considers only the "interplay between section 6231(a)(12) and paragraph (a)," Dubin 99 T.C. at 331. It nowhere considers the interplay between Code sections 6231(a)(12) and 6231(a)(2)(B). It therefore assumes that paragraph (a) of the regulation is the "exception" allowed by section 6231(a)(12) ("Except to the extent provided otherwise in regulations . . ."). What the Dubin opinion fails to recognize is that paragraph (a) is simply a restatement and application of the proposition of section 6231(a)(2)(B) that spouses who each must take into account partnership items (because they own a joint interest in the partnership) are treated as partners. Neither section 6231(a)(2)(B), nor paragraph (a) of the Regulation that confirms it, are exceptions to the "1-person" principle of section 6231(a)(12).

In our view, therefore, the fundamental error of the Tax Court in Dubin was to overlook the relationship between paragraph (a) and Code section 6231(a)(2)(B). See, e.g., Dubin, 99 T.C. at 333 ("paragraph (a) is the ONLY PROVISION that arguably limits section 6231(a)(12)") (emphasis added); id. at 334 (implying that section 6231(a)(2)(B) is of "no relevance"). Had the court focused on that relationship it would have seen that paragraph (a) of the Regulation, far B-269 ding an exception that

EXHIBIT "A" Pg. 17

overturns the general rule of section 6231(a)(12) simply applies the rule of section 6231(a)(2)(B) to a husband and wife whose joint interest in the partnership requires each to take his or her share of partnership items into account. In short, a husband and wife owning a joint interest are both treated as "partners" by independent operation of section 6231(a)(2)(B), not by regulatory exception to section 6231(a)(12).

(c) The premise that "person" and "partner" mean the same thing is insupportable. We see no justification for Dubin's remarkable assertion that the words "person" and "partner" "mean the same thing." The Dubin opinion concedes this conclusion is essential to support its contention that paragraph (a) ("spouses holding a joint interest . . . are treated as partners") is the exception that reverses the general rule of section 6231(a)(12) ("[A] husband and wife who have a joint interest . . . shall be treated as 1 person.").

We do not dispute that "partner" and "person" are sometimes used interchangeably. <<ENDNOTE 16>> But this does not prove that they mean the same thing. Of course, because a partner -- whether an entity or an individual -- is a person and a person can be (or can be treated as) a partner, there are instances where either word could be used without error. In addition, there exist instances where the regulations have used "person" where "partner" would have tracked the statutory language more closely and might have been more precise. Observing one such instance, Dubin contends that unless "partner" and "person" mean the same thing, then Temporary Treasury Regulation section 301.6231(a)(1)-1T(a)(1) "could only be regarded as a stealthy amendment to section 6231(a)(1)(B)(i). "Dubin, 99 T.C. at 333. We disagree.

Code section 6231(a)(1)(B)(i) is a counting rule designed to exclude from the scope of subchapter C small partnerships having ten or fewer partners of specified types. Each partner must be "an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." I.R.C. section 6231(a)(1)(B)(i). The statute provides that for the purposes of this count "a husband and wife (and their estates) shall be treated as 1 PARTNER." I.R.C. section 6231(a)(1)(B) (emphasis added). The corresponding regulation states that, "[f]or purposes of section 6231(a)(1)(B) and this section, a husband and wife (and their estates) are treated as ONE PERSON." Temp. Teas. Reg. section 301.6231(a)(1)-1T(a)(1) (emphasis added). Where the Code states a husband and wife would be counted as "1 partner" the regulation says that they are counted as "one person." But this does not mean that the regulation would constitute a "stealthy amendment" of the statute unless we read "person" as meaning the same thing as "partner." In the context of this regulation, it makes little difference which term is used.

This is a counting rule: the important point, for the purposes of determining whether the partnership may elect out of subchapter C, is that the husband and wife are counted as "one" and not as "two." In this context, the regulation could have used "partner" or "person" and it would not have changed the meaning. We agree that the regulation would have tracked the statutory language more closely had it used the word "partner" instead of "person," but the meaning remains clear. At most, the substitution of "person" for "partner" in this context represents a careless slip or stylistic choice. It does not justify the extraordinary conclusion that in the regulatory scheme t B-270 difference between



EXHIBIT "A" Pg. 18

the meanings of "partner" and "person."

