**UNITED STATES TAX COURT**

UNITED STATES TAX COURT FILED OCT 10 1996

| | | |
|---|---|---|
| CRYSTAL STAR EAGLE, ESTATE OF CLAUDE B. AMARNICK, DECEASED, AARON AMARNICK, PERSONAL REPRESENTATIVE, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner, | § | |
| v. | § | Docket No. 16434-96 |
| COMMISSIONER OF INTERNAL REVENUE, Respondent | § | |

ADM. RECORDS SERVICE CAL. STAT. S.T. JUDGE

**FIRST AMENDMENT TO PETITION**

Pursuant to Rule 245(e) of the Rules of Practice and Procedure, United States Tax Court, Gary H. and Amy E. Arizala, Roger and Barbara Berlin, Paul A. and Margaret C. Brown, Donald M., Jr. and Karen S. Browning, Donald M., Sr. and Edith D. Browning, James R. and Charlene R. Browning, David A. and Terice B. Clark, Jay E. and Shirley M. Frieling, Joseph H. and Barbara E. Goldfarb, James A. and Patricia A. Grever, John R. and Ann M. Griffiths, Julius and Blanche Jaffe, Howard S. and Ilene S. Lapidos, Michael B. and Iris Lewiston, Marvin C. and Mildred L. Park, David M. Phelan, Rudolph A. Robinson, Charles H., Jr. and Charisse L. Straight, R. Norman and Peggy J. Stone, Bert R. and Frances Vanderzee, Merrill F. and Elizabeth J. Wymer, Thomas C. and Nancy J. Gay, and William A. Tauskey, Sr., and Sushil and Sumila Mehrotra, participating partners in this proceeding ("Participating Partners"), hereby amend, with the concurrence of Petitioner, the petition filed by the Petitioner in this proceeding. Respondent has been contacted and has no objection to the filing of this amendment to the petition. Participating Partners hereby amend the previously filed petition by restating the petition in its entirety as follows:

GOVERNMENT EXHIBIT 4

CERTIFIED TRUE COPY
ROBERT R. DI TROLIO, CLERK
BY: [signature]
DEPUTY CLERK

SERVED OCT 10 1996

Petitioner hereby petitions for readjustment of the adjustments to partnership items set forth by the Commissioner of Internal Revenue ("Respondent") in her Notices of Final Partnership Administrative Adjustment ("FPAAs") for tax years 1985 and 1986 mailed to Petitioner and Participating Partners dated March 5, 1996. The FPAAs allege that the FPAAs were mailed to the tax matters partner ("TMP") on March 4,1996. As the basis for their case, Petitioner and Participating Partners allege as follows:

1. Petitioner is filing this petition on behalf of Claude B. Amarnick, deceased, whose social security number is [redacted]-8688, who died on January 5, 1995, having a mailing address at 1515 South Flagler Drive, Apt. 2201, West Palm Beach, Florida 33401.The name and address of each of the Participating Partners who join in this first amendment to petition is as follows:

| | |
|---|---|
| Gary H. and Amy E. Arizala | 94-069 Waipahu Street, Waipahu, HI 96797 |
| Roger and Barbara Berlin | 27 Chenango Drive, Jericho, NY 11753 |
| Paul A. and Margaret C. Brown | 1114 Lake Shore Blvd., Evanston, IL 60202 |
| Donald M., Jr. and Karen S. Browning | 803 East Oak Street, Oakland, MD 21550 |
| Donald M., Sr. and Edith D. Browning | 429 North 4th Street, Oakland, MD 21550 |
| James R. and Charlene R. Browning | 406 Sam Snead Circle, Oakland, MD 21550 |
| David A. and Terice B. Clark | P.O. Box 1416, Pebble Beach, CA 93953 |
| Jay E. and Shirley M. Frieling | 8020 West 127th Street, Palos Park, IL 60464 |
| Joseph H. and Barbara E. Goldfarb | 3750 Amesbury Road, Los Angeles, CA 90027 |
| James A. and Patricia A. Grever | 24719 97th Avenue South, Kent, WA 98031 |
| John R. and Ann M. Griffiths | 1755 Embarcadero Road, Suite 150, Palo Alto, CA 94303 |
| Julius and Blanche Jaffe | 144 Orchard Street, Plainview, NY 11803 |
| Howard S. and Ilene S. Lapidos | 104 Atkinson Road, Rockville Centre, NY 11570 |
| Michael B. and Iris Lewiston | 100 Renaissance Center, Suite 3400, Detroit, MI 48243 |
| Marvin C. and Mildred L. Park | 17 Tenerife Way, Hot Springs Village, AR 71909 |
| David M. Phelan | 16 Bobwhite Drive, Westport, CT 06880 |
| Rudolph A. Robinson | 2828 Myrtle Avenue, N.E., Washington, D.C. 20018-2632 |
| Charles H., Jr. and Charisse L. Straight | #51 Scenic Hills, Parkersburg, WV 26101-8064-516 |
| R. Norman and Peggy J. Stone | 2549 Burnt Leaf Lane, Decatur, GA 30033 |
| Bert R. and Frances Vanderzee | 1691 185th Street, Lansing, IL 60438 |
| Merrill F. and Elizabeth J. Wymer | P.O. Box 6774, Wheeling, WV 26003 |
| Thomas C. and Nancy J. Gay | 102 Parkview Drive, Sewickley, PA 15143-9105 |
| William A. Tauskey, Sr. | River Ridge Road, P.O. Box 2217, Blue Ridge, GA 30513 |
| Sushil and Sumila Mehrotra | 37 Jenna Way, Wheeling, WV 26003 |

Participating Partners Merrill F. and Elizabeth J. Wymer join in this petition only as to the petition for readjustment of partnership items for the 1986 year because they do not at this time

dispute that they have entered into a settlement agreement regarding 1985, but reserve their right to dispute the validity of the 1985 settlement upon further inquiry into the facts.

2. This petition relates to the Crystal Star Eagle investment program ("Crystal Star"). The principal place of business of Crystal Star as of the date of filing of this petition is 100 Renaissance Center, Suite 3400, Detroit, Michigan 48243. The Petitioner and Participating Partners do not agree with Respondent that Crystal Star was a partnership or that it was subject to the TEFRA[1] partnership examination procedures under I.R.C.[2] §§ 6221 through 6233 but are filing this petition to contest that determination by Respondent, and if Crystal Star is determined to have been a partnership for 1985 and 1986, then to seek clarification of and readjustment of the partnership item adjustments determined by Respondent in the FPAAs. Crystal Star's employer identification number assigned by Respondent is 13-3558089. On information and belief, Crystal Star did not file partnership returns for the periods here involved, and the investors in Crystal Star have never held themselves out to be partners.

3. If Crystal Star constituted a partnership, Petitioner and Participating Partners are notice partners, satisfy the requirements of § 6226(d), and would be parties to this proceeding pursuant to § 6226(c).

4. If Crystal Star constituted a partnership, on information and belief, the partnership items of the Petitioner and Participating Partners for the partnership taxable years here involved have not become nonpartnership items (except as noted above regarding the Wymer's 1985 taxable year). Participating Partners Wymer assert that the settlement agreement executed by them as to 1986 was

---

[1] Partnership procedures codified at 26 U.S.C. §§6221-6233, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA"), and as thereafter amended.

[2] Unless otherwise stated, all references to "I.R.C.," "the Code," "Section" or "§" shall be to the stated section of the Internal Revenue Code, 26 U.S.C., as amended and effective for the years in issue.

both countersigned and returned to them after they had notified Respondent through their accountant that the settlement agreement was to be returned unsigned and that the Wymer's offer to settle was withdrawn. The 1986 settlement agreement is therefore invalid.

5. The appointed TMP of Crystal Star at the time of the alleged mailing of the FPAAs was William A. Tauskey, Sr. whose address is River Ridge Road, P. O. Box 2217, Blue Ridge, Georgia 30513. Mr. Tauskey was appointed TMP by the Internal Revenue Service ("I.R.S.") and acknowledges that appointment although not conceding the status of Crystal Star as a partnership.