(d) Should the Regulation be reinterpreted lest paragraph (b)(1) be superfluous? The Tax Court argued that paragraph (b)(1) of Temporary Treasury Regulation section 6231(a)(12)-1T, which restates and applies the statutory one-person rule, would be "superfluous unless the one person rule of section 6231(a)(12) is superseded by some other code provision or regulation." Dubin, 99 T.C. at 333. The supposition that "paragraph (b)(1) would properly be regarded as both irrelevant and redundant" was "too much too bear." Id. We do not understand the argument.

It is a commonplace for Treasury Regulations to restate the Code's propositions before proceeding to interpret and apply them. By the Tax Court's reasoning, a vast number of interpretative regulations would be rendered "superfluous." Further, in a statutory scheme as complex as the Internal Revenue Code and its implementing Treasury Regulations, we should not be surprised to find repetitive "surplusage." <<ENDNOTE 17>> J. C. Penney Co. v. Commissioner, 312 F.2d 65, 72 (2d Cir. 1962) (Friendly, J.); see also White v. Roughton, 689 F.2d 118, 120 (7th Cir. 1982) (Posner, J.) (observing that the rule against superfluity rests on the "unrealistic premise" that every provision is drafted with complete precision of language.)

As between tolerating an interpretive repetition that is unnecessary because it restates a proposition already stated in the Code and reinterpreting terminology in order to construe a regulation to avoid such redundancy with the result that the regulation is read to reverse the general rule established by the Code, it seems clear to us which is the lesser evil.

(e) Dubin reads a purported exception to swallow the rule. Apart from the other flaws in Dubin's reasoning, the exception that it finds in paragraph (a) of the Regulation is so broad that it swallows the statutory rule. In Dubin's own words, according to its interpretation, "[p]aragraph (a)'s two-partner rule supersedes section 6231(a)(12)'s one-person rule," Dubin, 99 T.C. at 333; see also id. ("By way of exception, paragraph (a) reverses, the general rule . . ."); Gillilan, 66 T.C.M. (CCH) at 402 (repeating that paragraph (a) "supersede[s]" and "reverses the general rule of Section 6231(a)(12) . . ."). In two respects, this reasoning is unacceptable. First, the Regulations do not prevail over the Code; here, the Code authorizes only exceptions by regulation. See I.R.C. section 6231(a)(12). Second, exceptions are normally applied narrowly and are not properly construed to effect a complete reversal. See, e.g., Commissioner v. Clark, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement . . . is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.")

In conclusion, in our view, the Dubin court (i) found "mystery" in provisions of the Code and implementing Regulations which in fact stand together in a logical, coherent scheme; (ii) mistook paragraph (a) of the pertinent Regulation to be an exception to Code 6231(a)(12), failing to recognize that this paragraph simply applies Code section 6231(a)(2)(B) to a husband and wife owning a joint interest; (iii) needlessly treated terms of the Code and Regulations as meaning ot B-271 at they say; and (iv)



EXHIBIT "A" pg. 19

unnecessarily distorted the meaning of an entire Regulation, lest one subparagraph be rendered "superfluous" for repeating a general principle established in the Code; all to conclude that (v) a Regulation "[b]y way of exception" "supersedes" and "reverses" a rule established by the Code. While leaving the question open, we express serious doubts about Dubin's reasoning.

D. DEFERENCE TO THE COMMISSIONER'S LITIGATING POSITION?

The IRS's considered view on the interpretation of the Internal Revenue Code and the Regulations adopted under it is generally entitled to considerable deference. See e.g., Wett v. Commissioner, 455 U.S. 305, 318 (1982) (canon of construction that Commissioner's consistent interpretation of Code is entitled to respect is "even more forceful when applied to the Commissioner's interpretation of his own Regulation"); see generally Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14 (1945) (agency interpretation of its own regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation"). On the other hand, that the Commissioner advocates a certain interpretation in a particular litigation does not alone justify judicial deference to that interpretation. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); cf. CSI Hydrostatic Testers, Inc. v. Commissioner, 103 T.C. 398, 409 (1994) (no deference due to Commissioner's interpretation where it is neither longstanding nor a matter of public record upon which the public is entitled to rely when planning its affairs).