6. The TMP for Crystal Star has not filed a petition for readjustment of partnership items within the period specified in § 6226(a).

7. If Crystal Star is a partnership, then Petitioner is a partner other than the TMP for Crystal Star, and Mr. Tauskey's appearance in this suit is solely in his capacity as a Participating Partner, but he will carry out his required duties as the appointed TMP.

8. The FPAAs for 1985 and 1986 (copies of which, along with as much of the statements accompanying them as are material, are appended hereto and marked as Exhibits "A" and "B," respectively) mailed to the Petitioner were dated March 5, 1996. The FPAAs indicate they were issued by the office of the Internal Revenue Service Regional Director of Appeals, New York City Appeals Office, P.O. Box 2954, Church Street Station, New York, New York 10008. Each of the Participating Partners were mailed essentially identical copies of the FPAAs. Petitioner and Participating Partners do not have sufficient information to determine the exact date on which the FPAAs were actually mailed to the TMP or if any generic FPAAs were mailed.

9. The FPAAs were issued for Crystal Star's alleged taxable years ended December 31, 1985, and December 31, 1986.

10. Respondent committed the following errors in the FPAAs:

(a) Respondent erroneously determined an adjustment to Crystal Star's ordinary loss for 1985 of $2,733,064 and for 1986 of $3,570,696, and that Crystal Star had an ordinary loss for each year of -0-.

(b) Respondent erroneously determined the following adjustments to Tax Preference Items of Crystal Star for 1985 and 1986:

| 1985: Accelerated Depreciation | |
|---|---|
| Adjustment | ($1,460,037) |
| Corrected | -0- |

| 1986: Accelerated Depreciation | |
|---|---|
| Adjustment | ($1,587,467) |
| Corrected | -0- |

(c) Respondent erroneously determined that all items of income, loss and deduction reported with respect to Crystal Star's equipment leasing activities for the years 1985 and 1986 are disallowed.

(d) Respondent erroneously determined that for purposes of federal income taxation, Crystal Star cannot be considered the owner of the equipment with respect to which said items of income, loss and deduction are reported since Respondent erroneously determined Crystal Star not to have incurred the benefits and burdens of ownership of the equipment or to have made, in substance, a true economic investment in said equipment.

(e) Respondent erroneously determined that alternatively, if it is held that Crystal Star was the owner of the equipment for federal income tax purposes during the years at issue, the acquisition and lease of said equipment was not an activity entered into for profit under § 183(a), and that any deductions claimed which have not been disallowed in full for the specific reasons

set forth in the FPAA are only allowed to the extent of income from such activity in accordance with, and in the manner provided by, §§ 183(b)(1) and 183(b)(2).

(f) Respondent erroneously determined that the depreciation of the leased equipment is disallowed for the following specific but erroneous reasons:

(i) The partnership has not established the cost or depreciable basis of the equipment.

(ii) The method of depreciation claimed is found to materially distort income during the years at issue.

(iii) Alternatively, the portion of the depreciation deduction attributable to any notes, guarantees, or assumptions executed by the partnership is disallowed because such notes, guarantees, or assumptions lack economic substance and, therefore, cannot be added to the cost or depreciable basis of the equipment.

(g) Respondent erroneously determined that deductions for other rental expenses are disallowed because of the following erroneous determinations:

(i) "The partnership" has not substantiated "the claimed deductions" or shown that they were incurred or that they constitute ordinary and necessary business expenses,

(ii) The amounts claimed are unreasonable and excessive,

(iii) If the "deductions" were, in fact, incurred, such expenditures are either for syndication or are capital in nature with an indeterminable useful life and are, therefore, neither currently deductible nor amortizable.

(h) Respondent erroneously determined that "the partnership has improperly taken deductions and/or credits for tax-motivated reasons" and the increased rate of interest prescribed in § 6621(c) is applicable at the individual partner level after the partnership proceedings have been completed.