It is not always easy to distinguish the circumstances when deference is due from those in which it is not. The Supreme Court has looked sometimes to the consistency of an agency's interpretations as a measure of deference due. See I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30 (1987) ("An agency interpretation . . . which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view.") (citation omitted). However, the Court has instructed that an agency is not "disqualified from changing its mind" nor "estopped from changing . . . a mistaken legal interpretation." Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993). At other times, the Court has accorded deference, even to agency interpretations appearing for the first time in an amicus brief, where there "is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Auer v. Robbins, 519 U.S. 452, 462 (1997). A new, and therefore inconsistent position, may yet be "fair and considered." Agency expertise underwrites Chevron's theory of deference, see Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 651-652 (1990) ("[P]ractical agency expertise is one of the principal justifications behind Chevron deference."); as Good Samaritan Hospital recognized, experts will change their minds. However, notwithstanding this recognition, the consistency of an agency's position remains a factor to be considered in assessing the deference due that position. See Good Samaritan Hosp., 508 U.S. at 417; see also Federal Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 37 (1981) (noting that the "thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of defer B-272 n agency's

EXHIBIT "A" Pg. 20

interpretation). The weight to be given to consistency as a factor in determining how "fair and considered" is the agency's position, will ultimately "depend on the facts of individual cases." Good Samaritan Hosp. 508 U.S. at 417.

In this case, the Commissioner has taken inconsistent positions before, during and after this litigation. And there is evidence that the Commissioner's "fair and considered position" does not accord with either the Tax Court's reasoning in Dubin or his brief in this case. It is, therefore, difficult to avoid concluding that the Commissioner's position on appeal is nothing more than . . . a post-hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." Auer, 519 U.S. at 462 (quoting Bowen, 488 U.S. at 212).

The Commissioner has taken positions contrary to the position he takes in this litigation. The Commissioner argues to us that we should accept and extend the Tax Court's ruling in Dubin. But in Dubin, the Commissioner took the opposite position. When Alan Dubin filed for bankruptcy his partnership items were converted to nonpartnership items, see I.R.C. section 6231(b)(1)(D), (c); Temp. Treas. Reg. section 301.6231(c)-7T(a), with the result that the deficiency procedures of subchapter B applied to assessments attributable to those items, see I.R.C. section 6230(a)(2)(A)(ii). In that case, the Commissioner argued that Jewell Dubin's share of the partnership items converted also, pursuant to the command of section 6231(a)(12) that a "husband and wife who have a joint interest in a partnership shall be treated as 1 person." Further, the Commissioner evidently argued that spouses filing a joint return have one set of partnership items regardless whether the partnership interest is held jointly (Jewell Dubin's case) or separately by one spouse (Elizabeth Callaway's case). See Dubin, 99 T.C. at 334. <<ENDNOTE 18>> As noted above, the Tax Court relied on a complicated, and in our view unconvincing, reading of the regulations, to reject the Commissioner's position.

As recently as October 1999, after the submission of his briefs in this case and less than one month after advocating that we extend Dubin's holding, the Commissioner "acquiesced in result only" in the Dubin case. See Actions Relating to Court Decisions, 1999-40 I.R.B. 438, 1999 WL 779941 Such a designation affirmatively indicates the Service's "DISAGREEMENT OR CONCERN WITH SOME OR ALL OF [the court's] REASONS." Id. (emphasis added) <<ENDNOTE 19>> Since Dubin was decided entirely as a matter of interpretation of the Code and regulations, we conclude that the Commissioner disagrees with or at least remains concerned about the interpretation of the TEFRA framework articulated by the Tax Court.