11. The facts on which the Petitioner and Participating Partners base the foregoing assignments of error are as follows:

(a) The following facts are undisputed and are as found by the Ninth Circuit Court of Appeals and the Tax Court regarding Crystal Star in *Bergford v. Commissioner,* 12 F3d 166 (9th Cir., 1994), *affg. Alhouse v. Commissioner,* 62 T.C.M. (CCH) 1678 (1991):

(i) In 1985, the Petitioner, Participating Partners and their spouses were each among over seventy investors ("Participants") who entered into a Subscription Agreement with First AmeriGroup Securities, Inc. ("AmeriGroup"), subscribing for individual interests in AmeriGroup's Crystal Star program.

(ii) The Confidential Placement Memorandum for Crystal Star offered the right to acquire ownership interests as tenants-in-common in certain computer equipment.

(iii) The computer equipment had been bought by AmeriTec Leasing, Inc. ("AmeriTec"), from ComDisco subject to the end-user existing leases; it was leased back by AmeriTec to ComDisco and AmeriTec then sold the equipment to Eastwind Leasing Corp.

(iv) Participants, including Petitioner and the Participating Partners, acquired interests in the equipment from Eastwind Leasing Corp. subject to all underlying leases, which was simultaneously "net leased" to AmeriTec for seven years.

(v) Participants delivered the subscription price to AmeriGroup Management, Inc. ("the Manager"), which was the program manager.

(vi) The subscription price of each unit was $30,000 in cash or notes plus the assumption of $126,660 in liability ("subscription notes"). The cash was used as a down payment on the equipment, with the Manager financing the balance using the subscription notes as security.

(vii) Each Participant pledged his interest to the Manager as security for the notes.

(viii) Each Participant also executed a management agreement which authorized the Manager, among other things, to arrange financing secured by the subscription notes and carry out any refinancing; arrange for execution of documents needed for the sale and leaseback of the equipment, and pay for the equipment; collect rent from the lessee and use the rent to pay off the notes financing the equipment; distribute the surplus; prepare statements; make distributions of the rent received on the equipment; and, at its sole discretion, to advance funds to Participants, interest-free, to meet expected cash flow projections, to be repaid out of future rental receipts in excess of financing repayments.

(ix) The management agreement gives the Manager the right to remarket a Participants' interest in the equipment at the expiration or termination of the initial lease, at which time, the Participants decide by majority vote whether to sell or lease the equipment, provided that if there is no majority vote, the Manager decides.

(x) Under the management agreement, the Manager is entitled to a remarketing fee of ten percent of the selling price or lease rentals less remarketing expenses, whether or not a Participant terminates the agreement or the Manager performs any remarketing services.

(xi) The initial term of the management agreement was one year, renewed yearly for twenty years unless terminated by sale of all the equipment; ninety days' notice of termination before the end of any one-year term by a Participant; breach or default that is not seasonably cured; the Manager's inability to pay its debts or its bankruptcy; destruction of the equipment; passage of twenty years; or failure of the Manager to remarket the equipment.

(xii) A Participant could assign title to his interest in Crystal Star only after fulfilling certain conditions and obtaining the Manager's consent.

(xiii) No partnership return of income was, or was to be, filed with the I.R.S. and each Participant was to report any losses, rental income and depreciation expenses, interest expenses, and management fees, stemming from his co-ownership interest in the equipment on his 1985 and 1986 federal income tax returns.

(b) Respondent initially examined the tax returns of several of the Participants individually, and consistent with the treatment of Crystal Star as a co-ownership, disallowed the claimed losses of Participants William G. And Barbara Alhouse, William A. and Judith A. Tauskey, Gerald W. and Geraldine M. Bergford, John M. and Nancy A. Damas, and Monte S. and Jerilyn F. Preece (hereinafter referred to as the "TCM Participants"), and asserted tax deficiencies.

(c) The TCM Participants petitioned the Tax Court for review of Respondent's deficiency determinations, and Respondent moved to dismiss for lack of jurisdiction asserting for the first time that Crystal Star was a partnership subject to the TEFRA partnership examination procedures. Petitioner and Participating Partners dispute the Tax Court's finding.