Lastly, in its initial actions in this case, the IRS adopted a position contrary to the one the Commissioner now advocates. In August and September 1993, over eighteen months after James Callaway's estate requested prompt assessment, thereby converting his partnership items into nonpartnership items, the IRS entered "precautionary" assessments against both James and Elizabeth. However, the Commissioner now contends that the 1996 assessments against Elizabeth were proper and timely because Elizabeth was a Mountain View partner with partnership items, at all times bound as a party to the Mountain View partnership level proceedings. See Callaway, 75 T.C.M. (CCH) at 1960. But if B-273 1e case, any

EXHIBIT "A" Pg. 21

assessment of tax attributable to her partnership items could only occur at the close of the subchapter C proceedings. See I.R.C. 6225(a); cf. Temp Treas. Reg. section 301.6221-1T(a) ("A partner's treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 of the Code."). It is undisputed that the section 6226 proceedings in the Court of Federal Claims were still pending in August and September of 1993. Therefore, according to the position now advocated by the Commissioner, the "precautionary" assessments against Elizabeth were improper -- a point he conceded in his papers below. We may infer from this that the IRS's initial position was that the prompt assessment converted the partnership items With respect to both spouses.

In view of the positions previously and subsequently taken by the Internal Revenue Service, especially its contrary argument in Dubin and its continued reservation of disagreement with Dubin's reasoning, it is difficult to view the position it adopts here as other than 'a litigating strategy to recover from the error of having allowed the statute of limitations to expire against assessments attributable to James's Mountain View items.

Of course, if the IRS decides it wishes to adhere to the position taken in this litigation, it may promulgate rules to that effect.

E. THE COMMISSIONER'S APPEALS TO EQUITY ARE WITHOUT MERIT

At oral argument, the Commissioner appealed to the equity of the IRS's position, reasoning that Elizabeth had enjoyed the benefits of joint filing when the tax losses were first taken into account, and should now bear the burden of their disallowance. We are unpersuaded by this argument.

First, equity plays a very limited role in tax cases. See, e.g., Lewyt Corp. v. Commissioner, 349 U.S. 237, 249 (1955) (Frankfurter, J., dissenting) ("Where the taxing measure is clear, of course, there is no place for loose conceptions about the 'equity of the statute.' . . . [O]ne should sail close to the shore of literalness in dealing with the technical problems which are the subject matter of revenue laws."). The task of an appellate court in such cases is "not that of weighing equities, but of determining technical application of the law [consistent] . . . with the well-established view that tax laws are technical and, for the most part, are to be accordingly interpreted. Ewing v. United States, 914 F.2d 499, 501 (4th Cir. 1990) (citations omitted). As we read the Code, it precludes the Commissioner's arguments.

Second, if there is "inequity," it does not result from our interpretation of these statutes but rather from the fact that the IRS needlessly allowed the statute of limitations to expire. The IRS simply failed to adjust the treatment of decedent's partnership losses and assess deficiencies in a timely manner, following the proper procedure. It is in the nature of limitations periods that they prevent the recovery of otherwise valid claims. That is all that happened here. <<ENDNOTE 20>>

James Callaway died on December 8, 1990. His estate filed a timely request for prompt assessment on December B-274 posting nearly

EXHIBIT "A" Pg. 22

$150,000 in cash bonds. That action, in converting his distributive share of partnership items to nonpartnership items put the Service on notice and freed it to determine and to assess any deficiencies under subchapter B of Chapter 63 unconstrained by the TEFRA framework. It had a year in which to so proceed. See I.R.C. sections 6229(f), 6501(d). However, it did nothing. Now, having let the statute run as to its valid claim under subchapter B, the Commissioner argues that TEFRA allows the IRS a second chance to achieve the same result by way of a computational adjustment against Elizabeth. The Code, however, does not support that position.

CONCLUSION

For the foregoing reasons so much of the Tax Court's order as ruled that the 1996 computational adjustments and 1996 determinations of additions to tax were proper and not time barred with respect to Elizabeth Callaway is REVERSED, and the case is REMANDED to the Tax Court for further proceedings consistent with this opinion.

----------

POOLER, Circuit Judge, concurring in part:

I concur in the result that the majority reaches. However, I write separately to note that I do not join in the majority opinion at page [37], line [13], through page [44], line [18], in which the majority undertakes a detailed analysis of Dubin v. Commissioner, 99 T.C. 325 (1992). Expressing no view on the merit of that analysis, I believe that after having stated that Dubin ha[s] no bearing on this case," it is best not to discuss the substance of the Dubin opinion. I simply would leave that task to a future panel presented with a case on which Dubin does have bearing.