(d) The Tax Court held that:

> We conclude that the CSE Program involves more than an alternative way of describing co-ownership of the computer equipment. It involves a series of financings, leases, transfers, and management obligations by which, together, the participants acquire computer equipment, finance their acquisition, lease the equipment and arrange for the possible continuation of their relationship on the termination of the initial lease. As in *Bussing*, the relationship here amounts to more than co-tenant merely engaging an agent to lease for them their jointly owned property in a transaction that, if they leased it themselves, would not cause a partnership to result for tax purposes. [Footnote omitted.] See sec. 1.761-1(a), Income Tax Regulations. We conclude that here the economic benefits to the individual participants were not derivative merely of their co-ownership of the computer equipment but rather were derivative of their joint relationship that, among other things, allowed them to negotiate a single or joint loan to finance their purchase of the equipment. Indeed, the individual participants here bought into a "program," a program by which they would take joint action towards a common goal.

*Alhouse*, at 1682.

(e) The Tax Court concluded that "taxpayers were partners in a partnership," and that the notices of deficiency adjusted partnership items which are subject to review only in a unified partnership proceeding. Therefore, the Tax Court agreed with Respondent's position and dismissed the cases on the basis that it lacked jurisdiction over taxpayers' individual petitions. Petitioner and Participating Partners dispute this finding and contend that the status of the program as a partnership or otherwise must be determined as a partnership item in this proceeding.

(f) The Ninth Circuit sustained The Tax Court's holding that taxpayers were engaged in a partnership for federal income tax purposes.

(g) In sustaining the Tax Court, the Ninth Circuit relied on the following recitation of the key fact findings of the Tax Court which are not in dispute:

> Taxpayers acted together with AmeriGroup Management in a long-term venture to finance, lease, and remarket the computer equipment. In reality, the participants have an interest in the CSE Program, not just in the equipment. As a practical matter, they must act in concert to buy the equipment and finance it, and none could sell, lease, or encumber the equipment without the consent of other participants. Although any participant has the right voluntarily to withdraw or assign his interest, consent of the manager must be obtained. In addition, the manager has the right to remarket the participants' interests and is to receive a remarketing fee regardless of whether a participant has terminated the management agreement. Termination [by the Participant] does not, accordingly, affect the manager's economic interest in the value of the equipment. While taxpayers are correct that they have a right to partition the property, there is no indication [in the evidence presented in the Tax Court] that an individual unit interest has any appreciable value. ... [see Subparagraph (h) below for omitted finding] ... Because the manager has the right to a remarketing fee regardless of whether a participant exercises the right to terminate the management agreement, the manager, as well as each other participant, has a continuing interest in the residual value of the equipment. These facts suffice to justify the Tax Court's conclusion that taxpayers, other participants, and the manager evidenced an intent to join together in a transaction in order to share profits and losses.

*Bergford*, at 83,020. Bracketed ([]) materials have been added for clarification.

(h) In reaching their conclusions, the Tax Court and the Ninth Circuit made the following determination (the omitted passage in the above quote) which Petitioners dispute and shall refute in the present proceeding:

> ... Finally, at least to some extent the manager shares in the risk of gain and loss. Although the management agreement does not require the manager to loan money to participants if rental income fails to meet the anticipated return, the arrangement is structured to make advances available as needed. As the Tax Court presumed, the manager must have intended to honor that commitment and thus to undertake financial risk if necessary.

*Id.*

The correct factual finding is that there is no evidence that the Manager had any intent to nor did it advance money to the Participants if rental income failed to meet projections. The documents reflect no such commitment. The management agreement merely gave the Manager the option to make such advances in his sole discretion and with full indemnity by the Participants. The failure of the rental income occurred and no such advances were made.

(i) In reaching its conclusions, the Tax Court compared the situation in *Alhouse* to *Bussing v. Commissioner*, 89 T.C. 1050, 1060-1062 (1987), where it had found that:

> [O]n balance in choosing between tenancy-in-common and joint venture we conclude that Bussing, AG, and the other investors entered into a joint venture for Federal income tax purposes.

*Alhouse*. at 1681.