<<ENDNOTES>>

1/ All statutory references are to the Internal Revenue Code of 1986, codified as Title 26 of the United States Code, as in effect at all relevant times. Regulatory references are to the Treasury Regulations as codified in Title 26 of the Code of Federal Regulations. Few of the Treasury Regulations issued under TEFRA have been finalized. However, "[u]ntil the passage of final regulations, temporary regulations are entitled to the same weight we accord to final regulations." E. Norman Peterson Marital Trust v. Commissioner, 78 F.3d 795, 798 (2d Cir. 1996); see Track & Equipment Corp. of Harrisonburg v. Commissioner, 98 T.C. 141, 149 (1992).

2/ While we note that the agreement indefinitely extending the Mountain View statute of limitations for taxable year 1987 was executed after the section 6229(a) limitations period for that year had run (on April, 15, 1991) and therefore was not entered into "before the expiration of [the section 6229(a)] period," I.R.C. section 6229(b)(1)(B), we nonetheless assume for our purposes that this agreemen[illegible] B-275 [illegible]ng on all Mountain



EXHIBIT "A" Pg. 23

View partners.

3/ Taxpayer claimed that these NBAPs were never sent. Because of this failure of notice, she argues that she was entitled to elect to have partnership items treated as nonpartnership items. See I.R.C. section 6223(e)(3)(B). We do not reach this argument.

4/ As discussed below, while the IRS concedes that James's statute of limitations had expired before any of the deficiencies or penalties at issue were assessed, it misconstrues the relationship between Code sections 6501(d) and 6229(f) when it argues that the limitations period expired on June 23, 1993.

5/ The IRS contended initially that the request was invalid because it had been filed before the final Estate Tax Return (Form 706). However, because the request for prompt assessment related to James's 1986, 1987 and 1988 INCOME tax returns, and because it was filed after those returns, see I.R.C. 6501(d); Treas. Reg. section 301.6501(d)-1(b), it was valid, as the IRS now concedes. The date the estate tax return is filed is not relevant to this inquiry; a taxpayer may not request prompt assessment of estate taxes. See I.R.C. section 6501(d).

6/ Payments "designated in writing as a deposit in the nature of a cash bond" stop the running of interest on any amount subsequently assessed as a deficiency. Rev. Proc. 84-58, 1984-2 C.B. 501, 502, 503. Such a deposit is not subject to a claim for credit or refund as an overpayment; the taxpayer may request its return at any time before the IRS is entitled to assess the tax; and it will be returned without interest. See id. at 502.

7/ The third letter was, inter alia, an attempted election under I.R.C. section 6223(e)(3)(B) to have partnership items treated as nonpartnership items on account of the Commissioner's alleged failure to provide timely notice as required by section 6223(a). Taxpayer concedes that the form and timing of this election did not comply with the requirements imposed under the Treasury regulations, See Temp. Treas. Reg. section 301.6223(e)-2T(c)(2). Nonetheless, she has argued in the alternative, that it effected a valid election. Because we hold in favor of the taxpayer on other grounds, we need not reach this argument.

8/ The decedent's distributive shares of the disallowed losses were $171, 535, [sic] $106,902 [sic] and $22,903 in years 1986, 1987, and 1988 respectively. These figures were exactly those that were determined in the administrative adjustment finally concluded on September 4, 1995.

9/ As discussed below these assessments, at least with respect to Elizabeth, were inconsistent with the position the IRS now asserts.

10/ It, held further, that the third letter Elizabeth mailed on December 23, 1991 was not valid as an election to have partnership items treated as nonpartnership items pursuant to I.R.C. section 6223(e)(3)(B). See Callaway, 75 T.C.M. (CCH) at 1963. Lastly, it ruled that the third letter was also ineffective to terminate the TMP's authority under section 6229(b)(1)(B) to extend limitations periods for the partnership for the years in issue. See id. We need not reach these arguments on appeal.

B-276

EXHIBIT "A" Pg. 24

11/ However, we distinguish taxpayer's confusing conclusion that "James Callaway's partnership items were, at all times nonpartnership items with respect to Elizabeth Callaway." We find that this statement fails to distinguish between the ownership of the distributive share of the Mountain View tax items -- a function of state property law -- and the classification of those items as either "partnership items" or "nonpartnership items -- a consequence of the federal law of tax procedure. Cf. National Bank of Commerce, 472 U.S. at 722.