(j) Additional facts upon which Petitioner and Participating Partners rely that are not contained in the findings of the Tax Court in *Alhouse* or the Ninth Circuit in *Bergford* include the following:

(i) The computer equipment that was the subject of the Crystal Star leasing program had a cost basis and a fair market value in place at the time of purchase by the Crystal Star Participants of not less than $16,200,000.

(ii) The computer equipment was appraised by Computer Sales, Inc., a qualified independent appraiser, in two appraisal reports dated November 25, 1985, and December 31, 1985, as having a fair market value in place at the time of purchase by the Crystal Star Participants of $16,820,226 and an estimated residual value of $2,523,034 upon termination of the seven-year lease term.

(iii) The computer equipment was appraised on behalf of the I.R.S. on December 8, 1989, as having a fair market value of only $9,944,431.

(iv) The computer equipment, when purchased and leased back, was generating end-user monthly rentals of almost $500,000 per month.

(v) The depreciation method used by each Crystal Star Participant was that prescribed by statute for computer equipment at the time the Crystal Star Participants acquired their interests in the equipment, and any elections between depreciation methods were made by the individual Participants, not "Crystal Star" as an entity.

(vi) Petitioner and Participating Partners each entered into their investments with a primary purpose and expectation of making a long-term profit.

(vii) The Manager obviously entered into the Crystal Star management agreement with the intent of earning significant fees, including his percentage of the subsequent re-leasing income or sales proceeds (after selling or re-leasing costs).

(viii) The Manager was to receive fixed fees and a percentage of gross rents from re-leases or gross sales proceeds (less the Manager's own costs of sales or re-leasing expenses), and not a percentage of net profits.

(ix) The Manager was not to share in losses, and any advances to Participants were subject to repayment by the Participant under any and all circumstances.

(x) Each Participant indemnified the Manager, in paragraph 5(b) of the management agreement, against "any and all loss or damages incurred by the Manager in connection with the acts of the Owner [the Participant] or his agents hereunder... ."

(xi) The Manager was entitled to full payment of all amounts due the Manager under the management agreement whether or not the Participants made a net profit.

(xii) Each Participant could terminate the management agreement by giving notice of termination to the Manager before the end of any one-year term.

(xiii) Each Participant retained the right to partition the leased equipment.

(xiv) The combined right to terminate the management agreement and partition the equipment was a significant and valuable right.

(xv) Each Participant had a reasonable expectation of being able to make a long-term net profit independent of tax benefits.

(xvi) Petitioner and Participating Partners, through Crystal Star, each incurred the benefits and burdens of the ownership of the leased equipment.

(xvii) Petitioner's and Participating Partners' investments through Crystal Star constituted true economic investments in the equipment.

(xviii) The method of depreciation utilized by the Petitioner and Participating Partners regarding the equipment did not materially distort income.

(xix) The basis in the equipment for purposes of depreciation constituted the full purchase price of $16,200,000.

(xx) On information and belief, the purchase price paid by the Participants for the equipment contained no substantial mark-up over the original purchase price paid to the manufacturers or unrelated distributors of the equipment by ComDisco.

(xxi) All expenses related to the rental of the equipment were incurred as claimed, constituted ordinary and necessary expenses and were not unreasonable or excessive.

(xxii) The rental expenses deducted were not syndication or capital costs, and if they are determined to be capital expenditures, they did have clearly determinable useful lives.

(xxiii) Any debt incurred by the Participants was neither contingent nor lacking in economic substance, being full recourse and due in full at the latest in the year 2000. Any such indebtedness was not joint and several with any other Participant, but was incurred individually by each Participant.

(xxiv) The investment program contemplated that each Participant would be fully "at risk" within the meaning of § 465 through incurring individual personal indebtedness for purchase of the equipment, which issue is improperly raised by Respondent in her FPAAs because it is not a partnership item.

(xxv) Respondent's determination that the "amounts shown as credits" are disallowed because "the property does not qualify for the credits under Section 38" is frivolous, capricious, and a waste of the time and expense of Petitioner, Participating Partners and this Court because Petitioner and Participating Partners NEVER CLAIMED ANY SUCH CREDITS.

(xxvi) Petitioner and Participating Partners had no intention to form a partnership or joint venture.