12/ Further, to extend Dubin, as the Tax Court did, produces an unworkable result within the TEFRA framework, as we have previously discussed. Dubin and Gillilan are technically possible because there are divided ownership interests in the partnership items. Therefore, it is possible to speak of one spouse's "share of" the partnership items converting into nonpartnership items while the other spouse's share remains unconverted, even on the same return. As we discuss, however, this was the result Congress intended to avoid in drafting section 6231(a)(12).

13/ In Gillilan the Tax Court confirmed that it is "unquestionabl[e]" that "section 6231(a)(12), if nowhere superseded" would compel the result that the Commissioner advocated: "in that event, [a conversion] would apply to petitioner, as well as her husband, converting all partnership items to nonpartnership items." Gillilan, 66 T.C.M. (CCH) at 401 (emphasis added). In short, the legitimacy of Dubin rests on the persuasiveness of its reasoning that the statute has been superseded by the regulations. As set out below, we find that reasoning thoroughly unpersuasive.

14/ In full Temporary Treasury Regulation section 301.6231(a)(12)-1T reads as follows:

(a) In general. For purposes of subchapter C of chapter 63 of the Code, spouses holding a joint interest in a partnership are treated as partners. Thus, both spouses are permitted to participate in administrative and judicial proceedings. The term "joint interest" includes tenancies in common, joint tenancies, tenancies by the entirety, and community property.

(b) Notice and counting rules -- (1) In general. Except as provided in paragraph (b)(2) of this section, for purposes of applying section 6223 (relating to notice to partners of proceedings) and section 6231(a)(1)(B) (relating to the exception for small partnerships), spouses holding a joint interest in a partnership shall be treated as one person. Except as provided in paragraph (b)(2) of this section, the Service or the tax matters partner may send any required notice to either spouse.

(2) Identified spouse entitled to notice. For purposes of applying section 6223 (relating to notice to partners of proceeding) for a partnership taxable year, an individual who holds a joint interest in a partnership with his or her spouse who is entitled to notice under section 6223 shall be entitled to receive separate notice under section 6223 if such individual:

(i) Is identified as a partner on the partnership return for that taxable year; or

B-277

EXHIBIT "A" Pg. 25

(ii) Is identified as a partner entitled to notice as provided in 301.6223(c)-1T(b).

(c) Cross-reference. See section 301.6231(a)(2)-1T(a) for special rules relating to spouses who file joint returns with individuals holding a separate interest in a partnership.

15/ The two exceptions are as follows. First, if a spouse is separately identified on the partnership return as a member of the partnership in her own right, she is entitled to separate notice. See Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(2)(i). Second, she is also entitled to separate notice if she has been "identified as a partner entitled to notice in section 301.6223(c)-1T(b)." Id. -1T(b)(2)(ii). Temporary Treasury Regulation section 301.6223(c)-1T(b) allows any person to file a statement with the IRS to "correct or supplement" the information regarding the "partners in the partnership" as recorded on the partnership return.

16/ We note that Dubin contends only that person and partner are sometimes used interchangeably within the regulations and between the regulations and the Code. Dubin nowhere contends that "person" and "partner" are used to mean the same thing within the Code. In fact, that Jewell and Alan were simultaneously two "partners" under section 6231(a)(2)(B) but also one "person" under section 6231(a)(12) suggests that these words have different meanings, both of which Congress intended to be given effect.

17/ That is certainly the case within the TEFRA statute and regulations. Even if we were to accept the Tax Court's extraordinary argument that paragraph (a) must reverse section 6231(a)(12) because otherwise paragraph (b)(1) would be "superfluous", this would not purge the statutory and regulatory scheme of repetitive "surplusage." Paragraph (b)(1) would remain superfluous to the extent that it repeats that for the "purposes of applying . . . section 6231(a)(1)(B) (relating to the exception for small partnerships), spouses holding a joint interest in a partnership shall be treated as one person." Temp. Treas. Reg. section 301.6231(a)(12)-1T(b)(1). This provision merely confirms what has been provided independently by the Code, see I.R.C. section 6321(a)(1)(B)(i) "a husband and wife (and their estates) shall be treated as 1 partner"), and further confirmed by a separate regulation, see Temp. Treas. Reg. section 301.6231(a)(1)-1T(a)(1) ("For purposes of section 6231(a)(1)(B) and this section, a husband and wife, (and their estates) are treated as one person.").