(xxvii) The Confidential Placement Memorandum pursuant to which each Participant invested specifically addressed the partnership status issue and concluded that the investment was not intended to, and should not, constitute a partnership or joint venture.

(xxviii) The settlement agreement executed by the Wymers as to 1986 was both countersigned and returned to them after they had notified Respondent through their accountant that the settlement agreement was to be returned unsigned and that the Wymers' offer to settle was withdrawn. The 1986 settlement agreement is therefore invalid.

(xxix) On information and belief, the Participants in Crystal Star were not personally joint and severally liable for any debts related to the program each Participant's liability being limited to his cash investment and any personal promissory notes made in connection with the program.

(xxx) Under the Ninth Circuit's findings of fact, the management agreement created centralization of management for Crystal Star subject to a Participant's right to terminate the management agreement and partition the equipment.

(xxxi) Under paragraph 13(b) of the management agreement, a Participant's beneficial interest in Crystal Star was freely transferrable, but transfer of "record ownership" required consent of the Manager which, under New York state law, could not be unreasonably withheld.

(xxxii) The continuity of life of Crystal Star was not affected by any alleged partner's death, bankruptcy, or other similar factors, and the termination of the management agreement by any one alleged "partner" did not dissolve or terminate the relationship among the remaining alleged "partners."

(xxxiii) The TMP requested disclosure from Respondent of all prior settlements entered into by any Crystal Star partner. The response received by the TMP did not indicate any settlements prior to the most recent settlement offered by Respondent in late 1995.

(xxxiv) Respondent previously offered settlements to one or more partners on substantially different terms, including but not limited to an offer by Appeals Officer Harold J. Scheller communicated to Brian Davis, Esquire, on or about June 25, 1990.

(xxxv) On information and belief, one or more settlements have been entered into with Crystal Star Participants, information about which has intentionally or negligently been withheld from the TMP, effectively denying all other Participants their consistent settlement rights under § 6224(c).

(xxxvi) As a consequence of the immediately preceding facts, it is impossible at this time to determine who are and are not properly parties to this proceeding!

WHEREFORE, Petitioner prays that this Court may hear this case and determine that:

1. There is no adjustment to any alleged partnership item for 1985 or 1986.

2. The share of each each alleged partnership item attributable to Petitioner or Participating Partners is that reported by the Petitioner or Participating Partner on their respective tax returns for 1985 and 1986.

3. The Respondent erred as alleged in each assignment of error set forth in paragraph 10 above.

4. Crystal Star did not constitute a partnership for 1985 or 1986, and this case should be dismissed for lack of jurisdiction.

5. Petitioner and Participating Partners were "at risk" sufficiently to deduct their losses incurred relative to Crystal Star in 1985 and 1986 or, alternatively, that this issue should be dismissed for lack of jurisdiction.

Petitioner further prays that the Court grant such other and further relief to which Petitioner and Participating Partners may be entitled.

Respectfully Submitted
On Behalf of the Participating Partners,

Counsel for Participating Partners

Date: 10/2/96

Thomas E. Redding
Tax Court Bar No. RT0167
Redding & Associates. P.C.
515 Post Oak Boulevard, Suite 500
Houston, Texas 77027
(713) 965-9244

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing First Amendment to Petition was served on the following by mailing same on October 2, 1996, in a postage paid wrapper to the addresses shown:

Respondent: Mr. Kenneth A. Hochman
Assistant District Counsel
Internal Revenue Service
Atrium West, Suite 240
7771 W. Oakland Park Blvd.
Sunrise, Florida 33351

Petitioner: Steven B. Dolchin
4330 Sheridan Street
Suite 202 B
Hollywood, Florida 33021

Appointed Tax Matters Partner: William A. Tauskey, Sr.
River Ridge Road
P.O. Box 2217,
Blue Ridge, GA 30513.

This is to certify that the original of the foregoing First Amendment to Petition was submitted by certified mail, return receipt requested on October 2, 1996, to:

United States Tax Court
400 Second Street, N.W.
Washington, D.C. 20217

Counsel for Participating Partners

Date: 10/2/96

Thomas E. Redding