18/ Relying on Dickman v. Commissioner, 465 U.S. 330, 343 (1984), the Commissioner responds that he is entitled to change his interpretation of the law when he concludes that his previous view was erroneous. That may be so. Our point is that he has affirmatively indicated that he has NOT changed his view.

19/ Any acquiescence serves only to guide "Service personnel working with the same or similar issues." Id. It shall be relied on within the Service only when "applying the law to th[e] B-278 the particular case"

EXHIBIT "A" Pg. 26

and Service personnel are warned that "[c]aution should be exercised in extending the recommendation of the Action on Decision to similar cases where the FACTS ARE DIFFERENT." Id. (emphasis added), In short, even an Action on Decision indicating unqualified acquiescence only ever indicates that "the Service will follow [a holding] in disposing of cases with the same controlling facts." Id.

20/ The Supreme Court has long recognized that statutes of limitations are of particular importance in tax cases. See generally Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301-03 (1946) (statutes of limitations are inherently arbitrary and cannot discriminate between the just and the unjust claim, sometimes working to the taxpayer's advantage and sometimes to the government's; however, they are essential to the administration of the tax system).

EXHIBIT "A" Pg. 27

PAGE NO-0001

DATE REQUESTED 01-29-2004

FORM NUMBER: 1040

IRS EMPLOYEE 0615504797

PRINT DATE 01-29-2004

TAX PERIOD: DEC 1985

TAXPAYER IDENTIFICATION NUMBER: [redacted]-8176
** SPOUSE TAXPAYER IDENTIFICATION NUMBER: [redacted]-9852

MARVIN C & MILDRED L PARK

BODC-SB BODCLC-W

--- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 3,714.83 | |
| ACCRUED INTEREST: | 152.76 | AS OF 12-08-2003 |
| ACCRUED PENALTY: | 0.00 | AS OF 12-08-2003 |
| ACCOUNT BALANCE PLUS ACCRUALS: | 3,867.59 | |

| | |
|---|---|
| ** EXEMPTIONS: 03 | |
| ** ADJUSTED GROSS INCOME: | 222,018.00 |
| ** TAXABLE INCOME: | 203,267.00 |
| TAX PER RETURN: | 77,122.00 |

**FILING STATUS: MARRIED FILING JOINT

** PER RETURN OR AS ADJUSTED

04-15-1986 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
07-14-1986 PROCESSING DATE

TRANSACTIONS

| CODE | EXPLANATION | DATE | MONEY AMOUNT (IF APPLICABLE) |
|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED 09222-104-17246-6 | 07-14-1986 | 77,122.00 |
| 806 | CREDIT FROM WITHHELD TAXES & EXCESS FICA | 04-15-1986 | 52,520.00- |
| 430 | ESTIMATED TAX DECLARATION | 01-22-1986 | 20,000.00- |
| 610 | PAYMENT WITH RETURN | 04-14-1986 | 4,602.00- |
| 176 | ESTIMATED TAX PENALTY 198627 | 07-14-1986 | 431.10 |
| 171 | ESTIMATED TAX PENALTY ABATED | 07-14-1986 | 431.10- |
| 290 | ADDITIONAL TAX ASSESSED 09254-676-15081-6 198642 | 10-27-1986 | 0.00 |
| 640 | ADVANCE PAYMENT OF DEFICIENCY | 03-11-2002 | 25,000.00- |
| 340 | RESTRICTED INTEREST ASSESSED 200245 | 11-18-2002 | 23,514.31 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION 19247-704-08022-2 200245 | 11-18-2002 | 5,153.00 |
| 340 | RESTRICTED INTEREST ASSESSED 200304 | 02-03-2003 | 25.40 |
| 290 | ADDITIONAL TAX ASSESSED 17254-757-18013-2 200304 | 02-03-2003 | 0.00 |
| 340 | RESTRICTED INTEREST ASSESSED | 02-17-2003 | 22.12 |

**************************CONTINUED ON NEXT PAGE****************************

Exhibit B, P. B-280

AGE NO-0002

IRS EMPLOYEE 0615504797

| | | | |
|---|---|---|---|
| | 200306 | | |
| 290 | ADDITIONAL TAX ASSESSED<br>17254-430-18032-3 200306 | 02-17-2003 | 0.00 |
| 971 | INTENT TO LEVY COLLECTIONDUE PROCESS NOTICE<br>LEVY NOTICE ISSUED | 04-10-2003 | |
| 971 | INTENT TO LEVY COLLECTIONDUE PROCESS NOTICE<br>UNDELIVERABLE LEVY NOTICE | 04-18-2003 | |

Note - Final payment made 3/24/04 to enable refund claim and potential suit. $3,867.59

Total interest paid to 3/24/04 ~~23,661.83~~ 23,714.59

AGE NO-0001
ATE REQUESTED 01-29-2004
ORM NUMBER: 1040

IRS EMPLOYEE 0615504797
PRINT DATE 01-29-2004
TAX PERIOD: DEC 1986

TAXPAYER IDENTIFICATION NUMBER: [redacted]-8176
** SPOUSE TAXPAYER IDENTIFICATION NUMBER: [redacted]-9852

MARVIN C & MILDRED L PARK

BODC-SB BODCLC-W

-- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 7,277.11 | |
| ACCRUED INTEREST: | 299.24 | AS OF 12-08-2003 |
| ACCRUED PENALTY: | 0.00 | AS OF 12-08-2003 |
| ACCOUNT BALANCE PLUS ACCRUALS: | 7,576.35 | |

* EXEMPTIONS: 03
* ADJUSTED GROSS INCOME: 256,445.00
* TAXABLE INCOME: 233,975.00
TAX PER RETURN: 80,385.00

**FILING STATUS: MARRIED FILING JOINT

* PER RETURN OR AS ADJUSTED

4-15-1987 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
8-03-1987 PROCESSING DATE

TRANSACTIONS

| ODE | EXPLANATION | DATE | MONEY AMOUNT (IF APPLICABLE) |
|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED 09222-111-68918-7 | 08-03-1987 | 80,385.00 |
| 806 | CREDIT FROM WITHHELD TAXES & EXCESS FICA | 04-15-1987 | 67,441.00- |
| 610 | PAYMENT WITH RETURN | 04-15-1987 | 12,943.00- |
| 606 | UNDERPAYMENT CLEARED | 08-03-1987 | 1.00- |
| 607 | REVERSAL OF UNDERPAYMENT CLEARED | 08-03-1987 | 1.00 |
| 670 | SUBSEQUENT PAYMENT | 08-26-1987 | 1.00- |
| 640 | ADVANCE PAYMENT OF DEFICIENCY | 03-11-2002 | 75,000.00- |
| 196 | INTEREST ASSESSED 200225 | 07-01-2002 | 0.04 |
| 340 | RESTRICTED INTEREST ASSESSED 200245 | 11-18-2002 | 65,652.97 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION 19247-704-08010-2 200245 | 11-18-2002 | 16,531.00 |
| 340 | RESTRICTED INTEREST ASSESSED 200304 | 02-03-2003 | 49.77 |
| 290 | ADDITIONAL TAX ASSESSED 17254-758-18011-2 200304 | 02-03-2003 | 0.00 |
| 340 | RESTRICTED INTEREST ASSESSED 200307 | 02-24-2003 | 43.33 |

***************************CONTINUED ON NEXT PAGE*****************************

Exhibit B, P. 3

B-282

PAGE NO-0002

IRS EMPLOYEE 0615504797

| | | | |
|---|---|---|---|
| 290 | ADDITIONAL TAX ASSESSED<br>17254-434-18039-3 200307 | 02-24-2003 | 0.00 |
| 971 | INTENT TO LEVY COLLECTIONDUE PROCESS NOTICE<br>LEVY NOTICE ISSUED | 04-10-2003 | |
| 971 | INTENT TO LEVY COLLECTIONDUE PROCESS NOTICE<br>UNDELIVERABLE LEVY NOTICE | 04-18-2003 | |

Note - Final payment made 3/24/04 to enable refund claim and potential suit $7,657.35

Total interest paid to 3/24/04 ~~65,746.07~~ 66,126.35

Exhibit B, p. 4